UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 05-386 (ESH) |
| | : | |
| v. | : | |
| | : | |
| ANTOINE JONES, | : | |
| also known as "Toine," | : | |
| | : | |
| JOHN ADAMS, | : | |
| | : | |
| DEMETRIS JOHNSON, | : | |
| | : | |
| ADRIAN JACKSON, | : | |
| | : | |
| MICHAEL HUGGINS, | : | |
| | : | |
| KEVIN HOLLAND, | : | |
| | : | |
| ALBERTO ROLLANDO CARRILLO- | : | |
| MONTELONGO, | : | |
| | : | |
| ROEL BERMEA, JR., and | : | |
| | : | |
| RICARDO SANCHEZ-GONZALEZ, | : | |
| Defendants. | | |

GOVERNMENT'S MOTION AND MEMORANDUM FOR
EXCLUSION OF TIME UNDER THE SPEEDY TRIAL ACT

The United States, by its counsel, the United States Attorney for the District of Columbia,

pursuant to 18 U.S.C. § 3161(h)(7) of the Speedy Trial Act, respectfully moves for an Order

excluding a period of 180 days from the calculation of the time within which this case must be

tried. This motion for exclusion is made because of the size and overall complexity of this case.

I. <u>Factual Background</u>

On October 25, 2005, a federal grand jury returned an indictment charging these nine defendants with participating in a narcotics-trafficking organization operating in the greater Washington, D.C. area.  This indictment was the result of a long-term investigation into drug trafficking being conducted by the joint FBI/MPD Safe Streets Task Force, who in 2004, obtained information that a large narcotics distribution organization was operating in the greater Metropolitan Washington, D.C., area and elsewhere.  Based on information obtained from confidential sources and corroborated by physical surveillance, analysis of telephone records and pen registers, and other investigative techniques, investigators learned that Antoine Jones was a major supplier of large quantities of cocaine, including kilogram quantities, for the organization.

As the investigation got underway, investigators determined that Jones is the sole proprietor of a nightclub named "Levels," which is located at 1960 Montana Avenue, N.E., Washington, D.C., which Jones used both as a legitimate business, and as a location where he could conduct his drug trafficking activities, as well as launder drug trafficking proceeds. Investigators also learned that Lawrence Maynard – who has been indicted separately on drug conspiracy charges, but whom the government anticipates will become a part of the instant case when a superseding indictment is returned in the coming months – is both Jones's right-hand man in his legitimate business, Levels, serving as the "A.B.C. Manager," but also in his illegitimate cocaine-trafficking business, often serving as an intermediary between Jones and his suppliers and customers.  Finally, investigators learned that Jones runs a very insular organization, largely dealing only with those customers who are personally known to him, or introduced to him by a close associate.

Source information regarding Jones and Maynard's drug organization was corroborated by a traffic stop of Maynard on April 5, 2005. On that date, the Highway Interdiction Unit of the Durham, North Carolina Police Department conducted a traffic stop of a 1997 Honda Odyssey mini-van bearing Maryland tags 273M195, operated by Maynard and also occupied by an individual named Derrick Gordon in the front passenger seat. The interdiction teams' investigation revealed that this car was registered to Antoine Jones, with a date of birth of February 25, 1960, and to one of his residences, 12221 Brandywine Road, Brandywine, Maryland. In the course of further investigation, the interdiction unit canine alerted on the right rear passenger area of the mini-van. A search of the mini-van revealed a hidden compartment in the van, which contained six white plastic Target shopping bags, containing a total of $67,115.00 in U.S. currency, in various denominations, held together by rubber bands. When interviewed by the Interdiction Unit, Maynard and Gordon – each of whom had well in excess of $1,000.00, on their persons – both denied any knowledge of the secret compartment and the money contained therein. The Honda Odyssey was impounded, the $67,115.00, was seized as evidence, Maynard and Gordon received a warning ticket, and then were released without additional charges.

Based on their investigation of Jones, Maynard, and some of their associates, including additional debriefings of confidential sources, increased surveillance, and a review of text messages stored on the cellular telephones of Jones and Maynard, obtained via search warrant, investigators sought and obtained a Title III wire interception order for Jones's cellular telephone from the Honorable Paul L. Friedman, on September 2, 2005, which was extended on September 30, 2005, and ceased on October 24, 2005, when a series of search warrants were executed and the defendants were arrested. This court-authorized wiretap intercepted well in excess of 6,000,

telephone calls over the course of the 7 week interception period. From those intercepted calls, a picture of Jones's organization emerged fairly quickly, which mirrored the information provided by the confidential sources, and confirmed through surveillance, pen register data, and other investigative means – that on a near-weekly basis, Antoine Jones was acquiring large, kilogram quantities of cocaine from suppliers with links to Mexico and Texas, and redistributing it in smaller, though still substantial, quantities to a group of customers, on a near-daily basis.

As the wire interception period proceeded, investigators identified what they believed was a stash location in Ft. Washington, Maryland, and increased surveillance yet again. Based on the pattern of telephone calls between Jones and two Hispanic-sounding males, with cellular telephones registered to suburban Atlanta, Georgia, and McAllen, Texas, a border town which serves as a major point of entry of cocaine into the United States, during the third week of October, 2005, investigators surmised that a major shipment of cocaine intended for Jones and his colleagues was destined for the Washington, D.C., area, specifically the stash house in Ft. Washington, Maryland, in the coming days. Investigators applied for, and obtained, search warrants for approximately eight locations in Maryland, including the suspected stash house, and the nightclub Levels in Washington, D.C., which they executed shortly after 6:00 a.m., on October 24, 2005.

Recovered from the stash house in Ft. Washington were 97 kilograms of cocaine, three kilograms of crack cocaine, and in excess of $800,000, from the attic of the residence. Also recovered were a money counting machine, and money-wrapping materials. Located within the residence were defendants Bermea, Carrillo-Montelongo, and Sanchez-Gonzalez. Recovered from Levels was a loaded .9mm handgun, from a desk drawer in the office, and recovered from

4

Jones's Jeep Grand Cherokee, which he was observed driving on nearly a daily-basis during the course of the surveillance period, was in excess of $69,000, in cash. Finally, recovered from various of the residences of the other indicted defendants were smaller wholesale quantities of cocaine, large sums of money, and several guns. Defendants Jones, Adams, Jackson, Huggins, Johnson, Bermea, Carrillo-Montelongo, and Sanchez-Gonzalez were arrested during the execution of the search warrants on October 24, 2005; defendant Holland was arrested on November 16, 2005, pursuant to an arrest warrant issued in connection with the indictment in this case.

On the day following the execution of these search warrants and the arrest of all of thte defendants but Holland, a grand jury handed down the indictment in this case. That indictment charged that these defendants were part of an enterprise that conspired to distribute and to possess with the intent to distribute in excess of five kilograms of cocaine hydrochloride, and in excess of 50 grams of cocaine base, during the time frame of the wire interception, September 2, 2005, through October 24, 2005. The government anticipates that in the coming months, we will supercede that initial indictment, to add both additional counts and additional defendants, and to significantly lengthen the timeframe of the charged conspiracy.[1]

To comply with its discovery obligations, the government must produce all of the evidence mentioned above to the defense, including the wire interceptions in their entirety and the synopsis of each of the calls, drafted by the agents who monitored the wire. This is an obligation that the government already has begun to discharge and that it will continue to

---

[1]    The government notes that, upon a superceding indictment, the Speedy Trial clock will begin anew.

discharge over the course of the coming weeks and months, a significant undertaking involving the production of voluminous discovery materials. This discovery will touch on all phases and aspects of the investigation. Once this production has taken place, each of the defendants will need time to examine and digest the discovery materials. The sheer volume of evidence in the case will prolong the discovery process and necessitate – for both the government and the defense – a lengthy period of time for pretrial preparation.

## II. Argument

A.    The time between the date of the initial appearances for the initially arrested defendants and the date of the initial appearance of defendant Kevin Holland should be excluded in computing the time in which this case must be tried under the Speedy Trial Act.

The statutory Speedy Trial clock did not begin to run in this case until November 16, 2005, the date on which defendant Kevin Holland was arrested and initially presented on this indictment. This is so because the Speedy Trial Act expressly authorizes the exclusion of "[a]ny period of delay resulting from the absence or unavailability of the defendant." 18 U.S.C. §3161(h)(3)(A).

The Speedy Trial Act also provides for the exclusion of a "reasonable period of delay when the defendant is joined for trial with a co-defendant as to whom the time for trial has not run and no motion for severance has been granted." 18 U.S.C. § 3161(h)(7). This provision has been interpreted by the Supreme Court to mean "all defendants who are joined for trial generally fall within the speedy trial computation of the latest co-defendant." Henderson v. United States, 476 U.S. 321, 323 n. 2 (1986); see also United States v. Calle, 120 F.3d 43, 46 (5th Cir. 1997) ("in a multi-defendant prosecution . . . the Speedy Trial clock begins to run when the last co-defendant makes his initial appearance in court"), cert. denied, 523 U.S. 1012 (1998); United

States v. Dota, 33 F.3d 1179, 1183 (9th Cir. 1994) ("generally the clock begins to run when the last co-defendant appears in court"), cert. denied, 514 U.S. 1052 (1995); United States v. Davenport, 935 F.2d 1223, 1229-1230 (11th Cir. 1991) ("the speedy trial clock did not begin to run until August 31, 1998, because all of appellant's co-defendants had not been apprehended"). In accord with Section 3161(h)(7) and the decisional law interpreting and applying it, this Court should exclude from the Speedy Trial Act the time between the initial appearances of the initially arrested defendants and the initial appearance of defendant Holland.

B.    The overall complexity of this case, including the large number of defendants, voluminous discovery material, including in excess of 6,000 wire interceptions, justifies a 180-day exclusion from the statutory period in which this case must be tried under the Speedy Trial Act.

Now that all defendants have been arraigned on the current indictment and the speedy trial clock has begun to run, this Court should exclude a period of 180 days from the Speedy Trial calculation because of the overall size, complexity, and seriousness of this case.  The number of defendants, and the nature of the evidence supporting the charges in the indictment, including well in excess of 6,000, intercepted telephone calls, make this case particularly complex and justify an exclusion of time under 18 U.S.C. § 3161(h)(8)(A).   The Speedy Trial Act provides that such an exclusion may be ordered by the Court either on its own motion or at the request of one of the parties in the interests of the "ends of justice."  An "ends of justice" exclusion must be supported by appropriate findings.  Id.

Section 3161(h)(8)(A) allows the court to exclude a period of delay from the Speedy Trial Act calculation if the Court finds "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."  Section 3161(h)(8)(B) sets

forth the factors the court may consider when determining whether to exclude time pursuant to

Section 3161(h)(8)(A).  Where the court finds that the case is "so unusual or so complex, due to

the number of defendants, the nature of the prosecution, or the existence of novel questions of

fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for

the trial itself within the time limits established" the court may exclude such time as necessary to

serve the ends of justice.  18 U.S.C. §§3161(h)(8)(A) and 3161(h)(B)(ii)(iv).  The Court has

broad discretion to grant an exclusion of time when, in its view, the case's complexity requires

that counsel have additional time to prepare in order to ensure a fair trial.  See United States v.

Rojas-Contreras, 474 U.S. 231, 236 (1985).

Applying the factors set forth in Section 3161(h)(8)(B), courts have routinely excluded

reasonable periods of time in cases similar in scale and complexity to the instant case.   The

presence of multiple defendants in a charged conspiracy case has been frequently cited as the

basis for exclusion of time.  See United States v. Reavis, 48 F.3d 763, 771 (4th Cir. 1995)

(upholding trial court's exclusion of time under the Section 3161(h)(8)(A) in "a case with six

defendants, eight attorneys, a thirty-three count indictment, and the possibility of prosecution

under a seldom-used federal death penalty statute"); United States v. Butz, 982 F.2d 1378, 1381

(9th Cir. 1993) (upholding trial judge's exclusion of time under Section 3161 (h)(8)(A) because

case charging nine co-defendant conspiracy in a twenty-nine count indictment was sufficiently

"complex"); United States v. Ditommaso, 817 F.2d 201, 210 (2d Cir. 1987) ("we agree that this

multi-defendant, international drug smuggling and money-laundering case was sufficiently

complex to warrant excludable time"); United States v. Fogarty, 692 F.2d 542, 546 (8th Cir.

1982) ("the complexity of the case, involving seven co-defendants and multiple overt acts

occurring in seven states, outweighed the interests of the individual defendants" and justified

exclusion of time under § 3161(h)(8)(A)); United States v. Ambrosio, 898 F. Supp. 177, 192

(S.D.N.Y. 1995) (ends of justice exclusion justified by complexity of case, where indictment

charged seventeen defendants with large-scale drug conspiracy).

      Courts also look to the nature of the evidence in an assertedly "complex" case in

adjudicating requests to apply the "interest of justice" provision of the Speedy Trial Act.

Findings of complexity and resulting exclusions of time have been based on the presence of a

large amount of evidence gathered by means of court-authorized wiretaps.  Production and

review of wiretap evidence often takes a substantial amount of time, justifying the exclusion of

such time from the Speedy Trial Act calculation.  See United States v. Gambino, 59 F.3d 353,

358 (2d Cir. 1995) (trial court excluded time under § 3161(h)(8)(A) because case involved

"hundreds of hours of video and audio tape recordings tracking the structure of the criminal

activities of the Gambino organization"); Butz, 982 F.2d at 1381 (exclusion of time justified in

part because evidence of charged drug conspiracy was in form of "hundreds of hours" of

conversations intercepted pursuant to a Title III wiretap); Ditommaso, 817 F.2d at 210 (case

involving "hundreds of reels of [audio] tapes" found sufficiently complex to justify exclusion of

time under § 3161 (h)(8)(A)).  Courts have also recognized that the necessity of gathering and

producing a large amount of documents increases the complexity of a case and can alternately

justify exclusion of time under the Speedy Trial Act.  See United States v. Beech Nut Nutrition

Corporation, 871 F.2d 1181, 1197-1198 (2d Cir.) (case in which government made available to

defendants approximately 30,000 documents was "complex within the meaning of the Speedy

Trial Act"), cert. denied, 493 U.S. 933 (1989).

The instant case is at least as "complex" as those described above in which courts have excluded time under Section 3161 (h)(8)(A).  This indictment charges nine defendants with a drug conspiracy that distributed and possessed with the intent to distribute well in excess of 100 kilograms of cocaine over the course of a two-month period, cocaine which came from Mexico, through Texas, and into the greater Washington, D.C., metro area.  Without more, the sheer number of defendants and the nature of the evidence justifies the exclusion of time.  In addition, the size and complexity of this case  means that the government must produce – as it has already begun to do –  thousands of pages of documents to each of the co-conspirators, together with hundreds of hours of digitally recorded telephone conversations.   The wiretap discovery, in turn, will be followed by a production of voluminous materials pertaining to the execution of numerous search warrants.

As is evident, given the voluminous nature of the evidence on which the indictment is based, discovery in this case will be a sizeable, protracted, and time-consuming chore.  All of that discovery material, moreover, will need to be reviewed by each defense attorney.  That review will undoubtedly prompt specific requests for additional information, as well as motions to suppress, to sever, and to otherwise limit the quantum of evidence to be presented against these defendants.   The sheer volume of evidence in this case serves to make it unusually large and complex and, applying the plain language of the speedy trial statute and the above-cited authority, warrants an Order granting the requested exclusion of time.

Finally, the 180 day exclusion requested in this motion will serve both the United States and the defendants and insure that this significant, complicated case is thoroughly prepared for trial. The government needs extra time to provide discovery, and to prepare a vast amount of

material for trial presentation, taking steps such as preparing transcripts of the pertinent

intercepted conversations.  Moreover, the additional time requested will likely facilitate

dispositions short of trial.  Debriefing defendants and negotiating dispositions of their cases is

extremely time-consuming.   The United States anticipates, however, that the evolution of the

debriefing process and the cooperation of those interested co-conspirators may reduce the

number of defendants who will ultimately remain when this case approaches readiness for trial.

Courts also look to the nature of the evidence in an assertedly "complex" case in adjudicating

requests to apply the "interest of justice" provision of the Speedy Trial Act.

III.    Conclusion

For the foregoing reasons, the United States, by its counsel,  the United States Attorney for the District of Columbia, pursuant to18 U.S.C. § 3161(h)(7) of the Speedy Trial Act, respectfully moves for an Order excluding from the calculation of when this case must be tried that period of time between the initial appearances of the eight initially arrested defendants and that of Kevin Holland, the remaining defendant in this case.  Pursuant to 18 U.S.C. §3161(h)(8)(A), and because of the size and overall complexity of this case, the United States also moves for an Order excluding, from the date of the initial appearance of defendant Holland, a period 180 days from the calculation of the time within which this case must be tried.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY


By:    _____
RACHEL CARLSON LIEBER
D.C. Bar No. 456-491
JOHN V. GEISE
Assistant United States Attorneys
555 4th Street, N.W., Room 4820
Washington, DC 20530
(202) 353-8055
Rachel.lieber@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that, on the 23rd day of November, 2005, a copy of the foregoing pleading was served, via electronic court filing, upon the following: Eduardo Ballarezo, Esq., counsel for Antoine Jones, Thomas Abbenante, Esq., counsel for Adrian Jackson, Diane Lepley, Esq., counsel for John Adams, Carmen Hernandez, Esq., counsel for Demetris Johnson, Joe Conte, Esq., counsel for Michael Huggins, Jon Zucker, Esq., counsel for Roel Bermea, Jr., Heather Shaner, Esq., counsel for Alberto Rollando Carrillo-Montelongo, Elita Amato, Esq., counsel for Ricardo Sanchez-Gonzalez, and Brian McDaniel, counsel for Kevin Holland.

_____
Rachel Carlson Lieber
Assistant United States Attorney