# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 05-CR-386(1) (ESH) |
| | : | |
| ANTOINE JONES | : | |

## DEFENDANT JONES' OMNIBUS PRE-TRIAL MOTION

Defendant Antoine Jones ("Jones"), by and through undersigned counsel, respectfully submits this Omnibus Pre-Trial Motion.  In support of this motion, Mr. Jones states as follows:

## FACTS

Jones has been charged in a Superseding Indictment with Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine and Fifty Grams or More of Cocaine Base (Count 1); Unlawful Possession with Intent to Distribute 50 Grams or More of Cocaine Base (Count 2); Unlawful Possession with Intent to Distribute Cocaine and Aiding and Abetting (Count 3); and Use of a Communication Facility to Facilitate a Drug Trafficking Offense (Counts 5 -34).  The government's general allegation is that Jones was part of a narcotics conspiracy from at least 2003 until October 24, 2005, which spanned from the District of Columbia, Maryland, Texas, North Carolina and elsewhere.  In particular, the government alleges that Jones was the primary supplier of cocaine to members of the organization in the District of Columbia and Maryland.

At the June 12 and June 27, 2006, status hearing, the Court directed the defendants each to file one Omnibus Motion addressing all pre-trial issues.

**SPECIFIC MOTIONS**

**I**

**MOTION TO ADOPT AND CONFORM
TO CODEFENDANT'S MOTIONS**

Jones respectfully moves the Honorable Court for leave to adopt and conform to

Motions filed on behalf of other defendants in the above-captioned matter that assert grounds for

relief that Jones has standing to raise and are not inconsistent with relief he seeks in his own

motions.  Jones maintains that the Court's granting this Motion will conserve judicial resources

by limiting defense counsel's filing duplicative motions.

**II**

**MOTION FOR A PRELIMINARY DETERMINATION OF CONSPIRACY
AND PRETRIAL RULING ON THE ADMISSIBILITY OF
CO-CONSPIRATOR'S STATEMENTS**

Jones respectfully moves the Court to conduct a pretrial hearing to determine the existence of a conspiracy and to determine the admissibility of any statements of alleged co-conspirators pursuant to Fed. R. Evid. 801(d)(2)(E). In this case, the government has charged Jones with various drug-related counts in addition to murder and attempted murder charges.

Federal Rule of Evidence 801 (d)(2)(E) provides that a statement is not hearsay if it is offered against a party and is a statement made by a co-conspirator or party during the course of and in furtherance of the conspiracy. Before the statements are properly admissible under Fed. R. Evid. 801 (d)(2)(E), the court must make a determination that (1) a conspiracy existed, (2) the co-conspirator and the defendant against whom the statements are offered were members of the conspiracy, and (3) the statements were made in furtherance of the conspiracy. See United States v. Gantt, 617 F.2d 831 (D.C. Cir. 1980) (citing United States v. Nixon, 418 US 683, 701 n.14 (1974)). The trial court's findings must be supported by substantial evidence independent of the hearsay statements themselves. See Id., at 844. See also United States v. Perholtz, 836 F.2d 554 (D.C. Cir. 1987); United States v. Weisz, 718 F.2d 413 (D.C. Cir. 1983). This determination should be made prior to trial and before the admission of the statements. See e.g., Fed. R. Evid. 104. In United States v. Jackson, 627 F.2d 1198 (D.C. Cir. 1980), the Court stated:

> The better practice is for the Court to determine before the hearsay
> is admitted that the evidence independent of the hearsay testimony
> proves the existence of a conspiracy sufficiently to justify the
> admission of the hearsay declaration.

Id. at 1219 (citing United States v. James, 590 F.2d 575, 582 (5th Cir), cert. denied, 442 U.S. 917; United States v. Macklin, 573, F.2d 1046, 1049 n.3 (8th Cir 1978); United States v. Petrozziello, 548 F.2d 20, 23 n.3 (1st Cir 1977)).

These procedures need to precede the trial because of the degree of prejudice Jones will suffer if a jury were to rely on co-conspirator's statements without the court first addressing and deciding the admissibility question. See United States v. James, supra. In United States v. Jackson, 627 F.2d at 1216, the court announced another important principle:

> What must be proved by independent evidence is merely that a combination existed between third parties and the defendant. It is not necessary to show by such evidence that a combination was unlawful. That element may be by hearsay declarations. (Emphasis in original).

More importantly, the co-conspirator or party must have made the statement "in the course of and in furtherance of the conspiracy." See Bourjaily v. United States, 483 U.S. 171 (1987). This places a considerable burden on the government to overcome the presumption of unreliability that attaches to all out-of-court statements while at the same time producing sufficient evidence to prove by a preponderance of the evidence that a conspiracy did, in fact, exist. Id.

In reaching its decision, the court may exercise its wide range of power to remove Jones from an atmosphere that will cloud a jury's judgment on the facts alone. As Judge Weinstein has commented:

> It is the contention of the treatise that a fair and practicable method of protection to the defendant without violating the letter or spirit of the rule relies in insisting on a stringent standard of proof before the Court admits a co-conspirator's statement in a criminal case. Only if the Court is convinced to a higher degree of probability, considering hearsay as well as no-hearsay evidence of the conspiracy, of the defendants' membership and the statement was made during the course of and in furtherance thereof should it be

admitted.

Weinstein, EVIDENCE §104.

In <u>United States v. James</u>, supra, the Fifth Circuit Court of Appeals traced the history of the court's role when confronted with the same issues that are now before this court. Before the enactment of the Federal Rules of Evidence the trial judge's role was to instruct the jury to weigh the evidence of proof of a conspiracy. With the adoption of Fed. R. Evid. 104, the presiding judge now has an active role consisting of two important functions: First, the court determines whether the government has made a prima facie showing and, then, it weighs the evidence-a function formally performed by the jury. As the appellate court said in <u>James</u>,

> We are therefore convince that the preliminary questions of conditional relevance envisioned by Rule 104(b) are those which present no such danger of prejudice to the defendant. They are questions of probative force rather than evidentiary policy. They involve questions as to the fulfillment of factual questions as to the fulfillment of factual questions which the    jury must answer.

> The admissibility of a co-conspirator's declaration in a conspiracy trail, however, does pose problems precisely because the relevancy and apparent probative value of the statements may be so highly prejudicial as to color other evidence even in the mind of a conscientious juror, despite instructions to disregard the statements or to consider them conditionally. As a result such statements should be evaluated by the trained legal mind of the trial judge.

The <u>James</u> case also held that the standard of proof should be high enough to afford adequate protection to the defendant against whom the government offers the evidence, yet not to such a level as to exclude trustworthy evidence.

**III**

## MOTION TO DISCLOSE IDENTITIES OF EACH CONFIDENTIAL  INFORMANT REGARDLESS OF WHETHER THEY WILL BE  CALLED AT TRIAL

Jones respectfully moves for an Order directing the government to disclose the identities of each confidential informant regardless of whether they will testify at trial.  In support of this motion, Jones states as follows:

1.    A review of the materials generated to date concerning the investigation which culminated in this indictment reveals that an important source of information used by law enforcement in gathering information was derived from confidential informants.

2.    Witnesses who have provided information to law enforcement did so after they were either charged or told that they would be indicted unless they agreed to cooperate.

3.    Counsel seeks to interview each person who gave information to law enforcement who falls within the category of confidential informant regardless of whether they will be called to testify at trial.

4.    The confidential informants used by law enforcement may be biased against defendant.

5.    The identities of the informants are necessary to the defense in order to investigate bias, motives to fabricate and to cast doubt upon the credibility of certain witnesses.

6.    Jones seeks useful and relevant information that cannot be learned without a disclosure by the United States.  There is no reason related to security to withhold this essential information.  Jones's due process rights mandate pretrial disclosure of the identities of each confidential informant who has provided information to law enforcement.

In <u>Roviaro v. United States</u>, 353 U.S. 53 (1957), the Supreme Court addressed

the balancing that was necessary when a trial court was called upon to weigh a defendant's right

to fundamental fairness as guaranteed by the United States Constitution against the government's

interest in withholding from disclosure the identity of an informant.  (Protecting the identity of

the informant from disclosure has become known as the "informer's privilege").

> What is usually referred to as the informer's privilege is in reality
> the Government's privilege to withhold from disclosure the
> identity of persons who furnish information of violations of law to
> officers charged with enforcement of the law.  The purpose of the
> privilege is the furtherance and protection of the public interest in
> effective law enforcement.  The privilege recognizes obligation.

Id. at 60-61 (citations omitted)

I.    Actual Crime Participants.

These individuals, regardless of the corporate reward, must be disclosed in the

interests of fundamental fairness and due process.  In McLawhorn v. State of North Carolina,

484 F.2d. 1 (4th Cir. 1997) the Court drew a distinction between actual crime participants and

tipsters in assessing whether it was necessary for the government to reveal their identities.  If it is

determined that the informant was an "actual participant," that is where he helps to set up the

criminal occurrence," then disclosure of the identity of the informant is required.  484 F.2d. at 5.

In Roviaro, the Supreme Court recognized the problem a defendant faces when

the government chooses not to call a confidential information at trial.

> Petitioner's opportunity to cross-examine Police Officer Bryson
> and Federal Narcotics Agent Curham was hardly a substitute for an
> opportunity to examine the man who had been nearest to him and
> took part in the transaction.  Doe had helped to set up the criminal
> occurrence and had played a prominent part in it.  His testimony
> might have disclosed entrapment.
>
> The desirability of calling John Doe as a witness, or at least

> interviewing him in preparation for trial, was a matter for the
> Defendant rather than the government to decide.

Roviaro, 353 U.S. at 64 (emphasis added).  Thus, the Supreme Court recognized the importance

of disclosing the name and whereabouts of an informant so that the defendant would have the

opportunity of at least interviewing the informant in order to adequately prepare for trial.  It is

axiomatic that the witnesses do not belong to either the prosecution or the defense and should be

available to either side.

      Without disclosure of the informant's identity and the ability to interview the

informant or call the informant as a witness, the defendant might well be forced to testify in

order to try to establish that he was misidentified or had a lack of knowledge or intent.  Where

the informant is a participant and material witness to the crime charged, as is applicable herein

with respect to certain government witnesses, forcing the defendant to testify or depriving him of

the right to interview or call such a witness constitutes a denial of fundamental fairness, and

violates both his Fifth Amendment right to remain silent and his Sixth Amendment rights to

confrontation as well as to effective assistance of counsel.

      The Circuit Court of Appeals in this jurisdiction has recognized that the

"Informer's Privilege" must give way when the identity of the informant is of use to a defendant.

> Whether Roviaro was a product of the Due Process Clause, as the
> Supreme Court said in United States v. Raddatt, 447 U.S. 667, 679,
> 100 S. Ct. 2406, 2414, 6 L.Ed.2d 424 (1980), or merely of federal
> common law, as the Court wrote in United States v. Valenzuela-
> Bernal, 458 U.S. 85 870, 102 S. Ct. 3440, 3448, 73 L.Ed.2d 119
> (1982), in a criminal trial the informer privilege must give way
> when the information sought is "relevant and helpful to the defense
> of the accused."  Roviaro, 353 U.S. at 60-61, 77 S. Ct. At 628.
> The informant in Roviaro, whose identity the Court ordered
> divulged, was the "sole participant, other than the accused, in the
> transaction charged" and consequently "the only witness in a

8

> position to amplify or contradict the testimony of the government
> witnesses, 353 U.S. at 64, 77 S. Ct. At 629

United States v. Foster, 986 F.2d. 541, 545 (D.C. 1993).

The identities of the confidential informants who were engaged in criminal activity are relevant and useful to the defense as their participation needs to be fully investigated by the defense. They may have been the sole perpetrators of some or all of the offenses charged herein. As such, defendant has a constitutional right to conduct a pretrial investigation of the activities of the informants to ascertain their criminality and to explore any bias or motive to fabricate they may have.

II.    Informants Not Participating in Crimes Alleged in Indictment.

The basis for seeking disclosure of the identities of confidential informants who were not participants in the crimes alleged in the indictment arises from Brady v. Maryland. Specifically, defendant asserts that most, if not all, of the witnesses who fall within this category have provided information to law enforcement in an effort to obtain a benefit. It is a well-known fact that cooperating witnesses receive compensation for their assistance in investigation and in some instances receive compensation for their testimony. In United States v. Bagley, 93 U.S. 667, the Supreme Court analyzed expectations of witnesses for payments in return for testimony in the context of Brady v. Maryland. Recognizing that constitutional error occurs when the defense is deprived of information which would be useful in cross-examination to suggest bias or interest on the part of a witness, the Court mandated that an assessment be made regarding the significance of the inducement.

> [W]e reserve the judgment of the Court of Appeals and remand the
> case to that Court for a determination whether there is a reasonable
> probability that, had the inducement offered by the government…

been disclosed to the defense, the result of the trial would have been different.

473 U.S. at 684

In so ruling, the <u>Bagley</u> majority made clear that offers of inducement do fall within the potentially exculpatory umbrella of <u>Brady v. Maryland</u>.

IV

**MOTION FOR AN ORDER DIRECTING THE GOVERNMENT
TO SPECIFY ALL EVIDENCE WHICH MAY BE SUBJECT
TO SUPPRESSION**

Jones respectfully requests the Honorable Court to issue an Order directing the government to specify all evidence it intends to introduce at trial and that may be subject to suppression under Fed. R. Crim. P. 12(b)(2). In support of this Motion, Jones states as follows:

1. The investigation which led to Jones's arrest was conducted by various governmental law enforcement agencies.

2. Part of the evidence in this case may be subject to suppression on constitutional or other evidentiary grounds.

3. In order for Jones to prepare for trial, and in order for defendant to prepare all necessary and appropriate challenges to the admissibility of evidence potentially subject to suppression, itemization of evidence subject to suppression needs to be provided to the defense.

Federal Rule of Criminal Procedure 12(b)(4)(B) states as follows:

At the request of the defendant. At the arraignment or as soon thereafter as is practicable, the defendant may, in order to have an opportunity to move to suppress evidence under subdivision Rule 12(b)(3)(C), request notice of the government's intention to use (in its evidence-in-chief at trial) any evidence that the defendant may be entitled to discover under Rule 16.

The timing of determinations pertaining to challenges to the admissibility evidence arguably subject to suppression is governed by Federal Rule of Criminal Procedure 12(d):

Ruling on Motion. The court must decide every pretrial motion before trial unless it finds good cause to defer a ruling. The court must not defer ruling on a pretrial motion if the deferral will adversely affect a party's right to appeal. When factual issues are involved in deciding a motion, the court must state its essential findings on the record.

The interests of due process and judicial economy are best served by requiring pretrial written itemization of evidence arguably subject to suppression. Such a disclosure serves to avoid pretrial delay as well as aiding the court and counsel in ascertaining the nature of the evidence to be introduced.

> In cases in which the defendant wishes to know what types of evidence the government intends to use so that he can make his motion to suppress prior to trial, he can request the government to give notice of its intention to use specific evidence which the defendant is entitled to discover under Rule 16. Although the defendant is already entitled to discovery of such evidence prior to trial under Rule 16, Rule 12 makes it possible for him to avoid the necessity of moving t o suppress evidence which the government does not intend to use.

See ABA Projection Standards for Criminal Justice, Relating to Electronic Surveillance, (approved draft, 1971) at p. 116.

The itemization of evidence subject to suppression will facilitate compliance with this Court's scheduling order and provide the defense with a better understanding of the constitutional and evidentiary challenges to be made to the indictment.

**V**

## MOTION FOR DISCOVERY OF
## CO-DEFENDANT AND CO-CONSPIRATOR STATEMENTS

Jones respectfully moves the Court for an Order directing the government to disclose and permit inspection and copying of any statements made by co-defendants or alleged co-conspirators that the government intends to offer against him pursuant to Fed. R. Crim. P. 801(d)(2)(E), including, but not limited to, the following:

1.    Relevant written or recorded statements made by any co-defendant or claimed co-conspirator, indicted or unindicted, that are in the government's possession, custody or control, or that through due diligence may become known to the government; and

2.    The substance of any oral statement that the government intends to offer in evidence at trial of this matter made by any co-defendant or claimed co-conspirator, indicted or unindicted, before or after arrest, in response to interrogation by any person known to the declarant to be a government agent.

Generally a defendant is entitled to co-conspirator or co-defendant statements admissible against the defendant under Fed. R. Evid. 801 (d)(2)(E) if the government does not intend to call the coconspirator as a witness. See United States v. Disston, 612 F.2d 1035 (7th Cir. 1980); United States v. Percevault, 490 F.2d 126 (3rd Cir. 1974); United States v. McMillen, 489 Rd 229 (7th Cir. 1972).

## VI

## <u>MOTION TO SUPPRESS TANGIBLE EVIDENCE<br>OBTAINED FROM JEEP CHEROKEE</u>

On October 22, 2005, Magistrate Judge Charles B. Day of the District of

Maryland issued a search warrant for Jones' home located at 10870 Moore Street, Waldorf,

Maryland.[1]  The application for a search warrant was supported by an affidavit sworn to by FBI

Agent Stephanie Yanta.  (<u>See</u> Exh. 2 – Yanta Affidavit for search warrant).

### A.      The Search Warrant for Jones' Homes was invalid

Agent Yanta's Affidavit was substantially similar to the Affidavits discussed in

Jones' Motion Suppress Evidence Obtained From Interception of Wire Communications and

Electronic Surveillance and also relied on evidence obtained through the electronic seizures.

Jones incorporates by reference the arguments made in his wiretap suppression motion and

submits that the warrant issued was invalid because it resulted from an affidavit that presented

intentional misstatements and a reckless disregard for the truth.  <u>See</u> <u>Franks v. Delaware</u>, 438

U.S. 154 (1978).  Additionally, the instant search warrant was invalid because it was tainted by

illegally obtained evidence (the wiretaps) and is the fruit from the poisonous tree.  <u>See</u> <u>Wong</u>

<u>Sun v. United States</u>, 371 U.S. 471 (1963).

### B.      The search of the Jeep was illegal

On October 24, 2005, law enforcement agents dressed in tactical gear and

carrying semi-automatic weapons entered the premised and executed the search warrant.  Once

inside they secured the occupants, including Jones, his wife and son.  At some point during the

search, the agents located a Jeep Cherokee parked and locked inside the garage attached to the

---

[1] <u>See</u> Exh. 1 (Moore Street Search Warrant).  The government has not produced "attachment A" to the warrant as of this time.  Counsel been informed that there exists an "attachment A."  In the event that "attachment A" does not exist, Jones reserves the right to move to suppress evidence from the search on those grounds.

house.  The agents searched the Jeep and discovered $69,119 in cash in a bag.  Realizing they did not have a search warrant for the Jeep, an agent presented Jones with a piece of paper and had him sign it.[2]  Jones, who all the while was being guarded by several heavily armed agents after having been rudely awakened, felt no choice but to sign the paper, which turned to be a consent form.  (See Exh. 3 – Consent Form).  When Jones signed the consent form, it was blank and did not list what item he was consenting to be searched.

The Fourth Amendment prohibits unreasonable searches and seizures and warrantless searches.  Evidence found in the Jeep was the "fruit of the poisonous tree" that resulted from the illegal search of the home.  See Wong Sun v. United States, 371 U.S. 471 (1963).  Additionally, Jones' consent was invalid because it was not voluntary and was made under extreme duress.  As a waiver of the Fourth Amendment, a valid consent must be free and voluntary and the burden of proving a valid consent is on the government.  See United States v. Jones, 641 F.2d 425 (6th Cir. 1981).   A consent to search must be proven by clear and convincing evidence in unequivocal words or conduct expressing consent, and it must be established that there was no duress or coercion, actual or implied.  Id.  Even assuming, arguendo, that the agents  might have searched the Jeep in the garage when they arrested Jones in the house, they could not legally seize the car, remove it, and search it at their leisure without a warrant.  See Coolidge v. New Hampshire, 403 U.S. 433, 457 (1971) (citing Preston v. United States, 376 U.S. 364 (1964)).

### C.    The agents violated Fed. R. Crim. P. 41(f)

Rule 41(f) mandates that the "officer executing the warrant must . . . give a copy of the warrant and a receipt for the property taken to the person

---

[2] The government did not obtain a search warrant for the Jeep until October 31, 2005, one week after the initial warrantless search. (See Exh. 4 – Jeep Warrant).

from whom, or from whose premises, the property was taken, or . . . leave a copy of the warrant and receipt at the place where the officer took the property." Rule 41(f) must be interpreted in the light of the important policies underlying the warrant requirement-to provide the property owner assurance and notice during the search. The Supreme Court has repeatedly held that an essential function of the warrant is to "assure[ ] the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his power to search." United States v. Chadwick, 433 U.S. 1, 9 (1977), abrogated on other grounds, California v. Acevedo, 500 U.S. 565 (1991). See also Michigan v. Tyler, 436 U.S. 499 (1978) ("a major function of the warrant is to provide the property owner with sufficient information to reassure him of the entry's legality"); United States v. Martinez-Fuerte, 428 U.S. 543 (1976) (Without a warrant the occupant has "no way of knowing the lawful limits of the inspector's power to search, and no way of knowing whether the inspector himself is acting under proper authorization.") ( quoting Camara v. Municipal Court, 387 U.S. 523, 532 (1967)).

At no point did the agents present either Jones, his wife or son a copy of the warrant with attachment to inform them of the scope of the warrant, nor did they leave a copy on the premises. This failure to provide a copy of the warrant with attachment merits suppression of any evidence recovered as result. See United States v. Gantt, 194 F.3d 987 (9th Cir. 1999). For these reasons, Jones respectfully moves the honorable Court to suppress as evidence at trial in this case all evidence obtained as a result of the search of 10870 Moore Street, Waldorf, Maryland.

**VII**

**MOTION TO SUPPRESS EVIDENCE OBTAINED FROM
MOBILE TRACKING DEVICE**

On September 16, 2005, the government applied for an order authorizing the use of an electronic tracking device on Jones' Jeep Cherokee bearing Maryland tag M667480. In support of the application, the government submitted another affidavit executed by Agent Yanta. (See Exh. 5 – Tracker Affidavit). Relevant to probable cause, the Tracker Affidavit states that "affiant believes that Jones is engaging in trafficking substantial quantities of cocaine throughout the greater [sic] in the District of Columbia Metropolitan Area. (Id. at ¶ 2). Agent Yanta further also incorporates into her affidavit the First Periodic Reporting Regarding Wire Interceptions[3] and the September 2, 2005, affidavit in support of the wire interceptions. (See Exh. 6- September 2, 2005, Wiretap Affidavit). Regarding the Jeep bearing MD tag M667480, the September 2 Affidavit merely states that the Jeep had been seen in the vicinity of Jones' Levels nightclub in excess of 35 times. (See Exh, 5 at ¶ 76). The September 2 Affidavit also mentions Jones would direct CS-1 to his "Jeep" that was parked outside Levels to pick up drugs from the Jeep. There is not mention anywhere in the September 2 Affidavit that Jones would use the Jeep bearing MD tags M667480 to deliver, pickup, store or transport drugs. In fact, there is no allegation within the four corners of the September 2 Affidavit that the Jeep that CS-1 claims to have been used by Jones to store cocaine was the same Jeep bearing MD tag M667480.

It is established law that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter. See Franks v. Delaware, 438 U.S. 154, 165 (1978); Nathanson v. United States, 290 U.S. 41, 47 (1933); Giordenello v. United States, 357 U.S. 480,

---

[3] To date the government has not produced to the defense a copy of this report.

485-486 (1958).  Probable cause cannot be established by an affidavit that is purely conclusory in stating the affiant's belief that probable cause exists without detailing any of the underlying circumstances upon which that belief is based.  See Giordenello.  In the Tracker Affidavit and the incorporated September 2 Affidavit there is absolutely no mention of the specific facts and circumstances that would allow a detached and neutral judicial officer to determine that probable cause exists that the Jeep bearing MD tags M667480 was in any manner being used for criminal activity so as to justify the authorization of an electronic tracking device on that particular vehicle.  In fact, in either affidavit there is absolutely no mention of probable cause as it relates to that specific Jeep.[4] Thus, any evidence obtained as a result of the use of the tracking device must be suppressed.[5]

---

[4] It is interesting to note that the Order issued as a result finds that "there is probable cause that the vehicle described . . . is being used by Jones to facilitate the distribution of controlled substances and related money laundering notwithstanding the obvious deficiencies in the affidavits.

[5] Jones incorporates by reference the arguments made in his wiretap suppression motion and submits that the warrant issued for the electronic tracking device was also invalid because it resulted from an affidavit that relied on intentional misstatements and a reckless disregard for the truth.  See Franks v. Delaware, 438 U.S. 154 (1978).  Additionally, the instant search warrant was invalid because it was tainted by illegally obtained evidence (the wiretaps).

**VIII**

## MOTION TO SUPPRESS TANGIBLE EVIDENCE SEIZED
## FROM GREEN HONDA ODYSSEY MINIVAN

On April 5, 2005, Lawrence Maynard and Derrick Gordon were driver and passenger of a 1997 Honda Odyssey Minivan passing through Durham, North Carolina. A Durham police officer stopped the minivan for speeding. Upon stopping the minivan, the officer asked Maynard for his license and registration. Maynard provide his license and a registration receipt for the vehicle in the name of Antoine Jones. (See Exh. 7).[6] Thus, it should have been clear to the officer that Maynard was not the owner of the minivan. Nevertheless, after questioning Maynard and Gordon, the officer became suspicious and asked for consent to search the minivan. Maynard gave consent to search. Another officer then appeared and conducted a canine search of the vehicle with led to the discovery of approximately $67,115 hidden in a secret compartment under the floor boards of the minivan. Maynard and Gordon denied knowledge of the hidden compartment and the money and were sent on their way. The minivan and the money were seized as evidence.

A defendant's constitutional rights can be waived by a third party only if it is proved that reasonable appearance of authority to consent existed and, also, that just prior to the search, facts existed showing actual authority to consent. The government must prove these things by a preponderance of the evidence. See United States v. Cook, 530 F.2d 145, 147 (7th Cir. 1976), reversed on other grounds, 415 U.S. 164, 177 n.14 (1974). Here, when Maynard produced vehicle documents in the name of Antoine Jones immediately prior to the search, it should have been apparent to the officers that Maynard was not the owner of the minivan and did

---

[6] Discovery provide by the government in relation to this stop reveals that located in the van were an Application for Certificate of Title for Antoine Jones; a Certificate for Title for a Vehicle listing Antoine Jones as the buyer; and a Temporary Inspection Waiver listing Antoine Jones as the owner.

not have reasonable authority to consent to a search.  Thus, any evidence seized as a result

should be suppressed.

## IX

## MOTION TO SUPPRESS EVIDENCE SEIZED AT LEVELS NIGHTCLUB

On October 21, 2005, the government obtained a warrant to search to search the premises of the Levels Nightclub at 1960 Montana Avenue, NW, Washington, DC, which was owned by Jones.  The affidavit in support of the search warrant (Exh. 8 - Levels Affidavit) relied heavily on assertions made in this affidavit relied heavily on facts asserted in the affidavits discussed in Jones' Motions to Suppress Evidence Obtained from Interception of Wire Communications and Seizure of Electronic Communications filed separately.  Additionally, the Levels Affidavit also relied heavily on evidence obtained as a result of the electronic interceptions.

Jones incorporates by reference the arguments made in his wiretap suppression motion and submits that the warrant issued for the search of Levels was invalid because it resulted from an affidavit that presented intentional misstatements and a reckless disregard for the truth.  See Franks v. Delaware, 438 U.S. 154 (1978).  Additionally, the instant search warrant was invalid because it was tainted by illegally obtained evidence (the wiretaps).  Thus, any evidence seized at Levels must be suppressed as the fruit of the poisonous tree.  See Wong Sun v. United States, 371 U.S. 471 (1963).

      **WHEREFORE**, for the foregoing reasons Mr. Jones respectfully requests that

these Motion be **GRANTED**.

Dated: Washington, DC
      July 12, 2006             Respectfully submitted,

                    **LAW OFFICE OF A. EDUARDO BALAREZO**

By: _____
    A. Eduardo Balarezo (Bar # 462659)
    400 Fifth Street, NW
    Suite 300
    Washington, DC  20001
    (202) 639-0999

    *Counsel for Antoine Jones*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of July 2006, I caused a true and correct copy of the foregoing Defendant Jones' Omnibus Pre-Trial Motion to be delivered to the parties in this matter via Electronic Case Filing (ECF).


_____
A. Eduardo Balarezo