UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

V                                      Case No. 05-CR-386(1)(ESH)

ANTOINE JONES


Defendant Jones' Renewal Pre-/Trial Motion

In finding of newly discovered evidence under Rule 16, Defendant Jones is requesting a pre-trial motion to be renewed.


FACTS

Jones has been charged in a superceding indictment with conspiracy to distribute and posses with intent to distribute five kilograms or more of cocaine and fifty grams or more of cocaine base (Count 1)

Unlawful possession with intent to distribute 50 grams or more of cocaine base (Count 2)

Unlawful possession with intent to distribute cocaine and aiding and abetting (Count 3), and

Use of a communication facility to facilitate a drug trafficking offense (Counts 5-34).

The government's general allegation is that Jones was part of a narcotics conspiracy from at least 2003 until October 24, 2005, which spanned from the District of Columbia, Maryland, Texas, North Carolina, and elsewhere. In particular, the

government alleges that Jones was the primary supplier of cocaine to members of the organization in the District of Columbia and Maryland.

## CHANGE OF VENUE

I, Antoine Jones, am requesting to change venue on grounds the Court is prejudice.

I.  Pre-trial motion denied electronically on August 10, 2006, No evidentiary hearing, no chance of rebuttal nor ability to present facts concrete evidence and defense witnesses.

II.  Honorable Judge John M. Facciola signed and granted a pen register order on June 20, 2005 and an expired extension order on September 19, 005, allowing the F.B.I. investigator to monitor Jones' pen register, trap and trace, caller identification and cell site information on cell phone number (202-538-3946) and (202-746-0470), allowing the government to invade Jones' privacy and use and gather illegally obtained evidence to be used against and included in the Jones' investigation.

III.  Honorable Judge Paul L. Friedman signed and granted a G.P.S. on a Jeep Grand Cherokee, defendant Jones' vehicle (September 16, 2005.  Judge Friedman gave the order to be executed at any hour of the day or night and to be executed no later than ten (10) days from the date of the issuance of the order on September 16, 2005.

Even with the legal order from Judge Friedman, the F.B.I. agent(s) maliciously went against the Judge's court order, did not take time to apply for valid G.P.S. application and perform their duties legally.  Instead, the Federal agent(s) violated the judge's court order by placing the G.P.S. device after the original order had expired.

Placing the electronic device illegally on Mr. Jones' vehicle violated Jones' 4th Amendment Constitutional Rights, and illegally obtained evidence was allowed to be used and gathered on the Jones investigation.

Further, the government applied for an "Ex-parte Application for Order Authorizing Use of an Electronic Tracking Device" under notice requirement under Federal Rule P.41. In simple language, the government stated and requested a search warrant. Note: On case 1:05-CR-00389-ESH Document 101 Filed on 04/14/2006 Page 1 of 1 it simply states, (B) Search Warrant and Supporting Affidavit for a G.P.S. System Placed on a Vehicle Used by Antoine Jones. The bottom of this court document states "Sincerely, John V. Geise, Rachel Carlson Lieber, Assistant United States Attorneys. Under Rule 16, I, Antoine Jones, defendant, have requested on numerous occasions a copy of the G.P.S. Search Warrant that Assistant United States Attorneys John V. Geise and Rachel Carlson Lieber submitted in Record (4/14/2006 Document 101). Until this day, October 12, 2006, I have not received a copy of said documentation. This is a violation of Rule 16, Rule 41, Jones' 4th Amendment and it demonstrates Prejudice to defendants.

Defendant Jones would like to remind the courts that the Honorable Judge Huvelle, in part allowed suppression of the data obtained from the G.P.S. device when the Jeep Cherokee was parked in the garage adjoining the Moore Street property. All other data obtained from the device has been deemed admissible. The courts show Prejudice when not only the illegal data couldn't be used in Jones' garage, attached to Jones' house, the evidence in the Jeep Grand Cherokee and the Moore Street house should have been suppressed with illegally obtained data. United States v. Karo Cite as

104 5.CT.3296 (1984) this "search" began at the moment Karo brought the can into his house and hence concealed it from the public view as a general matter, the private citizen is entitled to assume, and in act does assume, that his possessions are not infected with concealed electronic devices. The concealment of such items on personal property significantly compromises the owner's interest in privacy, by making it impossible to conceal that item's possession and location from the government, despite the fact that the Fourth Amendment protects the privacy interest in the location of personal property not exposed to public view. I find little comfort in the Court's notion that no invasion of privacy occur until a listener obtains some significant information by use of the device. Ante, at 3302. The expectation of privacy should be measured from the stand point of the citizen whose privacy is at stake, not of the government. The agent did not know who was in possession of the property or where it was once it entered Karo's home. From that moment on, it was concealed from view. Because the beeper enabled the agent to learn the location of property otherwise concealed from public view, it infringed on privacy interest protected by the Fourth Amendment.

The impact of beeper surveillance upon interest protected by the Fourth Amendment leads me to what I regard as the perfect sensible conclusion that absent exigent circumstances government agent have a constitutional duty to obtain a warrant before they install an electronic device on a private citizen's property.

Note: Honorable Judge Paul L. Friedman commanded in the "Order Authorizing the Installation and Use of an Electronic Tracking Device" the Judge state "It is further Ordered" that this authorization to operate the electronic tracking devices as a "physical surveillance aid." Once again the Judge's (expired) order illegally used the G.P.S. as a

"Physical Surveillance Aid", while monitoring the illegal G.P.S. on my Jeep Grand

Cherokee. On October 24, 2005, (before 6 a.m.) once the illegal physical surveillance

aid (G.P.S.) on the Jeep Cherokee entered the Jones' garage adjoined to the Moore Street

house , the search started once Jones closed his garage door, concealed to the public eye.

The government agents testified that Jones' Jeep Grand Cherokee, will be concealed with

guns, drugs, money and contraband and Mr. Jones himself. October 24, 2005, before 6

a.m. in the morning with the assistance of the G.P.S. monitor physical surveillance aid,

data would show Mr. Jones and the Jeep Cherokee coming or going or stationary in the

privacy of Moore Street house. This attainment of the illegal data violated my Fourth

Amendment Rights, under Rule 41. To remind the government agent a "search" often in

Constitutional law, a visual observation or invasive action that may infringe on a person's

reasonable expectation of privacy. Seizure – the act or an instance of taking possession

of a person or property by legal right or process. Possession – the fact of having or

holding property in one's power by legal right or process. Dominion – Control,

possession (dominion over the car) from "Black's Law Dictionary" there is no way the

government agent could not have dominion and control over Jones' Jeep Grand

Cherokee, even if the agents entered the Jones' Jeep, place something on the Jones' Jeep,

got on top or got under Jones' Jeep, there was dominion and control, seize, possess, etc.

You can't wash a vehicle, paint a vehicle, change a light bulb, change a battery, wash the

vehicle window, change the tire, enter in the vehicle, work on anything mechanical or

electrical anywhere on the vehicle, (especially placing a G.P.S. device in the vehicle or

on the Jones' Jeep Grand Cherokee without taking dominion and control of Jones'

vehicle under Rule 41. The Courts allowed Prejudice to not order the Government to

submit or present a legal search warrant or at least a legal application order.  Law states

under Rule 41, it is illegal to use data from an illegal search or illegally obtained

evidence.

IV.  TEXT MESSAGES - The Court demonstrated and allowed Prejudice by

allowing the Government to double talk and not focus on the point and the statements

written by government agents in the September 2, 2005, wire tap affidavit, taken from

Antoine Jones' text messages and Lawrence Maynard's text messages that were stored.

The Government agent states that Lawrence Maynard had approximately 180 text

messages to and from 301-613-6293 between the dates of August 4, 2005 and August 10,

2005, several contained similarly suspicious content, in particular from Wallace Ward, (a

44 year old, 6'2" tall 335lb **deceased** black man) stating to this man "my man is back up

working with a monster".  In addition, Maynard sent a text message to Tymira Hunter (a

female friend of Maynard's) with similar content "my man is working with a big monster

– back up working with a monster."  Maynard also text message to Tymira Hunter

(Maynard's female friend) "What are you doing?  Back up working with a monster.

Investigation never mention that on a daily basis Maynard text message were sexual in

context.  Example in the 180 text messages from Maynard include messages such as,

"thank you baby, you're a very good lover, How are you feeling?, You enjoy being

teased and pleased, no is your wife a good, thank you baby, you're a very good lover, and

yes in deed also my man is working with a big monster and back up working with a

monster."

All of these text messages with dates, my attorney mentioned in defendant Jones'

motion (Document 142).  These text messages indeed show sexual context not suspicious

content.  Maynard also receive three more text messages, investigator states was suspicious messages.  Two from Club Levels bartender, texting she needs "2 cokes and Malibu, pl Ka$h money" followed shortly she "need a can opener! Kash money" simple English interpretation, Karissa Jones (Bartender at Club Levels) she needs two Liter Coke bottle, bottle of Malibu (popular drink served at bars), - "ones" followed shortly she needs a can opener at the bar and cash money "ones".  Maynard also received a text message from Nita Worley (Bartender from Club Levels).  Nita text Maynard stating "I need ice 4 my beer" in plain simple English, Nita is requesting ice for her beer cooler at the bar.  If the investigator had once stepped into the establishment during club hours, they would have known that the club employed Nita Worley as a Bartender and Karissa Jones as well.  Investigator stated that Karissa Jones is a fictitious person who does not exist.  The investigator gathered only a few text messages which they could use to deceive and mislead Judge Paul L. Friedman.

The investigator also gathered text messages on defendant Jones, which investigator states were suspicious in nature.  The investigator uses four text messages from Club Levels' Bartender Quentessa Broussard whose phone is listed in the name of Quentessa Broussard 301-768-8466.  (Investigator deceived the Judge with the false statement they believed the cell phone was used by a Damien Broussard), a false and fictitious name in no relation with the Club, nor Maynard, nor Jones.  If this person does exist, he is unknown to anyone working at the Club.

Quentessa Broussard did indeed text Jones, her employer at Club Levels.  On May 29, 2005, at 5:21 a.m. GMT (Greenwich Mean Time), which is actually 12:21 a.m. EDT (Eastern Daylight Time).  Quentessa text a message to Jones stating she "need

ones" – simple English, she needs some ones for her bar. On June3 4, 2005, approximately 5:36 a.m. GMT which was 12:36 a.m. EDT, Quentessa text a message "need ones bad" simple English, she needs ones for her bar. Another message: "need 2 talk 2 u tonight please, ru coming in?" June 27, 2005 4:46 p.m. GMT or 11:46 p.m. EDT Quentessa was stating she needed to talk to Jones tonight and was asking if he would be coming into the Club later that evening. Quentessa needed to discuss an advance on her pay check. She needed to pay a personal bill and was requesting a salary advance. On Friday July 12, 2005, (payday for Club Levels employees) Quentessa texted Jones "have your package" will c u 2 night if that's okay". This was simply her communicating she would be able to repay the advance money she had borrowed on June 27, 2005.

It was prejudice to allow the Government Investigator to state the text messages are consistent with the encryption frequently used by narcotics traffickers in effect to elude law enforcement, and are related to Wallace Ward (a deceased man), Damien Broussard (a fictitious name and/or a person unknown to Jones, Maynard, Club Levels staff), Quentessa Brousard, Nita Worley, and Maynard's female associates Collette Watson and Tymira Hunter. Example repeated efforts to purchase kilograms of cocaine (ones) from Maynard and Jones. The point here is not to allow the Government's double talk about the probable cause in the affidavit, but to stick to the point, the text messages from Jones and Maynard were deceiving and misleading and disregard to the truth. "Frank v. Deleware" any Judge would have given justice if they knew the nature of these text messages not the bias view presented by the Government investigator. The Court was Prejudice to allow these text messages to be used ant not eliminate or suppress.

V.  <u>Motion to Suppress Evidence Obtained From Interception of Wire</u>

<u>Communication</u> without getting an evidentiary hearing.  Defendant Jones and co-

defendants were denied an opportunity to prove and demonstrate facts, present evidence

and witnesses.  The September 22, 2005 Wire Tap Affidavit was deceiving, misleading,

riddled with misstatements, false statements, Prejudice statements and disregard for the

truth "Frank v. Delaware."  In the Motion Hearing the defendants had prepared to show

traditional methods and necessary requirements were not tried "U.S. v. Canetro cite as

861 F.20 1171 (9th Cir 1988), United States v. Spagnuolo.

VI.  <u>Motion to Suppress Tangible Evidence Seized from Jones' Moore Street</u>

<u>House</u> – The Courts allowed the Government to state on the record that a copy of the

Warrant notes that a "copy of warrant and receipt for items" was left with Deniece Jones,

defendant's wife.  Deniece Jones' signature is affixed to each page of the five pages of

"Receipt for Goods Taken" during the search.  The Court however, allowed to

Government to falsely state without any proof, at the very least, that Jones was provided

with a copy of the Warrant and a Receipt at the conclusion of the search.  This is a false

statement.  Yes, defendant Jones' wife signed five receipt forms, however, no Search

Warrant was ever shown to Jones or his wife, neither was a Warrant signed by Jones'

wife, nor Attachment A.  The agents entered the Moore Street house without a Search

Warrant, and therefore, no warrant was presented to Mr. or Mrs. Jones nor was a Warrant

or Attachment A photographed or signed by neither defendant nor his wife.  U.S. v. Gant,

Fed R Crim P 41(F)(3)  The officer executing the warrant must give a copy of the warrant

and a receipt for the property taken to the person from whom, or from whose premises,

the property was taken, or leave a copy of the warrant and receipt at the place where the

officer took the property. This is a violation of Rule 41 and should have been suppressed. In the evidentiary hearing, defendant Jones had evidence and witnesses that the government agent never presented Jones' wife a completed copy of the Search Warrant.

VII. <u>Motion to Suppress Evidence Seized at Levels Night Club</u> – Defendant Jones cites United States v. Gantt, Fed Rule Crim P. 41(F)(3). The Government agent(s) did not leave a Search Warrant nor Attachment A at Levels Night Club, nor was one presented to defendant on October 24, 2005. Defendant Jones did get one (1) page Inventory Sheet to sign. Defendant Jones was prepared to present evidence and witnesses during the evidentiary hearing to demonstrate the government agents' misconduct throughout the search of the Club. The court's denial of an evidentiary hearing gravely hindered Jones' ability to demonstrate this misconduct and Jones' opportunity to present a fair rebuttal.

VIII. <u>Government Motion to Admin Evidence of Other Crime Pursuant to Federal of Evidence 404(B) and to Use Prior Conviction for Impeachment Pursuant to Federal Rule of Evidence 609</u> – By admitting evidence of other crimes or wrong acts against defendants Antoine Jones, Adrian Jackson, Kevin Holland, Michael Huggins, and Kirk Carter, will be Prejudice to the defendant(s), as stated in Kevin Holland's 404, 609 Motion. Having a biased jury will deny the defendants the right to a fair trial. The defendants will be fighting an uphill struggle and a losing battle from the onset.

IX. <u>Segregation Without Court Order</u> – The Courts allowed the government to illegally search defendant Jones' cell without probable cause, make up a fabricated story and place defendant Jones in Maximum Security Segregation, total Separation. Defendant Jones' Due Process privileges were taken, along with telephone privileges,

mail privileges, social visits, legal phone calls denied, legal mail violated, access to court denied.    Defendant Jones was stripped of all privileges without provocation.  His legal mail was opened and reviewed, regular mail (incoming and outgoing) was held for approximately three months, denied access to court, law library, and religious services. Defendant Jones' right to a fair trial was hindered when these privileges were stripped. Jones was unable to communicate with his attorney, witnesses, and he was unable to research legal information pertaining to his case.  Defendant was placed in SE-1 under Total Separation without probable cause.  This is a clear case of Prejudice and vendictiveness toward the defendant.  Jones is the only co-defendant that has been restricted to social visits (until this date only his wife is allowed to visit him at the jail). Other family members including defendant's son is not allowed to visit with the defendant.  Once again, it is a struggle to prepare for a successful defense with such tight restrictions placed on the defendant.  This hampers the defendant's ability to prepare and restricts his right to a fair trial.

    X.  Government Violation Under Rule 16

    Today is October 12, 2006, the government has not given defendant Jones the discovery Under Rule 16 "Brady v. United States".  On numerous occasions Jones has requested discovery evidence and still until today the government has not complied. Assistant US Attorney Rachel Leiber has stated "for the record" that she will not go through all of the discovery to determine and give Mr. Jones the information he is requesting.  Listed below is some of the information Mr. Jones has requested and has not received:

    1. ICE Investigation – photos from Myrtle Avenue Bowie, MD house.

2. Statements from Myrtle Avenue neighbors

3. Summit Road Apartment – statement from maintenance man and Leasing Manager

4. Lawrence Maynard – Pen Register Application and extension Order (there should be at least 4 to cover the dates in question)

5. G.P.S. Affidavit and G.P.S. Search Warrant

6. Data on the Caller Identification

7. Data on the Cell Site Tracker

8. Data on the Caller ID on Maynard's cell phone

9. Data on the Cell Site Tracker on Maynard's Cell phone

10. Discovery evidence requested from the Moore Street House: financial documents, personal photos, numerous photos from club events, and cell phone records.

11. Club Levels documentation in file cabinet in Room H

12. North Carolina stop statements from Lawrence Maynard and Derrick Gordon

13. North Carolina stop radio calls.

14. All photos of the North Carolina stop scene.

15. Statement from Anthony Koonce.

16. Post arrest statements from John Adams, Demetris Johnson, Donald Hunter, Mr. Bermea

17. Government statements on John Adams, Demetris Johnson, Donald Hunter, and Mr. Bermea

18. 9805 Potomac Drive: Note book, numbers in cell phones, lease agreement, assorted papers, receipts, bills, photos, paperwork and documentation

19. Copy of Search Warrant for 9156 Piscataway Road, Clinton, MD; photos taken and documentation seized

20. Radio calls Moore Street House, Brandywine Road House, 9508 Potomac Drive House

21. Chemist report on drugs seized, Potomac Drive House, Huggins House, Johnson House, Jackson House.


_____
Antoine Jones, Defendant