UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 05-CR-386(1) (ESH) |
| | : | |
| ANTOINE JONES | : | |

**DEFENDANT JONES' MOTION FOR INSTRUCTION ON
MULTIPLE CONSPIRACY; REQUEST FOR OTHER INSTRUCTIONS AND
OBJECTIONS TO GOVERNMENT'S PROPOSED INSTRUCTIONS**

Defendant Antoine Jones, by and through undersigned counsel, hereby respectfully requests the Honorable Court to instruct the jury on multiple conspiracy as a defense to the conspiracy charged in the indictment. In support of this motion, Jones states as follows:

1. Jones has been charged in a Superseding Indictment with Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine and Fifty Grams or More of Cocaine Base (Count 1); Unlawful Possession with Intent to Distribute 50 Grams or More of Cocaine Base (Count 2) (dismissed by the government); Unlawful Possession with Intent to Distribute Cocaine and Aiding and Abetting (Count 3) (dismissed by the government); and Use of a Communication Facility to Facilitate a Drug Trafficking Offense (Counts 5 -34). The government's general allegation is that Jones was part of a narcotics conspiracy from at least 2003 until October 24, 2005, which spanned from the District of Columbia, Maryland, Texas, North Carolina and elsewhere. In particular, the government alleges that Jones was the primary supplier of cocaine to members of the organization in the District of Columbia and Maryland.

2. In a conspiracy prosecution the appellant may prove (1) that the evidence established the existence of multiple conspiracies, rather than the one conspiracy alleged in the

indictment, and (2) that because of the multiplicity of defendants and conspiracies, the jury was substantially likely to transfer evidence from one conspiracy to a defendant involved in another. *United States v. Tarantino*, 846 F.2d 1384, 1391 (D.C. Cir. 1988) (citations omitted). The existence of a single conspiracy or multiple conspiracies is primarily a question of fact for the jury. *Id.* (citations omitted).

3. In determining whether the conspiracy was single or multiple, and which acts were committed in furtherance of the common conspiracy, courts have isolated a variety of factors. *Tarantino*, *id.* The most important of these is whether the conspirators share a common goal, such as the possession and distribution of narcotics for profit. *United States v. Dickey,* 736 F.2d 571, 582 (10th Cir. 1984), *cert. denied,* 469 U.S. 1188  105 (1985). Another is the degree of dependence inherent in the conspiracy. *United States v. Cerro,* 775 F.2d 908, 914 (7th Cir. 1985). Some courts have permitted the jury to infer the conspirators' knowledge of their link to other conspirators from the nature of a narcotics conspiracy. *See United States v. Behrens,* 689 F.2d 154, 160 (10th Cir.), *cert. denied,* 459 U.S. 1088 (1982).

4. In the instant case,[1] the evidence generally has been that Mexican suppliers of cocaine provided Jones with multiple kilogram quantities of the narcotic. The Mexicans had other customers (Homeboy) and were themselves divided as to their source of supply (Primo v. Pelos). Once Jones purchased the cocaine, the evidence indicates that he sold it wholesale to various other persons, including his codefendants on trial (Jackson, Holland, Huggins) and others (Adams, Carter, Maynard, Hunter and Givens).

5. The government presented the testimony of John Adams, who claims that he would obtain cocaine for himself to distribute further, and on occasion would obtain cocaine

---

[1] Jones recognizes the state of the evidence for the purposes of this motion only and does not concede that the evidence in fact establishes his involvement in any conspiracy.

to pass on to some of the other codefendants (*i.e.*, Jackson). Hunter and Givens basically testified that they were customers of Jones' and did not testify as to any knowledge or involvement by the other codefendants. Bremea testified that he dealt only with Jones and that he knew none of the codefendants.

6. All of the relevant cooperators (Adams, Hunter, Givens) testified that they obtained cocaine from Jones and that they were in business for themselves. On cross-examination they all admitted that Jones did not in any way control their distribution, nor got a commission from their sales. In effect, Jones was a mere distributor to them, not a coordinator of their sales or profits. Additionally, the government has presented no evidence that either Jackson, Huggins or Holland had any connection to each other in the narcotics business.

7. *Tarantino* notes that the wheel metaphor has not been strictly applied as the method of analysis for all conspiracies, and particularly not for drug conspiracies. Rather, courts have utilized a chain metaphor. *Id.* at 1392. Under the chain analysis, the government need not prove a direct connection between all the conspirators. A single conspiracy may be established when each conspirator knows of the existence of the larger conspiracy and the necessity for other participants, even if he is ignorant of their precise identities. When the conspirators form a chain, each is likely to know that other conspirators are required. *E.g., United States v. Andrus,* 775 F.2d 825, 840-41 (7th Cir. 1985).

8. Rather than the "chain conspiracy" typically used to analyze a narcotics organization, Jones' scheme was closer to a classic "hub-and-spoke" conspiracy, in which a central core of conspirators recruits separate groups of co-conspirators to carry out the various functions of the illegal enterprise. *See Kotteakos v. United States,* 328 U.S. 750, 755 (1946). In such a conspiracy, the core conspirators are the hub and each group of co-conspirators form a

spoke leading out from the center in different directions. The core conspirator moves from spoke to spoke carrying out his business.

9. Unlike the classic hub-and-spoke conspiracy, however, Jones and arguably Adams were the only conspirators in the hub, and when they moved from spoke to spoke, they moved alone. There was no time at which another conspirator moved from spoke to spoke. The Supreme Court has characterized such a conspiracy as a "rimless wheel" because there is no rim to connect the spokes into a single scheme. *Kotteakos,* 328 U.S. at 755. And, if no rim connects the spokes, there are multiple conspiracies.

10. In fact, it appears that Jones went out of his way to keep the various spokes separate from each other. For example, in the government's timeline of events, the entry for September 6, 2005, notes that Jones made the following calls:

> 9:55 am: calls Kevin Holland and tells him he'll meet Holland at Levels (646)
> 9:57 am: calls John Adams and tells him he will be at Adams's house in 5 minutes (647)
> 9:58 am: calls Pauline Spence and tells her he is on his way to her house (648)
> 11:30 am: calls Donald Hunter and tells him to meet at "the Circuit" (Circuit City on Branch Ave) (668)
> 11:59 am: calls John Adams and says he will be at Adams's house in 2 minutes (673)
> 12:21 pm: calls Donald Hunter and tells him to meet at the carwash (Sam's Carwash on Branch) (689)

In each call Jones makes plans to meet at different places. If all the conspirators were interdependent, why would Jones go to such pains to keep them separate?

11. The only case that the government has cited to the defense in opposition to a multiple conspiracy instruction is United States v. Graham, 83 F.3d 1466 (D.C. Cir. 1996). That case involved the notorious Newton Street Crew a violent street distribution ring that operated in the district. In affirming the denial of the instruction, the Court of Appeals noted evidence presented that defendant Hoyle was a "common source of drugs," a "boss" who "managed business on Newton Street," and that Hoyle supplied various cliques on Newton Street

4

and all proceeds went to him. *Id.* at 1471-72. Furthermore, "the cliques were interdependent. Participants served as police look-outs for other cliques. . . . When one clique ran out of cocaine, buyers were sent to another clique to make a purchase. . . . . Members of different cliques sometimes worked together to store, bag, and distribute cocaine." *Id*. at 1472.

12. The government has presented no evidence in this case of any such action by Jones or the other alleged conspirators. Thus, Jones respectfully requests that the Court instruct the jury on multiple conspiracies. (Exh. 1).

13. Additionally, Jones respectfully requests that the Court also instruct the jury as per the attached instructions. (Exh. 2). With respect to the Defendant's Theory of the case, Jones requests that the Court instruct the jury that Jones "denies each and every charge against him."

14. Finally, Jones objects as follows to the proposed instructions submitted by the government:

   a. Instruction No. 10: Evidence admitted for limited purpose – second paragraph, fifth line: add "ONLY" between "it" and "to" – so it reads "However, you may consider it ONLY to the extent you believe that it bears on the question of a defendant's knowledge and intent.

   b. Instruction No. 14: burden of proof – see exh. 2

   c. Instruction No. 29: co-conspirator statements – add sentence at end to read: "However, it is for you to determine whether the person making the statement is a conspirator in the first place."

   d. Instruction No. 30: testimony regarding pleas entered into by witnesses – change last sentence to read: "You may not infer that

5

because these witnesses pled guilty to a crime charged in the indictment in this case that the crimes charged in the indictment have been proven."

e.  Instruction No. 35:  vicarious guilt – delete

f.  Instruction No. 36:  possession of 50 grams or more of cocaine base with intent to distribute – delete

g.  Instruction No. 37: possession of cocaine powder with intent to distribute cocaine powder – delete

**WHEREFORE**, Jones respectfully requests that this motion be **GRANTED**.

Dated: Washington, DC
       December 4, 2006                    Respectfully submitted,

                                           **LAW OFFICE OF A. EDUARDO BALAREZO**


                                    By: _____
                                           A. Eduardo Balarezo (Bar # 462659)
                                           400 Fifth Street, NW
                                           Suite 300
                                           Washington, DC  20001
                                           (202) 639-0999

                                           *Counsel for Antoine Jones*

6

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of December 2006, I caused a true and correct copy of the foregoing Defendant Jones' Motion for Instruction on Multiple Conspiracy to be delivered to the parties in this matter via Electronic Case Filing (ECF).

_____
A. Eduardo Balarezo