PROSECUTOR MISCONDUCT

STATEMENT OF FACTS & AFFIDAVIT

Assistant US Prosecutors Rachel Lieber and John Geise, along with the FBI, MPD and ICE agents have violated several of the Rules of Professional Conduct. These persons all displayed blatant disregard for the truth, were dishonest, deceitful and made numerous misrepresentations to the courts, judges, trial jury, in the many affidavits, grand jury and pretrial motions and during trial. The government attorneys and agents violated the law, made numerous false and perjured statements, violated many ethical codes, willfully ignored and violated our constitutional rights, and placed themselves above the law.

The government withheld and did not disclose some very important and significant Brady material under Rule 16, depriving me of my Constitutional Rights and seriously interfering with Administration of Justice and violating the Code of Professional Conduct Rules 3.3, 3.4, 3.8, 4.1.

The Act of Perjury (Black Law) – The act or an instance of a person's deliberately making false or misleading statements while under oath.

The Act of Misconduct (Black Law) – Unlawful or improper behavior, corrupt violation of his or her duties, reckless disregard of another Rights, dishonesty or attempt to persuade a court or jury by using deceptive or reprehensive method.

The Law states, act or omission by an attorney, (prosecutors or persons which violating the attorney oath of office or the Rule of Code of Professional Conduct, currently in effect in the District of Columbia shall constitute misconduct. When the Government and law enforcement willfully ignore these violations and intentionally violate these misconducts. The Government knows the consequences and when they choose this course of action the consequences will be severe. When a member of the Bar is found to have betrayed his or her highest trust and has violated legal ethics by showing bias and prejudice towards a defendant or defense team, warrant prosecutorial misconduct.

I enclosed numerous examples of perjury (18§1623 False Declarations before Grand Jury or Court), false statements, misstatements and misconduct in the affidavit in the statement of facts.

My conclusion, the defendant went to court repeatedly, over a year and through a four month trial and the Government hasn't disclosed or given the defendants the discovery they are legally entitled to, violating their constitutional rights. The discovery process is crucial in criminal cases. The accuse needs to know all the evidence against them (Brady v MD). This alleged obstructionism has been abused in this case. The wrongdoing by the Government contradicts the Six Amendment of the US Constitution to find out everything related to the case and to pass it on to the defense. The US Supreme Court has ruled repeatedly that prosecutors have an ongoing duty to locate discoverable

evidence held by agents of the State and present the discovery evidence in a timely manner, not during trial or when a witness gets up for the Government, as was the case in this trial.  Even if the prosecutor doesn't know about the evidence because the agents withheld it, as fellow agents of the Government, prosecutors are held to have "constructive knowledge" of law enforcement evidence.  This is about making sure that the trial is a search for the truth, and the truth comes out.  The neglect of the Brady material under Rule 16, by the Government which is favorable to the accused upon request violates due process.  The Government held back on numerous items of Brady material as well as Jencks and Giglio materials.

PROSECUTORIAL MISCONDUCT

JOHN GEISE

Assistant US Attorney, John Geise along with Detective Norma Horne together mislead and deceived the Grand Jury on January 26, 2006 by allowing Norma Horne to testify under oath that the agents seized 40 grams of crack cocaine during the Allendale Road search.  Refer to Norma Horne's grand jury testimony, page 7 line 17, 18, and 19 [violating federal criminal Code 18§1623].

Mr. Geise also violated ethical conduct during Adrian Jackson's pre-trial detention hearing, October 28, 2005.  Mr. Geise tried to deceive the Majistrate Judge Robinson (refer to Adrian Jackson's detention hearing, October 28, 2005, page 28 lines 13 and 14.  Mr. Geise responded:  "And as I said to the court, I think it was about 41 grams with packaging."  Mr. Geise also violated Ethical Violation of Dishonesty by stating on page 33 line 8, "actually 41 grams," and Mr. Geise also added on page 33, lines 11, 12, 13, and 14, "well, as the written proffer indicates, the Government did intend to supplement orally, your honor, and so I am therefore supplement orally, your honor, and so I therefore supplementing it orally as 41 grams including packaging."

During the testimony of FBI agent Mary Counts, November 20, 2006, page 36 lines 7-9, Agent Counts testified to the truth of the actual weight of 3.7 grams of crack cocaine was seized from the Allendale Drive search.  FBI Agent Mary Counts also agreed that the 3.7 grams of crack cocaine was seized in a small zip lock plastic bag.  On page 54, lines 18, 19, 20, and 21, she also agreed that it was less than 4 grams that was seized; representing a drastic difference from the statements made before the court under oath by Norma Horne and John Geise.  These perjurious statements by Horne and Geise are clear ethical violations and displays of dishonesty during a court proceeding (refer to page 56 lines 10 and 11).

Not only does the difference in the "less than 4 grams" versus "40 grams" represent an enormous difference in the sentencing guidelines, it's a clear ethical violation of Honesty (Rule 3.3, 3.4, 4.1), Perjury Federal Criminal Code 18§1623 and Prosecutorial Misconduct.

PROSECUTORIAL MISCONDUCT

JOHN GEISE

TRIAL DATE:   11/27/2006 am

Assistant US Attorney John Geise once again violated the Rules of Professional Conduct by being dishonest, deceitful and interfering with Administration of Justice.  Mr. Geise during trial on November 27, 2006 (am), presented the court with a tainted GPS data which was shown to contradict the actual GPS data, page 16 lines 1-19 which  Mr. Balarezo (defense attorney) presented to Detective Steve Kirchner during his testimony.  Detective Kirchner testified that the agents disconnected the GPS device at 5:21 am on October 24, 2005 during the search of the Moore Street house.  Mr. Geise went as far as to double talk and deceive the court by tainting (altering) the October 24, 2005 GPS data.  Also, on pages 15 and 16 of the November 27, 2006 (am) session of the trial, he further attempted to deceive the court by stating "there were no searches of that kind" referring to Summit Circle Apartment (page 15 lines 24-25, page 16 lines 1-10).  This was proven to be a false statement because the ICE agents went into the Hampton Boulevard warehouse without a search warrant, proving again that Mr. Geise violated the Rules of Professional Conduct, being dishonest and deceitful (Rule 3.3, 3.4, 4.1).  The defense has four strong key witnesses to testify that the Hampton Blvd warehouse photos were not taken on April 30, 2004.  The photos of the warehouse which were presented in trial were actually taken months before the lease was terminated, again proving Mr. Geise violated the Ethical Codes of Conduct and Prosecutorial Misconduct.

PROSECUTORIAL MISCONDUCT

RACHEL LIEBER

VIOLATING RULES OF WITNESS

TRIAL TESTIMONY OF AGENT MARY COUNTS 11/28/2006

Assistant US Attorney Rachel Lieber, Special Agent Mary Counts, Detective Porter, Special Agent Stephanie Yanta, all engaged in violating the Rules of Witnesses. Detective Porter discussed his testimony with Agent Mary Counts, and Agent Mary Counts discussed her and Detective Porter's testimonies further with Agent Yanta and Rachel Lieber. All engaged in discussions of testimonies after being advised by the court not to discuss any testimonies, thereby violating policy and Rules of Witness. Agent Yanta called Agent Mary Counts and discussed the testimony (page 67 line 11, page 68 lines 15-16), and Rachel Lieber admitted she told Agent Mary Counts that there was confusion about where the gun was located (page 69 lines 23-25; page 70 lines 1-2; page 70 lines 22-25; page 71 lines 15-18) shows facts and evidence of violating Rules of Witness.

MPD Detective Norma Horne, Agent Yanta and Rachel Lieber violated the Rules of Witness during Norma Horne's testimony of 11/8/2005. Norma Horne has taken a complete 360 degree turn by changing her testimony on 11/8/2005 by admitting she made a mistake, even after being sworn in under oath. During Rachel Lieber's direct cross, she showed a blown-up, close-up photo of a young man sitting in a Jeep Cherokee. Detective Horne testified that this person was positively Mr. Antoine Jones (defendant). This photo was according to the agents a photo of Mr. Jones taken while he was under surveillance by the agents. The Government showed Detective Horne these photos over the course of a year with extensive preparation by the Government with the lead FBI agent.

While displaying the photo and questioning Detective Horne, it was noticed by the defense and some of the jurors that the photo being displayed was in fact a photo of someone else, not Mr. Jones (defendant), sitting inside the Jeep Cherokee. Agent Yanta heard and noticed the response of the jurors and realized the Government's error. This information was somehow leaked to Detective Horne, once again violating the Rules of Witness. Detective Horne changed her testimony. This is a clear case of violating Rules of Witness and Prosecutorial Misconduct.

PROSECUTORIAL MISCONDUCT
RACHEL LIEBER
RULE 16, BRADY MATERIAL, NON-DISCLOSURE VIOLATION


Assistant US Attorney Rachel Lieber denied defendant (Jones) the right to discovery under Rule 16, Brady Material, violating Ethical Code (Rule 3.2, 3.3, 3.4), denying defendant the right to prepare for a fair trial.

On Tuesday, September 26, 2006 at 2:19 pm Rachel Lieber sent an e-mail to Mr. Balarezo (defense attorney) discussing materials seized from the Moore Street house on October 24, 2005.  Ms. Lieber advised Mr. Balarezo not to waste his time to go through the seized discovery documentation.  Mrs. Lieber also stated that he could feel free to print out the e-mail and use it against her in the future.  Ms. Lieber further stated "of course, if we do stumble across something in our final review that we decide is necessary, we'll flag it for you."

Ms. Lieber went on to state that "the Jones kept everything and they (the agents) seized over 30 something boxes" from the Moore Street house.

Through the many requests defendant Jones made for his Rule 16 Discovery, through motions, notes in court, and through requests to the judge in open court, the prosecutor has ignored all of defendant's requests and has not given defendant all of the discovery documents from the Moore Street house.  During the trial, by court order, defendant Jones was allowed to go through a select few of the boxes of documents taken from the Moore Street house where he was allowed to flag some items.  The agents decided which boxes the defendant would be allowed to go through.  Defendant did "flag" some items to assist his defense, but still has not received copies of the items he "flagged".  The Government however, used some documents seized from the Moore Street house against defendant in trial.  Defendant even noted that some of the items he was interested in using in his defense which were seized from the Moore Street house, i.e., club flyers, financial documents, cell phone bills, etc., were never presented to him, nor were they in the boxes of documents that the agents allowed the defendant to go through.  In essence the agents decided which items they would allow the defendant to use and all other items were kept from the defendant and the defense team.  This act severely handicapped the defense's efforts in preparing for trial.  Rule 16 states that the defendant is entitled to his discovery and in a timely manner.

The ICE investigation disclosure, ICE reports, ICE GPS data, along with other ICE discovery was only disclosed to the defense during trial; and again, some of the ICE discovery has never been turned over to the defense. (ICE cell site data, Javier phone and pen register information and data on Javier's phone.)  Defendant Jones has requested repeatedly, and has not received the August 1, 2005 pen register application and order, Jones' cell site data, Bermea and Donald Hunter's 302s and other discovery.

Assistant US Attorney Rachel Lieber denied defendant the right to prepare for a proper trial and denied defendant the right to a fair trial.

The non-disclosure of these relevant documents, discovery, and important evidence, under Rule 16, the Brady Material is a violation of Ethical Code, Rule Rule 3.2, 3.3, 3.4 and Prosecutorial Misconduct.

PROSECUTORIAL MISCONDUCT

RACHEL LIEBER

GREGORY HAWKINS SR. AS A TARGET

Assistant US Attorney Rachel Lieber boldly attempted to deceived the court during the trial on 12/5/2006. During Mr. Balarezo's cross examination of Agent Stephanie Yanta (refer to pages 102-103), Ms. Lieber violated the Code of Professional Conduct Rule 3.3-Honesty. Ms. Lieber told the court that Gregory Hawkins, Sr., was at home and not arrested, the agents were looking for Gregory Hawkins, Jr. Refer to "persons likely to be intercepted by FBI Target List" on search warrant of the houses and Club Levels affidavit. Gregory Hawkins Sr. is an elderly man born in 1949 and lives on Piscataway Drive. Mr. Hawkins Sr. house was illegally searched on October 24, 2005.

Ms. Lieber can not show one document that has Gregory Hawkins, Jr., and can't show any evidence that the government had Gregory Hawkins Jr. as a target or suspect. Ms. Lieber violated the Code of Professional Conduct and Prosecutorial Misconduct. Ms. Lieber knew for a fact that it was Gregory Hawkins Sr. who was the target.

PROSECUTORIAL MISCONDUCT

RACHEL LIEBER

WALLACE WARD TEST MESSAGES

During the trial, on December 5, 2006, Mr. Balarezo tried to admit a copy of Wallace Ward's Death Certificate but was denied by the court. The death certificate would show that Mr. Ward died on June 1, 2005 (****verify date****). The Government's proffer was attempting to demonstrate text messages between Mr. Ward and Antoine Jones (defendant). Mr. Ward died months prior to the time that the text messages were sent/received.

Ms. Rachel Lieber again attempted to deceive the court when she told the court "second, this does not impeach Agent Yanta. All she said was the phone listed to Wallace Ward sent these messages." She didn't say Wallace Ward himself sent the messages (trial transcript 12/5/2006, page 72 lines 15-23). This is a false statement and deceiving. Refer to September 2, 2005 wiretap Affidavit, paragraph 27. First, on June 12, 2005, Ward sent the target telephone a text message "you should get at me as soon as u get a chance you will like me: promise check me out." This message is followed on June 13, 2005 by two messages from Wart to Antoine Jones one minute apart, stating "Just between me and u get at me asap, and you should get at me as soon as you get a chance you wou." A review of the pen register data pertaining to the target telephone revealed that Antoine Jones called Wallace Ward on at least four occasions during the pertinent pen register (date last dial, August 22, 2005, almost 52 days after the death of Wallace Ward). This point defense tried to put into evidence and on the record.

Ms. Lieber knew for a fact that Wallace Ward was a target. Refer to Target and Offence on page 3 where it mentions Wallace Ward and on page 7, Persons Likely to be Intercepted, page 15 paragraph (p) Wallace Ward – is a black male born December 15, 1960. He is described as 6'2" tall and 335 pounds, with SSN                . Ward is believed to reside at 4234 Rolling Way Capitol Heights, MD. A search of FBI criminal history records (FBI 286335WA8) reveal Ward was convicted in 1995 in federal court in MD of conspiracy to commit food stamp fraud. With these facts and evidence it shows and proves that Ms. Lieber violated the Oath of Professional Conduct and Ethical Code Warrant Prosecutorial Misconduct.

PROSECUTORIAL MISCONDUCT

RACHEL LIEBER

RULE 6(g) FEDE3RAL RULES OF CRIMINAL PROCEDURE VIOLATION

The Government illegally investigated case # 05-CR386(1)(ESH) after the 18 month under Federal Rule of Criminal Procedure 6(g), and before being put on a grand jury docket. The Grand Jury investigated almost three months before being placed on the docket and being given a superseding indictment on June 27, 2005.

Mr. Balarezo submitted a motion to dismiss the June 22, 2007 indictment because of the illegal investigation, Rule 6(g) violation and Prosecutorial Misconduct.