## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 05-386(1) (ESH)** |
| | : | |
| **ANTOINE JONES** | : | |

### DEFENDANT'S MOTION TO SUPPRESS TANGIBLE EVIDENCE
### FROM  DEFENDANT'S JAIL CELL

Defendant Antoine Jones ("Jones"), by and though undersigned counsel, and pursuant to the Fourth Amendment to United States Constitution and applicable case law, hereby respectfully moves to suppress tangible evidence seized from Jones' jail cell by law enforcement agents.  In support of this Motion, Jones states as follows:

### FACTS

As the Court is well aware, Jones was initially charged in a Superseding Indictment with Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine and Fifty Grams or More of Cocaine Base (Count 1); Unlawful Possession with Intent to Distribute 50 Grams or More of Cocaine Base (Count 2); Unlawful Possession with Intent to Distribute Cocaine and Aiding and Abetting (Count 3); and Use of a Communication Facility to Facilitate a Drug Trafficking Offense (Counts 5 -34).  The government's general allegation is that Jones was part of a narcotics conspiracy from at least 2003 until October 24, 2005, which spanned from the District of Columbia, Maryland, Texas, North Carolina and elsewhere.  In particular, the government alleges that Jones was the primary supplier of cocaine to members of the organization in the District of Columbia and Maryland.

After his arrest on October 24, 2005, Jones was presented before Magistrate Judge Robinson, who ordered him held without bond pending trial.  On November 22, 2005,

Metropolitan Police Detective Norma Horne swore out an Application and Affidavit for Search Warrant. (*See* Exh. 1).  Detective Horne sought a warrant to search the "entire jail cell and personal property of Antoine Jones, D.C. Jail, 1901 D. Street, Southeast, Washington, D.C." (*Id.*).  Magistrate Judge Kay issued the warrant that same date.  Agent Horne and other agents carried out the search on November 23, 2005, and seized several items from Jones' cell.  (*See* Exh. 2).  The inventory list of the search indicates that the items seized were "Miscellaneous documents to include – Washington Post article, 9 [10 is crossed out and initialed JCB] pieces of paper with names and/or numbers + 3 envelopes that each contain a letter." (*Id.*)  The government has informed Jones that it intends to introduce several of the items recovered from Jones' cell at trial.

## ARGUMENT

### I.    JONES HAD AN EXPECTATION OF PRIVACY IN HIS JAIL CELL

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized ..." U.S. Const. amend. IV.  Prisoners do not have an expectation of privacy with respect to searches motivated by institutional security concerns and performed by prison officials. *See Hudson v. Palmer,* 468 U.S. 517, 527 (1984); *United States v. Cohen,* 796 F.2d 20, 22-23 (2d Cir.1986). However, when a search is performed or initiated by law enforcement officials other than those in charge of a prison and is unrelated to institutional security concerns, a prisoner has a reasonable expectation of privacy with respect to that search. *Cohen,* 796 F.2d at 23-24.

In this case, it is clear that the search of his cell was motivated not by institutional

concerns of the D.C. Jail, but rather initiated by law enforcement officers.  Thus, Jones had an

expectation of privacy pursuant to the Fourth Amendment.

## II.    THE AFFIDAVIT IS UTTERLY LACKING IN INDICIA OF PROBABLE CAUSE

It is established law, see *Nathanson v. United States*, 290 U.S. 41, 47(1933);

*Giordenello v. United States*, 357 U.S. 480, 485-86 (1958);  *Aguilar v. Texas*, 378 U.S. 108, 114-

115 (1964), that a warrant affidavit must set forth particular facts and circumstances underlying

the existence of probable cause, so as to allow the magistrate to make an independent evaluation

of the matter.   If the warrant is "facially deficient," for example, in failing to particularize the

place to be searched or the things to be seized, suppression is appropriate despite a magistrate's

stamp of approval. *See United States v. Leon,* 468 U.S.897, 923 (1984).  Or, if the warrant is

based on an affidavit "so lacking in indicia of probable cause as to render official belief in its

existence entirely unreasonable," suppression is available. *Id.* (citing *Brown v. Illinois,* 422 U.S.

590, 610-11 (1975).

If a magistrate abandons his neutral and detached role, good faith reliance on the

warrant will not prevent suppression. *See Leon*, 468 U.S. at 923.  Furthermore, "if the magistrate

or judge in issuing the warrant was misled by information in an affidavit that the affiant knew

was false or would have known was false except for his disregard of the truth," suppression is

appropriate. *See Id*. at 923 (citing *Franks v. Delaware,* 438 U.S. 154 (1978)).  And finally, if "it

is plainly evident that a magistrate or judge had no business issuing a warrant," the exclusionary

rule will still be applicable. *See Massachusetts v. Sheppard, supra,* 468 U.S. at 990 n. 7, 104

S.Ct. at 3429 n. 7 (quoting *Illinois v. Gates,* 462 U.S. 213, 264, 103 S.Ct. 2317, 2346, 76 L.Ed.2d

527 (1983) (White, J., concurring in judgment)).

The government will likely argue that Magistrate Judge Kay issued a proper warrant and that the law enforcements agents who carried out the search of the cell did so in good faith reliance of the warrant.  Explicit in *Leon*, however, is the view that not every act of reliance on the intervention of a judge or magistrate will automatically eliminate exclusion as the appropriate remedy for constitutional or statutory violations.

In this case, Detective Horne's Application for the search warrant indicates that the items to be seized as:

<u>ATTACHMENT A</u>

1.    Books, records, receipts, notes, ledgers, letters, and other papers relating to the distribution of controlled substances;
2.    Letters, notes, and other papers relating to the coverup of past distribution of controlled substances, including letters of instruction to non-incarcerated individuals;
3.    Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances; and
4.    Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the premises that is the subject of this warrant, including but not limited to canceled mail, photographs, personal telephone books, diaries, and identification documents.

(*See* Exh. 1 at 2).

Her fourteen page Affidavit contains the following:

a.    four pages of a boilerplate and non-specific description of her experience, training and education;

b.    eight pages of the allegations made against Jones, including evidence obtained prior to the wiretap, during the wiretap, during the takedown, and through the use of intercepted jail calls.  An overwhelming part of these eight pages is devoted to Lawrence Maynard allegedly being Jones' "right hand man."  Included in this tome regarding Maynard is a part regarding letters written by Jones to be delivered to Maynard via Beverly Johnson.

Horne avers, "Specifically, <u>investigators believe that JONES has sent letters to MAYNARD via O'NEAL</u>, which speak of the details of ongoing narcotics trafficking, including the possible concealment of evidence, and the continuation of the business, and <u>that MAYNARD has kept these letters in his possession</u>, as is common in the illegal narcotics trade."  Further, Horne avers that, "Based on these calls, and on MAYNARD's identified role in JONES's [sic] narcotics' trafficking operation, <u>investigators believe that MAYNARD has evidence pertaining to narcotics-trafficking in his possession</u>, to include letters from ANTOINE JONES."  (See Exh. 1 at 12)(emphasis added).

c.    one paragraph with the heading "Probable Cause for Individual Location," which states nothing more than the location to be searched and a description of Jones as an inmate at the D.C. Jail.  (See Exh. 1 at 13).

d.    one paragraph with the heading "Offenses," which lists "Attempted obstruction of justice and witness tampering, in violation of 18 U.S.C. §§ 1510, 1512, and 1513, and violations of the Controlled Substances Act, Title 21, United States Code, Section 801, <u>et seq.</u>, including: (a) the possession with intent to distribute and distribution of controlled substances, in violation of Title 21 United States Code (USC) § 841(a)(1); and (b) conspiracy to commit such offense, in violation of 21 U.S.C. § 846."  (See Exh. 1 at 13).

On its face, the Affidavit fails to allege any set of facts that Jones in any manner attempted to obstruct justice or tamper with witnesses or engage in narcotics-related activities from his jail cell.  In fact, the entire factual portion of the affidavit focuses on Maynard and notes that investigators believe that Maynard, <u>not</u> Jones, had kept letters from Jones in his possession and that Maynard, <u>not</u> Jones, had evidence pertaining to narcotics-trafficking in his possession.

The government may also argue that it had source information that Jones, through communications from his cell, was attempting to tamper with witnesses. For example, via letter dated December 5, 2005, AUSA Lieber informed counsel that

> As I mentioned, in early November, we received information through various channels, including from agents wholly unrelated to this investigation, that [Jones] was attempting to identify witnesses against him and 'take care of them.' Based on this information, we obtained copies of all calls your client made from the D.C. Jail.[1] Then, based on some of the discussions he was having with individuals in the community, in conjunction with this source information, we obtained a search warrant for your client's cell . . . .

(*See* Exh. 2 at 2). Although the government may have had this source information about Jones' alleged attempts to locate or intimidate witnesses, Horne failed to include this information on the Affidavit.

On the facts of this case, the underlying affidavit is entirely lacking in indicia of probable cause. *Leon* clearly and unequivocally states that when the affidavit itself is entirely lacking in indicia of probable cause, it cannot be said that the officer acted in good faith in relying on a warrant that issues. That is the precise situation we have in this case.

"All data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." *United States v. Gourde,* 440 F.3d 1065, 1067 (9th Cir.2006) (en banc) (quoting *United States v. Anderson,* 453 F.2d 174, 175 (9th Cir.1971) (internal quotation marks omitted)). Where the affidavit itself lacks *all* indicia of probable cause, it would unduly undermine the foregoing rule to permit extrinsic indicia of probable cause to be presented through an unsworn, unrecorded oral colloquy. Related to the foregoing, the Constitution also requires that probable cause be established "by Oath or affirmation." If unsworn, unrecorded oral colloquies, which may not be

---

[1] Jones also moves to suppress these calls because, upon information and belief, the government did not obtain these calls pursuant to a lawfully authorized subpoena or warrant.

used to establish probable cause, *are* admissible to establish good faith, the constitutional and prudential standards for showing probable cause will be undermined. In effect, the good faith exception would swallow the Fourth Amendment rule. *See United States v. Luong*, 470 F.3d 898, 905 (9th Cir. 2006).

## III.  THE SEARCH VIOLATED THE ATTORNEY-CLIENT PRIVILEGE

Federal courts recognize the attorney-client and work product privileges as doctrines that serve to protect confidential communications between attorneys and their clients, as well as the mental impressions and legal strategies developed by attorneys in anticipation of litigation. *See Fisher v. United States,* 425 U.S. 391, 403 (1976); *Upjohn Company v. United States,* 449 U.S. 383, 389  (1981); (noting that the attorney-client privilege covers a wide range of communications with a purpose of encouraging "clients to make full disclosure to their attorneys.").  While both privileges are virtually inviolable, this is only true if the proponent of the privilege can establish that the privilege exists in the first instance, and that it has not been waived. *See United States v. Bump,* 605 F.2d 548, 551 (10th Cir.1979).

To determine the existence of either an attorney-client or work product privilege, courts focuses on whether the client who communicates the information or the attorney who creates the work product has a "justifiable expectation" that the information will remain secret. *In re San Juan Dupont Plaza Hotel Fire Litigation,* 859 F.2d 1007 , 1015-16 (1st Cir.1988).  A waiver can be express or implied by conduct. "Implied waiver occurs when a party claiming the privilege has *voluntarily* disclosed confidential information on a given subject matter *to a party not covered by the privilege." Hanson v. U.S. Agency for International Development,* 372 F.3d 286, 293-94 (4th Cir. 2004). A client waives the privilege "by deliberately injecting into the case

the advice which he received from his attorney." *Smith v. Alyeska Pipeline Service Co.,* 538 F. Supp. 977, 979 (D. Del. 1982).

Materials may be covered under both the attorney-client privilege and work product doctrine. *Upjohn Company v. United States,* 499 U.S. at 398. Thus, documents prepared with the purpose of being sent to counsel for legal advice, legal opinions, legal services, or assistance in a legal proceeding are held to be privileged. *In re Spalding Sports Worldwide, Inc.,* 203 F.3d 800 (Fed. Cir.2000).

The government has informed Jones that it intends to use at trial several pages seized from Jones' cell that contain lists of names. These pages (*See* Exh. 2 at 10 & 17), were made by Jones at the direction of counsel. At the beginning of this case, counsel asked Jones to make a list of all the individuals who may have information regarding this case (possible witnesses) and all the individuals who may be in a position to testify against him (cooperators). Jones did so, but before he could provide the lists to counsel, the government searched his cell and seized the lists. The government cannot seriously argue that Jones somehow waived the privilege. When documents are secured through the execution of a search warrant, the production cannot be said to be voluntary. *See Transamerica Computer v. International Business Machines,* 573 F.2d 646, 651 (9th Cir.1978).

Additionally, upon information and belief, the items seized from Jones' cell were not kept by a "taint team." Rather, they were kept by the very prosecutors and law enforcement officers that are part of this case. Counsel concludes this by the fact that AUSA Lieber faxed to counsel copies of the seized documents. Accordingly, Jones requests that the Court conduct an evidentiary hearing to explore whether the government improperly intruded on Jones' attorney-

client privilege through the abuse of its "taint team" procedures, and, if so, to determine the

extent to which sanctions should be imposed against the government or its counsel.

        **WHEREFORE** for the foregoing reasons, and any others that may appear to the

Court, Mr. Jones respectfully requests that this Motion be **GRANTED**.


Dated: Washington, DC
       July 26, 2007                  Respectfully submitted,

                                     **LAW OFFICE OF A. EDUARDO BALAREZO**


                             /s/
              By: _____
                   A. Eduardo Balarezo (Bar # 462659)
                   400 Fifth Street, NW
                   Suite 300
                   Washington, DC  20001
                   (202) 639-0999

                   *Attorney for Defendant Antoine Jones*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 26th day of July 2007, I caused a true and correct copy of the foregoing  Defendant Jones' Motion to Suppress Tangible Evidence from Defendant's Jail Cell to be delivered to the parties in this matter via Electronic Case Filing (ECF).

_____
A. Eduardo Balarezo