Q106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

Property and Cell of Antoine Jones
District of Columbia Department of Corrections
D.C. Jail, 1901 D Street, S.E.
Washington, D.C.

**APPLICATION AND AFFIDAVIT
FOR SEARCH WARRANT**

CASE NUMBER: 05-631 M

(Further described below)

I ___Norma Horne___ being duly sworn depose and say:

I am a(n)___Detective with the Metropolitan Police Department___ and have reason to believe
   (Official Title)
that ☐ on the person of or ☒ on the property or premises known as (name, description and or location)
Property and cell of Antoine Jones, District of Columbia Department of Corrections, D.C. Jail, 1901 D Street, S.E,
Washington, D.C.

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be searched)
Documents or records, as set forth more fully in Attachment A

which is (state one or more bases for search and seizure set forth under Rule 41(c) of the Federal Rules of Criminal Procedure)
evidence of attempted obstruction of justice, witness tampering, witness intimidation, ongoing attempts to conceal a drug
conspiracy

concerning a violation of Title _18_ United States Code, Section(s)_1510, 1512, 1513_, Title _21_ United States Code,
Sections 841 and 846 . The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.    ☒ YES ☐ NO

Jack Geise
Narcotics 4th Floor USAO
(202) 616-9156

Signature of Affiant
Norma Horne, Detective
Metropolitan Police Department

Sworn to before me, and subscribed in my presence

2 2 NOV 200_

Date

Name and Title of Judicial Officer

at Washington, D.C.

Signature of Judicial Officer

## ATTACHMENT A

1) Books, records, receipts, notes, ledgers, letters, and other papers relating to the distribution of controlled substances;

2) Letters, notes, and other papers relating to the coverup of past distribution of controlled substances, including letters of instruction to non-incarcerated individuals;

3) Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances; and

4) Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the premises that is the subject of this warrant, including but not limited to canceled mail, photographs, personal telephone books, diaries, and identification documents.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN THE MATTER OF THE APPLICATION OF | ) | |
| THE UNITED STATES OF AMERICA FOR AN | ) | FILED UNDER SEAL |
| ORDER AUTHORIZING THE ISSUANCE OF A | ) | |
| SEARCH WARRANT FOR FOR THE ENTIRE | ) | |
| JAIL CELL AND PERSONAL PROPERTY OF | ) | |
| **ANTOINE JONES**, D.C. JAIL, 1901 D STREET | ) | |
| SOUTHEAST, WASHINGTON, D.C. | ) | |

## AFFIDAVIT

I, Norma Horne, am a police officer of the District of Columbia Metropolitan Police

Department (MPD), having been duly sworn, state:

## I. INTRODUCTION

I am an investigative and law enforcement officer of the United States and District of

Columbia who is empowered by law to conduct investigations of and to make arrests for offenses

enumerated in the Comprehensive Drug Abuse Prevention and Controlled Substances Act of

1970, Title 21 of the United States Code (USC), as amended and the Uniform Controlled

Substances Act, Title 48 of the District of Columbia Code as well as Title 18 offenses.

I am an officer of the District of Columbia Metropolitan Police Department and have

been so employed for over 14 years. I have received narcotics specialization training from the

Metropolitan Police Department Training Division, the United States Attorneys Office and gang

training from the Mid Atlantic Great Lakes Organized Crime Law Enforcement Network. I have

attended the Expert Witness class offered by the Major Narcotics Branch, MPD. I have also

received firearms trafficking and identifying an armed subject training from the Bureau of

Alcohol Tobacco and Firearms. I have been personally involved in numerous narcotics and

weapons investigations throughout the District of Columbia, with concentrated efforts in the

Northeast area of the city. I have worked in an undercover capacity during which I purchased

firearms and a controlled substance. As a result of these experiences and formal training, I am

familiar with the actions, habits, traits and terminology utilized by the traffickers and abusers of

controlled dangerous substances. I have prepared and participated in the preparation and

execution of over two hundred search and arrest warrants. I also have testified as a witness in the

Superior Court and United States District Court for the District of Columbia.

In the course of conducting these investigations, your affiant has been involved in the use

of the following investigative techniques: interviewing informants and cooperating witnesses;

conducting physical surveillance; conducting short-term and long-term undercover operations,

including reverse undercover drug operations; consensual monitoring and recording of both

telephonic and non-telephonic communications; analyzing telephone pen register and caller

identification system data; conducting court-authorized electronic surveillance; and preparing

and executing search warrants which have led to substantial seizures of narcotics, firearms and

other contraband.

Through instruction and participation in investigations, your affiant has become familiar

with the manner in which narcotics traffickers conduct their illegal business and the methods,

language, and terms that are used to disguise conversations about their narcotics activities. From

experience and training, your affiant has learned, among other things, that:(a) drug traffickers

virtually never expressly refer to cocaine or other illegal drugs by name; instead to conceal the

true nature of their illegal activities and to thwart detection by law enforcement, they refer to the

drugs and drug quantities using seemingly innocent terms; (b) narcotics traffickers frequently use

electronic paging devices, commonly referred to as pagers or beepers, cellular telephones, digital

telephones, and other communications devices to further their illegal activities by, among other

2

things, remaining in constant or ready communication with one another without restricting either

party to a particular telephone or location at which they might be the subject of physical

surveillance by law enforcement authorities; and (c) narcotics traffickers frequently transmit pre-

arranged numerical codes to pagers or telephones to identify themselves or to otherwise

communicate information, such as price or quantity of drugs, to the person in possession of the

pager.

   Throughout this investigation, your affiant has worked with other Special Agents (SAs)

of the FBI, and members of the Washington, D.C. Metropolitan Police Department (MPD)

assigned to the Safe Streets Task Force. This affidavit is based on my personal knowledge

derived from my participation in this investigation, as well as speaking with other law

enforcement officers assigned to this investigation, and includes, but is not limited to, the

following information: (a) oral and written law enforcement reports regarding this and other

related investigations; (b) physical surveillance; (c) review of dialed number recorder data (pen

register records) and telephone toll records; (d) review of vehicle registration records and

licenses; (e) review of criminal history records; and (f) review of wire interceptions pertaining to

the target telephone authorized by United States District Court Judge Paul L. Friedman on

September 2, 2005, and extended on September 30, 2005, (g) debriefings of confidential

informants; and review of intercepted telephone calls placed by **ANTOINE JONES** from the

D.C. Jail.

3

It is a common practice of drug traffickers who are incarcerated to reach out to associates who remain in the community to continue their illegal drug trafficking activities while incarcerated, including attempts to influence witnesses and arrange for the concealing or destruction of evidence.  Such outreach takes many forms, including telephone calls from the jail, and letters containing instructions regarding the manner in which to continue the business.  It is also common practice for individuals who receive such letters to maintain them for a period of time, and to refer to the instructions contained therein.

Your affiant also knows from prior training and experience that inmates frequently maintain letters, notebooks, phone books, family photographs and other notations in their cell and among their personal property.  Examination of this material can provide investigators with the identity of persons close to the inmate, including co-defendants and persons willing to commit criminal acts for the defendant.  Inmates will also utilize the inner-jail mail system to correspond with other family members and friends, and in this correspondence, as well as in normal correspondence, will discuss or allude to criminal activity, often using slang or code.

Additionally, the affiant knows that if an inmate write on a pad, and then mails or destroys what he has written; chemical analysis of that pad can often reveal what was written.

Finally, your affiant also knows from training and experience that the D.C. Jail will frequently move inmates and/or their possession at a moments notice, both for administrative and security reasons. The location of any inmate and/or his property can be determined at any specific time through the Central Records Department of the D.C. Jail.

4

## LOCATION TO BE SEARCHED

The description of the following address was obtained through physical surveillance by your affiant and/or other law enforcement officers.

FOR THE ENTIRE JAIL CELL AND PERSONAL PROPERTY OF **ANTOINE JONES,** a black male, Date of Birth: February 25, 1960, SSAN:  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, FBI#: 901461KA2, D.C.D.C. # 241912, WHO IS CURRENTLY AN INMATE OF THE D.C. JAIL. LOCATED AT 1901 D STREET, SOUTHEAST, WASHINGTON, DC. THE EXACT LOCATION OF THE CELL OCCUPIED BY AND THE EXACT LOCATION OF ANY STORED PERSONAL PROPERTY WILL BE DETERMINED THROUGH THE D.C. JAIL'S RECORDS DEPARTMENT AT THE TIME OF THE EXECUTION OF THE SEARCH WARRANT.

## BACKGROUND OF THE INVESTIGATION

### A. Prior to First Interception

In late 2004, the FBI obtained information from a number of confidential sources that **ANTOINE JONES** was operating a large narcotics trafficking organization in the greater Metropolitan Washington, D.C., area and elsewhere.  It was also learned that **JONES** operated almost exclusively with the assistance of his right-hand associate, **LAWRENCE MAYNARD,** one of the few people with whom he will deal directly.  Further, investigation revealed that **ANTOINE JONES** was the sole proprietor of a nightclub named "**LEVELS**," located at 1960 Montana Avenue, N.E., Washington, D.C.  Sources told Investigators that **ANTOINE JONES** used his business as a location where he often conducted his drug trafficking activities, including distributing kilogram quantities of cocaine and collecting substantial quantities of money, as well

5

as laundered drug trafficking proceeds through that nightclub. According to records on file with

the District of Columbia Alcoholic Beverage Regulatory Agency (ABRA), **MAYNARD** is listed

as the "A.B.C. manager" of the nightclub. Further, as set forth more fully *infra*, wire

interceptions on **JONES's** cellular telephone confirm that **JONES** and **MAYNARD** have

frequent contact on the telephone regarding **LEVELS**, much of the time confirming that they

will meet at that club at some point each day. The confidential sources all reported that

**ANTOINE JONES** maintained a discreet operation, and limited his contacts to individuals

known to him personally, or introduced to him by trusted, well known associates.

According to information provided by several confidential sources, who were customers

of **JONES** and **MAYNARD**, and who have provided reliable information throughout the course

of this investigation, resulting in the seizure of in excess of 100 kilograms of cocaine and cocaine

base, and in excess of $800, 000, in related search warrants executed on October 24, 2005,

**MAYNARD** undertakes many tasks on behalf of **ANTOINE JONES's** narcotics trafficking

organization, including but not limited to being an intermediary and a point of contact between

**ANTOINE JONES** and many of his drug suppliers and customers. For example, these sources

report that **JONES** frequently changed his cellular telephone number in an effort to avoid

detection by law enforcement; however, **MAYNARD** has retained his same cellular telephone

for over two years. If these sources needed to get into contact with **JONES** to place an order for

kilogram quantities of cocaine, they frequently would contact **MAYNARD** to get the current

telephone number for **JONES,** who also has been known to use "burnout" or disposable cellular

telephones.

6

Further, one of these reliable sources asserted that, based on its conversations with both

**JONES** and **MAYNARD**, **JONES** and **MAYNARD** traveled out of the Metropolitan

Washington, D.C., area on occasion, often near the end of each month, to obtain multiple-

kilogram quantities for cocaine for redistribution. While this source did not know precisely,

where **JONES** and **MAYNARD** traveled to pick up the narcotics, it recalled hearing **JONES**

state that they were "goin' down the road" and refer to "Carolina." The source further reported

that, while it was not aware of the specific identity of **JONES's** narcotics supplier, it recalled

**JONES** or **MAYNARD** mention narcotics coming from "the Mexicans" and "Texas."

The report of **MAYNARD's** role in **JONES's** drug-trafficking operation was confirmed

through various law enforcement means, including surveillance of **JONES's** nightclub

**LEVELS**, which revealed **MAYNARD** on the premises of the nightclub nearly every day during

the surveillance period, which began in January, 2005. This report regarding **MAYNARD's**

crucial role in the **JONES** drug-trafficking enterprise was further confirmed by a traffic stop of

**MAYNARD** on April 5, 2005. The Highway Interdiction Unit of the Durham, North Carolina

Police Department conducted a traffic stop of a 1997 Honda Odyssey mini-van bearing

Maryland tags 273M195, operated by **MAYNARD** and also occupied by **DERRICK GORDON**

in the vehicle front passenger seat. Their investigation revealed that this car was registered to

**ANTOINE JONES**, with a date of birth of February 25, 1960, and to one of his residences,

12221 Brandywine Road, Brandywine, Maryland. In the course of further investigation, the

interdiction unit canine alerted on the right rear passenger area of the mini-van. A search of the

mini-van revealed a hidden compartment in the van, which contained six white plastic Target

shopping bags, containing a total of $67,115.00 in U.S. currency, in various denominations, held

7

together by rubber bands.  In addition, both **MAYNARD** and **GORDON** each had in their

possession well in excess of $1,000.00, which totaled just under $5,000.00, between the two of

them.  When interviewed by the Interdiction Unit, **MAYNARD** and **GORDON** both denied any

knowledge of the secret compartment and the money contained therein.  The Honda Odyssey was

impounded, the $67,115.00, was seized as evidence, **MAYNARD** and **GORDON** received a

warning ticket, and then were released without additional charges.

MAYNARD's role was finally confirmed by pen register information which was

obtained by law enforcement, beginning in January, 2005, obtained through a court order issued

in the United States District Court for the District of Columbia.  Pen register data revealed

suspicious contact by **MAYNARD** with a cellular telephone listed in what investigators believe

to be a fictitious name, HENRY GARCIA, with a Texas area code, but listed to a P.O. box in

Irvine, California, which has been implicated in several narcotics trafficking investigations being

conducted by the F.B.I., the D.E.A., and other law enforcement agencies, several of which

implicate cocaine trafficking originating in Mexico and elsewhere.  Specifically, on April 5,

2005, the date of the North Carolina traffic stop, **MAYNARD's** cellular telephone received a

call at approximately 2:17 p.m. from the HENRY GARCIA cellular telephone.  In addition to

this call from GARCIA to **MAYNARD** on April 5, 2005, pen register data shows three more

calls from GARCIA to **MAYNARD**, two on March 25, 2005, and one on March 30, 2005.

Finally, pen register data pertaining to (202) 538-3946, the telephone in use by **ANTOINE**

**JONES**, reflects a telephone call from **ANTOINE JONES** to GARCIA on June 25, 2005.

Based on (a) the number of narcotics-trafficking investigations into the P.O. Box used by

GARCIA, (b) the implication of Mexico and Texas in those investigations, (c) information from

8

a reliable source that **ANTOINE JONES's** source of cocaine is "Texas" and "the Mexicans,"

and (d) the traffic stop of **MAYNARD** which revealed $67,100 in a hidden compartment in

**ANTOINE JONES's** car, your affiant believes that these telephone contacts between

**MAYNARD, JONES**, and GARCIA relate to illegal narcotics-trafficking activities, and that

**MAYNARD** was engaged in these conversations on behalf of **JONES**.

### B. Wire Interception Period

On September 2, 2005, authorization for wire interception on a cellular telephone known

to be used by **ANTOINE JONES** was granted by the Honorable Paul L. Friedman, Judge,

District Court for the District of Columbia. Investigators quickly identified a core group of

individuals believed to be involved in **JONES'** narcotics trafficking activities. Although the

conversations were generally short and the language encrypted, Investigators began to see a clear

pattern of conversations clearly suspicious in nature regarding "tickets, VIP tickets, flyers and

math homework." Investigators ascertained that these conversations were related to the

distribution of wholesale quantities of narcotics and/or money transactions.

Conversations mirroring the aforementioned continued into the second authorized period

of wire interception which began on September 30, 2005, and continued until its termination on

October 25, 2005. **JONES** and his drug-trafficking colleagues continued his use of the code

"tickets" to reference large wholesale quantities of cocaine – frequently speaking of their need

for various numbers of "tickets, VIP tickets" and, occasionally, "little tickets." Shortly after

many of these phone calls discussing the need for a certain number of tickets, surveillance

revealed **JONES** meeting with the person on the aforementioned calls, and handing over a plastic

bag, which is the manner in which sources have indicated that **JONES** and his colleagues

9

exchange cocaine and money.

Wire interceptions further revealed the role of Texas suppliers in **JONES'** organization. To that end, Investigators identified three separate out of area telephone numbers believed to be involved in the narcotics supply chain which confidential sources told Investigators was "Mexicans" and/or "Texas."  Throughout the course of this period, **JONES** had frequent contact with a number of Hispanic sounding males, with cellular telephones registered in what Investigators believed to be fictitious names.  As a result, Investigators identified a location in Ft. Washington, Maryland, believed to be a stash house.  **ANTOINE JONES** was surveilled at this location on numerous occasions during the interception period, often shortly after speaking with a Hispanic-sounding male on one of these out-of-area telephone calls, and indicating that he would meet with that individual within a designated period of time, for example "20 minutes." On numerous occasions, shortly after one of **JONES's** visits to the stash house in Ft. Washington, Maryland, **JONES** would arrange to meet with many of his suspected customers, in rapid succession.

Finally, wire interceptions revealed **JONES** on occasion telling other known drug-trafficking associates to get in touch with "Lawrence" to pick something up, or simply to "see Lawrence," who would take care of matters.  While these conversations were encrypted, as were most of **JONES's** conversations that did not involve details of his legitimate nightclub business, based on the fact that such calls were frequently made with individuals who had no known connection to **LEVELS**, investigators believe that these calls referenced drug trafficking activity by **JONES, MAYNARD**, and their customers.

10

## C. October 24, 2005 Take Down

On this date, a number of sealed search warrants were executed at various locations throughout the greater Washington, D.C. area. A total of nine individuals were arrested, but **MAYNARD** was not among them. Of particular significance, recovered at the "stash location" at 9508 Potomac Drive in Ft. Washington, Maryland, Investigators recovered ninety-seven (97) kilograms of cocaine powder, three (3) kilograms of crack cocaine and $834,520.00 in US currency. Three Hispanic males were arrested at this location, two of whom were Mexican Nationals, and one of whom was identified seated in the passenger seat of **JONES's** Jeep Grand Cherokee in a photograph that was taken by a surveillance team. At other locations searched that day, smaller quantities of cocaine were found, for example, half-kilogram quantities, along with smaller quantities of cash, for example, $12,000.00, along with firearms, and narcotics packaging materials at several houses. Further, a gun was recovered from the office of **JONES's** nightclub **LEVELS,** and in excess of $69,000.00, in cash was recovered from **JONES's** Jeep Grand Cherokee.

## D. Intercepted Jail Telephone Calls

Over the course of his incarceration at the District of Columbia Jail, **JONES** has made numerous telephone calls, which were recorded by the Jail. Among those calls were several to **DEBORAH O'NEAL**, who has been identified both in calls intercepted on the wiretap and in calls intercepted from the Jail, as a romantic interest of **JONES**. In one such telephone call, on November 3, 2005, at approximately 9:16 p.m., **JONES** told **O'NEAL** that he had sent her a few letters from the Jail. In particular, he mentioned that when she gets letters with another name on them, that she should hold onto the letters and give them to "Lawrence" because "Lawrence"

11

knows what to do with them.  Later in this approximately 15 minute telephone call, **JONES**

reminds **O'NEAL** that when she gets letters without her name on them, that she should just hold

them.  In a later call to **O'NEAL**, on November 6, 2005, at approximately 11:57 a.m., **JONES**

and **O'NEAL** discuss "Lawrence" at some length.  **JONES** told **O'NEAL** to tell "Lawrence," to

write to him and let him know what was going on, because he doesn't want to be "in the blind."

Investigators believe that since he has been incarcerated, **JONES** has written letters to other

members of his illegal narcotics-trafficking operation, but has sent them to **O'NEAL's** house,

who in turn will give them to **MAYNARD**, in an effort to conceal his communications with

those individuals.  Specifically, investigators believe that **JONES** has sent letters to **MAYNARD**

via **O'NEAL**, which speak of the details of ongoing narcotics trafficking, including the possible

concealment of evidence, and the continuation of the business, and that **MAYNARD** has kept

these letters in his possession, as is common in the illegal narcotics trade.

Further, in numerous conversations with his wife, Deniece Jones, **ANTOINE JONES** is

heard urging her to get into contact with **MAYNARD**, to tell him that **JONES** needs to speak

with him.  On a few occasions, **JONES** asks his wife to call **MAYNARD** on her cellular

telephone, while **JONES**'s call from the Jail is underway on the landline.  **JONES** repeatedly

tells his wife to tell **MAYNARD** to come out to the Jail to visit him.  Based on these calls, and

on **MAYNARD's** identified role in **JONES's** narcotics-trafficking operation, investigators

believe that **MAYNARD** has evidence pertaining to narcotics-trafficking in his possession, to

include letters from **ANTOINE JONES**.

12

## PROBABLE CAUSE FOR INDIVIDUAL LOCATION

1. **Jail Cell and personal property of ANTOINE JONES** (a black male, Date of Birth: February 25, 1960, SSAN: 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, FBI#: 901461KA2)

**ANTOINE JONES** is currently an inmate of the D.C. Jail located at 1901 D Street, Southeast, Washington, D.C. The exact location of the cell occupied by and the exact location of any stored personal property will be determined through the D.C. Jail's Records Department at the time of the execution of the search warrant.

## OFFENSES

Attempted obstruction of justice and witness tampering, in violation of 18 U.S.C. § § 1510, 1512, and 1513, and violations of the Controlled Substances Act, Title 21, United States Code, Section 801, et seq., including: (a) the possession with intent to distribute and distribution of controlled substances, in violation of Title 21 United States Code (USC) § 841(a)(1); and (b) conspiracy to commit such offenses, in violation of 21 U.S.C. § 846.

## CONCLUSION

Wherefore, based upon the facts and circumstances related above and my experience as a Special Agent of the FBI, I believe that there is probable cause to believe that the following articles are present at the subject premises:

1) Books, records, receipts, notes, ledgers, letters, and other papers relating to the distribution of controlled substances;

2) Letters, notes, and other papers relating to the coverup of past distribution of controlled substances, including letters of instruction to non-incarcerated individuals;

3) Personal books and papers reflecting names, addresses, telephone numbers, and

13

other contact or identification data relating to the distribution of controlled

substances; and

4) Items of personal property that tend to identify the person(s) in residence,

occupancy, control, or ownership of the premises that is the subject of this

warrant, including but not limited to canceled mail, photographs, personal

telephone books, diaries, and identification documents.



I swear and subscribe to the information contained in the Affidavit:

_____
NORMA HORNE
Detective
Metropolitan Police Department




Sworn to and subscribed before me
this _____ day of _____ 2005 in
the _____  ≥ 2 NOV 2005

_____
UNITED STATES MAGISTRATE JUDGE

AO93(Rev.5/85)Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person or property to be searched)

Property and Cell of Antoine Jones
District of Columbia Department of Corrections
D.C. Jail, 1901 D Street, S.E.
Washington, D.C.

**SEARCH WARRANT**

CASE NUMBER:  05-631 M

TO: __Norma Horne__ and any Authorized Officer of the United States

Affidavit(s) having been made before me by _Detective Norma Horne_ who has reason to believe that ☐ on the person or ☒ on the premises known as (name, description and or location)

Property and cell of Antoine Jones, District of Columbia Department of Corrections, D.C. Jail, 1901 D Street, S.E.

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property)

Documents or records containing evidence of attempts to obstruct justice, tamper with and/or intimidate or retaliate against witnesses, attempt to conceal a drug conspiracy, as more fully set forth in Attachment A.

I am satisfied that the affidavits(s) and any recorded testimony establish probable cause to believe that the person or property so described is now concealed on the person or premises above-described and establish grounds for the issuance of this warrant.

**YOU ARE HEREBY COMMANDED** to search on or before 0 2 DEC 2005
(Date)

(not to exceed 10 days) the person or place named above for the person or property specified, serving this warrant and making the search ☑ (in the daytime - 6:00 A.M. to 10:00 P.M.) ☐ (at any time in the day or night as I find reasonable cause has been established) and if the person or property be found there to seize same, leaving a copy of this warrant and receipt for the person or property taken, and prepare a written inventory of the person or property seized and promptly return this warrant to the undersigned U.S. Judge/U.S. Magistrate Judge, as required by law.

**2 2 NOV 2005**   4:55 PM
_____
Date and Time Issued
    Alan Kay
_____
Name and Title of Judicial Officer

at Washington, D.C.


_____
Signature of Judicial Officer

## ATTACHMENT A

1) Books, records, receipts, notes, ledgers, letters, and other papers relating to the distribution of controlled substances;

2) Letters, notes, and other papers relating to the coverup of past distribution of controlled substances, including letters of instruction to non-incarcerated individuals;

3) Personal books and papers reflecting names, addresses, telephone numbers, and other contact or identification data relating to the distribution of controlled substances; and

4) Items of personal property that tend to identify the person(s) in residence, occupancy, control, or ownership of the premises that is the subject of this warrant, including but not limited to canceled mail, photographs, personal telephone books, diaries, and identification documents.

**UNITED STATES DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF INVESTIGATION**
Receipt for Property Received/Returned/Released/Seized

File # 2450-WF-213679

On (date) 11-23-05

item(s) listed below were:
☐ Received From
☐ Returned To
☐ Released To
☒ Seized

(Name) Antoine Jones

(Street Address) 1901 D St. NE

(City) WDC

Description of Item(s): Miscellaneous documents to include - Washington Post article, 9503 order of paper with names and/or numbers + 3 envelopes that each contain a letter

Received By: _signature_ (Signature)    Received From: _signature_ (Signature)