# LEASE AGREEMENT

I. **APARTMENT AND OCCUPANT INFORMATION:**
   A. Apartment Community: **Summit Largo Town Center Apartments**
   B. Full Legal Name of Lessee(s):

   | Antoine Jones | | |
   |---|---|---|
   | | | |

   C. Names of Occupants and Relationship to Lessee(s):

   | | | |
   |---|---|---|
   | | | |
   | | | |
   | | | |
   | | | |

   D. Apartment Address: 9719 Summit Circle Apt 3B Largo, Maryland 20774
   E. Apartment Type and Size: Two Bedroom/ Two Bath
   F. Date of Occupancy: November 11, 2003

II. **BASIC LEASE TERMS AND RENT AMOUNT:**
   A. The term of this lease is **6 months** beginning on **November 11, 2003** and ending on **May 10, 2004** NOTE: The term of this Lease will automatically be renewed on a month to month basis at the prevailing market rate plus a month to month fee and other terms set forth in this Lease unless either (a) We give You or You give Us notice of termination at least sixty (60) days prior to the last day of the original rental period (or any renewal period) that this Lease will terminate as of the last day of the original rental period or (b) at least sixty (60) days prior to the last day of the original rental period (or any renewal period), We give You notice that any renewal shall be at a stated monthly rental different from the previous monthly rental or upon the different term(s) unless within sixty (60) days prior to the expiration of the lease you give Us written notice of Your intent to terminate this lease as of the last day of that rental period, in which event this Lease will terminate on, and You must vacate the Premises on or before , the last day of that rental period.
   B. Rent is payable monthly and in advance at the rate of **$ 1,425.00 + $10.00 alarm + $6.00 trash fee) + $50.00 (short term)** per month on the first day of each calendar month at the Summit Largo Town Center office:   ADDRESS: **9701 Summit Circle Largo, Maryland 20774**.
   C. First month's rental and/or prorated rent is:

   | Pro-Rate and Fees due at move in: | $994.00 ( pro-rate) +$1,425.00 (secutity deposit) |
   |---|---|
   | First full month of rent: | $1,425.00 + $6.00(trash fee) + $10.00(alarm fee) +$50.00 (short term) |
   | Total: | $1,491.00 Due December 1, 2003 |

III. **UTILITIES:**
   Utilities and services to be paid by Lessee(s):
   ( √ ) Electricity     ( √ ) Telephone     ( √ ) Cable TV     ( √ ) Trash Removal
   ( √ ) Water          ( √ ) Gas           ( √ ) Sewer        ( ) Other
   NOTE: The above check utilities are paid by YOU as Lessee(s).

IV. **VEHICLE INFORMATION:** Please list the vehicles that will be in the community.

   | Vehicle Description | Make and Model | License Number |
   |---|---|---|
   | | | |
   | | | |
   | | | |
   | | | |

V. **PETS:** Pets ARE NOT allowed in or about the Premises. If pets are allowed, each pet must be approved by Lessor in advance in accordance with the Paragraph 25, and a separate pet agreement must be agreed upon and signed, and all fees, deposits, and or additional rental must be paid.

VI. **LATE PAYMENTS AND RELATED CHARGES:**
   A. Late payments see also Paragraph 10: The following charge is for LATE PAYMENTS during this lease term: **5% OF TOTAL RENT.** This amount is equal to 5% of the total rent. Monthly payments are due in advance on or before the First Day of each month. Rent payments received after the first day of the month are considered late. The LATE CHARGE shown will be charged after 6:00 p.m. on the 5th day of the month.
   B. Returned checks see Paragraph 10: The following charge is for each RETURNED CHECK during this lease term $ 40.00     .

VII. **EARLY LEASE TERMINATION CHARGE: LEASE BUY OUT: EQUIVALENT TO TWO MONTH'S RENT!**

VIII. **AGREEMENT AND SIGNATURES:** In witness whereof, this Lease Agreement is duly executed by the Lessee(s) and the Lessor, on the date as written below. Upon execution Lessee(s) acknowledge having read and agreed to the provision set forth above and in the additional provision attached and hereto. This Lease (including the additional provisions attached hereto) constitutes the entire agreement between the parties and all oral agreements are merged herein. No amendment to the Lease shall be valid unless in writing and signed by all parties. **Note: Read the additional provisions attached hereto before signing the Lease.**

IX. Notwithstanding anything to the contrary in Section 29 on Page 2 hereof; Landlord shall not be permitted to take possession of the Premises unless the Lease has been terminated by the actions of the parties or by operation of law, and Landlord is not permitted to take possession of your personal property following such termination unless it has been abandoned by You.
Notwithstanding anything to the contrary herein, Tenant's security deposit shall be held in compliance with Section 8-203 of the Maryland Real Property Code. More specifically, within thirty (30) days of receipt of Tenant's security deposit, Landlord shall place such deposit into an escrow account devoted exclusively to security deposits. Such account shall be maintained in a federally insured banking or savings institution within the State of Maryland, and shall accrue simple interest at four percent (4%) per annum, accrued at six-month intervals.

X. SPECIAL PROVISIONS: **60 DAY NOTICE TO VACATE REQUIRED…NO EXCEPTIONS!!**

SIGNATURES:             READ ADDITIONAL PROVISIONS ATTACHED HERETO BEFORE SIGNING
LESSEE(S): *Antoine Jones*

LESSOR: (OWNER) *SUMMIT PROPERTIES*             BY: *SUMMIT MANAGEMENT COMPANY*
BY: _____             Date Signed: 11/18/03
   (Signature by Authorized Person Signing Lessor)

Lessee(s) received fully executed copy of this Lease on _____   (by _____ mail/ X by hand)



1. PARTIES: THIS LEASE is made as of the date shown on Page 1 of this form by and between the person or persons, firm association, or corporation named and the Agent for Owner-Lessor of the demised premises. For convenience of reference in this lease, the Owner-Lesser is often called "We" or "Us" and the Lessee(s) is/are often called "You".
2. PREMISES: In consideration of the promises and agreements contained in the lease, we are hereby pleased to lease to You and You hereby agree to lease from Us, the apartment unit described on Page 1 (together with the existing fixtures, carpeting, draperies, and appliances and any household furniture and furnishings provided by Us), this apartment unit together with any such contents provided by Us hereafter called the "Premises". This Lease is made on the following terms and You and We agree that:
3. LESSEE(S) HAS INSPECTED THE ABOVE DESIGNATED PREMISES, and has found it to be clean and in good order and repair. The attached Move In/Move Out Inspection Checklist specifies the condition of the premises at the time of move-in. Any items not clean and in good order and repair must be reported in writing to the Lessor or its agent at the address shown on Page 1, within five (5) days of possession by You.
4. RULES AND REGULATIONS: EXECUTION OF LEASE: Lessee(s), Occupants, and their guests shall observe and comply with the rules and regulations now existing or which may be established from time to time by Lessor for the operation of the Premises, the Common Areas, and the overall community. A copy of said Rules and Regulations are attached hereto and incorporated herein by reference. Failure by and Lessee, any Occupant, or any of their guests to observe and comply with such rules and regulations, as they may be modified and supplemented by Us from time to time, shall be a default under the terms of this Lease. THIS LEASE AGREEMENT SPECIFICALLY INCLUDES ALL PROVISIONS STATED ABOVE AND BELOW, AS WELL AS ALL ADDENDA ATTACHED HERETO (INCLUDING BUT NOT LIMITED TO; MOVE IN/MOVE OUT INSPECTION CHECKLIST, UTILTIY ADDENDUM, DIGITAL BROADCAST SATELLITE ADDENDUM, RULES AND REGULATIONS, AND ANY PET AGREEMENTS. In particular, and without limiting foregoing, Lessee(s) acknowledge that Lessee(s), Occupants, and their guest will not use a portable grill within 10 feet of combustible materials and must be 25 feet from any building or structure at the Premises of the Property.
5. RENTAL APPLICATION: You acknowledge that we have relied on any Rental Application submitted by You as an inducement for entering into this Lease, and You warrant that the facts contained in any such Application are true. If any facts prove to be untrue, We may terminate Your tenancy immediately and collect from You and damages incurred, including reasonable attorneys' fees resulting therefrom.
6. OCCUPANTS: Only the following persons may occupy the Premises or use any other facilities associated with the Premises: (a) those persons who have signed this Lease, (b) those persons named as "Occupants" on Page 1 of this Lease, and ( c ) Your guest who visit for (i) ten (10) days or less in any month and (ii) twenty (20) days or less in any three (3) month period. (If there is to be any change in the named occupants for the Premises, a rental application for that person must be submitted to and approved by us in writing, and that person's name added to the Lease.) If any other person occupies the Premises or uses any other facilities associated with the Premises without Our prior written consent, such occupancy or use shall constitute a default under the terms of the Lease.
7. INSURANCE, RELEASE, AND INDEMNITY: We do not insure Your property against loss or damage. We require that You insure any and all of Your personal property located or stored in the Premises against the risks of damage, destruction, or loss resulting from theft, fire, storm, and other hazards and casualties in an amount equal to the replacement value of the property so insured. Regardless of whether you secure insurance, We and Our agents shall not be liable for any damage to, to destruction of, or loss of any of Your personal property located or stored in the Premises regardless of the cause or causes of such damage, destruction, or loss. You agree to indemnify, defend, and hold harmless Us and Our agents and employees from and against all claims, liabilities, and other costs (including without limitation attorneys' fee and court costs) arising out of injury to person, property or business (i) sustained in or about the Premises (excepting only liability for personal injuries caused solely by the negligent or intentional acts of Us or Our agents or employees), (ii) resulting from the intentional or negligent act or omission of You, any occupant or invitee of You, or any occupant, or (iii) resulting from breach of this Lease by you, any occupant or invitee of You, or any occupant. A Certificate of Insurance must be presented to Us from You prior to Your taking possession of the apartment home.
8. DAMAGE AND LOSS: You agree that We shall not be liable to You, your Family, your guest or any other person for any loss, injury or damage to person or property arising out of the failure of any appliance, fixture, the roof, any plumbing, heating, air conditioning, electrical, gas, water, or sewerage system in or about the Premises, or caused by any casualty or catastrophe including without limitation to storm, flood, fire, criminal acts, moths, termites, or vermin, or caused by latent defects, or from any other cause whatsoever, whether or not due to negligent acts or omissions by You, your family and guest or by any third parties, including without limitation to other occupants of this Apartment Community, and You assume all risk of and agree to indemnify Us from any such loss, injury, or damage. Further the use of the parking spaces, storerooms, laundry facilities, swimming pool, recreational facilities, car care wash area, and all other common areas in this Apartment Community shall be at Your own risk and We shall not be liable to you, your Family, your guests, or any other person for any loss, injury or damage to person or property arising out of use of the foregoing, from any caused whatsoever, and You assume all risk and indemnify Us from any such loss, injury, or damage.
9. RENTAL: You shall pay the amount of monthly rental as shown on Page 1, and any additional recurring charges in advance, on or before the first day of each calendar month during the rental period, without notice, offset, deduction or demand. You hereby; waive all notice of rental due and agree that We may take any legal measures necessary to collect Our rent or obtain Our Premises on the day that rent becomes delinquent or any day thereafter without having to give You any delinquent notice. Checks should be made payable to the Agent as shown on Page 1 and mailed or delivered to the address as shown on Page 1 or to such other address as We shall designate from time to time in writing.
10. LATE CHARGES; RETURNED CHECKS: You shall pay promptly as a late payment charge, in addition to the regular monthly rental, the sum listed in Article II.B. on Page 1, and shall be imposed only in the event any rental payment is five (5) or more days late. In order for Us to defray the administrative and handling expenses of a returned check which is not accepted by the bank on which it is drawn, We reserve the right to charge the sum listed in Article VI.B. on Page 1, for each returned check, in addition to incurred late charges, if applicable.
11. TERM: You shall lease the Premises for an initial term as stated in Article II.A. on Page 1, conditional on Us obtaining possession of the Premises as expected. We shall exercise our best efforts to give You possession of the Premises at the commencement of the term of this Lease, but We shall not be liable to You or any other person for any failure to do so, and any such failure shall not affect the validity of this Lease and Your obligation to pay rent. If, however, there is a failure to deliver You possession of the Premises at the commencement of this Lease, the monthly rental provided for shall be abated pro rata on a daily basis and shall be due until possession is given or occupancy is available. Should we fail to deliver possession of the Premises within 15 days after commencement of this Lease, You may elect to cancel the Lease and receive a refund of security and additional deposits paid, if any.
12. UTILITIES: You shall pay for those utilities checked in Article III, on Page 1. You are responsible for having the utilities put in your name prior to occupancy, and Your are responsible for the cost of those utilities throughout the term of this Lease, as extended or renewed. Your failure to maintain those utilities will constitute a default under the terms of this Lease. We are not responsible for any loss to You or anyone claiming through You that may result from the interruption of any utility services to the Premises for any reason. In those cases where We will be responsible for paying any of Your delinquent utility accounts, then rental payments shall be applied first to any such delinquent utility accounts and then to rental payments.
13. SECURITY DEPOSITS: Before you may occupy the apartment, you must pay us the full security deposit indicated on Page 1. Under no circumstances can You apply any portion of the Deposit to rental amounts due and owed by you. The Deposit is a good faith deposit for your faithful fulfillment of each condition in this lease and as a contingency against any physical damage to the apartment or premises caused by you, your family, or invitees. If you do not fulfill the original term or renewals of this lease, you agree to forfeit your security deposit as a liquidated damage for our re-rental expenses (which include, but are not limited to our costs of advertising, screen prospective tenants, exhibiting the apartment to prospective tenants, and leasing the apartment to them), even if we are able to immediately re-rent the apartment for the same or more rent, and even if there are no other damages. You shall additionally pay for any actual physical damage to the apartment or the premises and for rent until the apartment is re-rented. Your Security Deposit will be held with Us until the legal completion of your lease. We may transfer or assign Your Deposit to a new Owner who expressly assumes the liability thereof and upon such transfer, all of Our liability and that of Our agents for such deposits shall terminate. See Page 1 for specific details prescribed by local state law regarding Your Security Deposit.
14. EARLY TERMINATION; LIQUIDATED DAMAGES: If you terminate the Lease prior to the end and said term, You shall be liable to Us for any and all damages incurred by Us in the event of such termination. If you desire to terminate the Lease at anytime prior to the end and said term, you are OBLIGATED to satisfy the sum listed in Article VII on Page 1.
15. USE OF PREMISES: You shall use the Premises for residential purposes only, and You shall not permit the Premises to be used in any unlawful manner or in any manner that may in Our exclusive judgment to be disturbing to others or for any purpose which in Our judgment may injure the reputation, safety or welfare of the Premises or this Apartment Community. However, to the extent permitted by law, You may use the Premises as a home office, provided, that such home office use ( ( a ) is ancillary to the residential use, ( b ) does not generate any additional pedestrian or vehicular traffic to or from the premises or the common area facilities or this Apartment Community, and ( c ) does not cause any disturbance of other residents or occupants of this Apartment Community.
16. COMMON AREA FACILITIES: The common area facilities of the Premises and this Apartment Community such as the swimming pool, parking areas, roadways, and landing facilities, if any may be used by you at a charge as determined by the Management and subject to the applicable rules and regulations posted by Us. Covered parking areas will be at a charge of $0.00 per month subject to the applicable rules and regulations posted by Us. You agree that We can close or eliminate any common area facility and that, even if any common area facility is not available for your use at any time for any reason, You may not reduce the rental due and payable under this Lease. Parking at the Apartment Community is normally provided only for your passenger cars, light duty trucks, and not commercial trucks, tractors, boats, trailers, or other vehicles; will only be permitted to park at the Apartment Community with permission in writing from Us. We have the right to control the method, manner and availability of all parking at the apartment Community and also have the right to tow away and store at Your expense any vehicle parked or abandoned by You, your family or guests, which becomes a nuisance to the Apartment Community, such as wrecked or disabled vehicles or vehicles not currently registered or licensed under applicable law. If Your monthly rental includes the rental of a covered parking space, this space shall only be utilized for the parking of a vehicle.
17. REPAIRS AND CARE OF THE PREMISES: At Your expense and in addition to all other obligations imposed on You by this Lease or by law, You shall ( a ) keep the Premises, including, but not limited to all plumbing fixtures, facilities, and appliances, as clean as its condition permits; ( b ) keep the Premises as safe as its condition permits and causes no unsafe or unsanitary conditions in the Premises or the Common Areas (meaning the portions of the Apartment Community outside the Premises that you may use); ( c ) comply with any and all obligations imposed upon tenants by applicable building and housing codes; ( d ) dispose of all ashes, rubbish, garbage, and other waste in a clean and safe manner; ( e ) use in a proper and reasonable manner all electrical, plumbing, sanitary, heating, ventilation, air conditioning, and other facilities and appliances, if any, furnished as a part of the Premises; ) f ) not deliberately or negligently destroy, deface, damage, or remove any part of the Premises or Common Areas (including all facilities, appliances, and fixtures) or knowingly permit any person to do so; ( g ) be responsible for and liable to Us for all damage to, defacement of, or removal of property from the Premises whatsoever the cause, except such damage, defacement or removal caused by ordinary wear and tear, acts of Us, acts of our agents, acts of third parties not invitees of You, defective products supplied or repairs authorized by Us or natural forces. We shall make all repairs to the Premises that are required of Us to comply with local laws. Such repairs to the Premises will be at Our expenses within a reasonable time after You have give Us written notice for the need of such repairs (provided we shall accept oral notices to the extent required by local laws). In making repairs, We shall have no responsibility for any inconvenience or annoyance to You, and You many not withhold monthly rentals payable under this Lease because of Our alleged failure to make any repairs or for any other reason whatsoever. Any damage caused by the acts or omissions of You, your family, your guests shall be repaired at Your expense and promptly be reimbursed to Us.
18. ALTERATIONS: Without Our prior written consent, You shall not install waterbeds, screen doors, change any locks, add additional locks, or paint, wallpaper, mark drive large nails or large screws into or otherwise deface or alter the walls, ceiling, floors, windows, cabinets, woodwork, stone, ironwork, and any other parts of the Premises, inside or outside. Any alterations or improvements which are made by you or by Us, including any fixtures, locks, doors, or screens, carpeting, shrubs or any other plants, shall become part of the Premises and the Apartment Community unless otherwise specified by Us in writing. In the even We grant Our prior written consent to any such alterations or additions, such alterations or additions shall be undertaken only in a workmanlike manner using materials and contracts approve by Us and shall be done at Your expense and at such time and in such manner as We may approve in writing. You shall thoroughly clean the Premises and restore it to its original condition or repair, and appearance as it was on the date of this Lease, ordinary wear and tear only excepted, or if You fail to do so, You will promptly reimburse Us for such expense, unless specified otherwise by Us in writing. You shall also return all keys to the premises upon termination. No lien may attach to the Premises or any of Our other Property as a result of such work, provided if any such lien or a claim of lien is filed, You shall immediately cause such lien or claim of lien to be paid and canceled of record.
19. LESSORS RIGHT OF ENTRY: We reserve the right to enter the Premises at reasonable times for purposes such as ( a ) inspecting the condition and making such repairs, alterations, or improvements to the Premises, or any adjacent apartments, as we consider necessary or desirable, ( b ) exhibiting the Premises to persons who may wish to rent it during the last 30 days of the rental term, ( c ) exterminating pests on a periodic basis, and ( d ) changing filters as needed on the heating and cooling units. Refusal to permit the showing of the Premises during the last 30 days of the term shall constitute a default of this Lease and nullification of Your fulfillment of the notice of termination requirement. Furthermore, We at any time reserve the right to enter the Premises to protect life and prevent damage to the Premises.
20. ASSIGNMENT OF LEASE AND SUBLETTING: You shall not assign this Lease or sublet any portion(s) or all of the Premises without Our prior written consent. It is hereby understood and agreed that the consent by us to an assignment or sublease by you shall not constitute as consent to future assignments or subleases and in all events you shall remain fully liable for all obligations of the tenant hereunder.
21. TRANSFER OF LESSOR'S INTEREST: We have the right to transfer this Lease should the Apartment Community be sold or transferred to another owner. In the event this Apartment Community is sold or transferred, then We have been released from the obligations of this Lease and Your remedies for any breach of this Lease shall be against the person, firm, or corporation succeeding to Our rights in the Apartment Community.

22. SMOKE DETECTOR: The Premises have been equipped with one or more smoke detector(s) for Your protection. Although each smoke detector has been checked for proper operation prior to Your occupancy, it is Your responsibility to personally test it, do nothing to disable it, and to provide written notice to Us of any problems. For smoke detectors that are battery operated, You are also responsible for replacing new batteries in each smoke detector at the beginning of Your tenancy and periodically testing and replacing the batteries to ensure continuous and proper operation. We cannot reasonably check the smoke detector(s) on an ongoing basis to ensure continuous operation. Anytime a problem is found with a smoke detector, You must write to Us for service.
23. FIRE OR CASUALTY: In case of fire or casualty, You shall give immediate notice to Us, and at Our option, We may repair the Premises and Your rent obligation shall continue. If We elect not to repair the Premises, this Lease shall cease and the rent shall be due only at the time of such damage. You shall be and shall continue liable for and shall indemnify, defend, and save us harmless from any such damage caused by the negligence, misuse, or any other occurrence attributable to You, Your family, guests, employees, or agents.
24. RADON GAS: Radon gas is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient quantities, may present health risks to persons who are exposed to it over time. Levels of radon gas that exceed federal and state guidelines have been found in buildings in Florida and possibly other states. Additional information regarding radon and radon testing may be obtained from your county health unit.
25. PETS: If Article V, on Page 1, provides that no pets are permitted, then no pet of any type may be kept in the Premises at any time. Otherwise, a pet may be kept in the Premises only if You and We enter into a separate written pet agreement signed by You and us and You pay Us the pet fee, pet deposit, and/or pet rent set in the attached Pet Addendum. We have the right to refuse to allow any pets in the Premises that we believe are inappropriate in our sole discretion. You shall reimburse Us for all damages to the Premises and Our other property that any pet owned by You and/or kept in the Premises may cause, and You shall indemnify, defend, and hold harmless Us and Our agents and employees from and against all claims, liabilities and other costs which may result from such pet. Your Security Deposit and/or Pet Deposit can be used by us to pay for such damages and liabilities, and Your pet fee shall not be credited against such damage. You must remove any pet from the Premises and Our other property, even if previously permitted, if in Our sole opinion the pet constitutes a nuisance or creates a disturbance.
26. RENEWAL OF LEASE; NOTICE OF TERMINATION: After the initial term of this Lease, either Your or We may elect to renew or terminate this Lease at the terms and conditions set forth by Us. Therefore, after the initial term, either You or We may terminate this Lease by giving sixty (60) days written notice prior to the end of the term, but if no notice is given, or no long term renewal of Lease is established, then the Lease will be automatically renewed for successive one-month periods on the same terms and conditions contained in this Lease, provided, however, that such event the term "rent" as used in this Lease shall increase to the current market rent for such unit type, as market rents is determined by Us, plus a month to month fee to be determined by Us. On a month to month Lease a thirty (30) days written notice by either party is required prior to move-out, and shall be for a definite date and We will rely on this a firm date to re-rent the Premises. If You fail to vacate with all of Your belongings on the exact date given, We can exercise all rights and remedies for a default under this Lease and will hold You responsible for all damage incurred by Us including such things as storage, hotel, meals, and mileage charges payable to the new resident or, at our election charge you a rental rate of **One Hundred Dollars ($100.00)** per day for each day You stay after the notice date.
27. NOTICES: All notices shall be in writing, hand delivered or sent by the U.S. Postal Service to You at Your Premises or to Us at the address shown in Article IIB, on Page 1, or at such other address as We shall hereafter provide to You.
28. RESIDENTS' DUTIES UPON TERMINATION: Upon termination of the tenancy hereby, whether by Us or by You and whether for breach or otherwise, You shall (a) pay all utility bills due for services to the Premises for which You are responsible; (b) vacate the Premises removing therefrom all of Your personal property of whatever nature; (c) properly sweep and clean the Premises, including plumbing fixtures, refrigerators, stove and sinks, removing therefrom all rubbish, trash and refuse; (d) make such repairs and perform such other acts as are necessary to return the Premises, and any appliances or fixtures furnished in connection therewith, in the condition required under Section 17 above; (e) fasten and lock all doors and windows; (f) return to Us the keys to the Premises; and (g) notify us of the address to which the balance of the Deposit may be returned in the event You are entitled to a return of all or a portion of the Deposit. If You fail to sweep and clean the Premises, appliances and fixtures as herein provided, You may become liable, without notice or demand by Us for a cleaning fee, in addition to any and all other dames incurred by Us.
29. DEFAULT; FAILURE TO VACATE: In the event You shall (a) fail to pay the rentals herein reserved as and when the same shall become due hereunder; (b) have abandoned the Premises (it is agreed that Your absence from the Premises for __TBD__ consecutive days after rent has become delinquent or Your removal of substantial all of Your possessions will create a conclusive presumption of abandonment); (c) fail to perform any other promise, duty or obligation herein agreed to by You or imposed upon You by Law and such failure shall continue for a period of __TBD__ days from the date We provide you with written notice of such failure; or (d) engage in criminal activities, including any drug related criminal activity (which means the illegal manufacturing, sale, or deliver, or possession with intent to sell or deliver, a controlled substance (as defined by local state law), or the illegal creation, sale, or delivery, or possession with intent to sell or deliver, a counterfeit controlled substance), or any other criminal activity that threatens the health, safety, or right of peaceful enjoyment of the Apartment Community by other residents or Our Employees, then in any such events and as often as any of them may occur, We, in addition to all other rights and remedies provided by law, may at our option and with or without notice to You, either (i) terminate this Lease or (ii) terminate Your right to possession of the Premises without terminating the Lease. Regardless of whether We terminate this Lease, We shall be immediately entitled to possession of the Premises and You shall peaceful surrender the Premises to Us immediately upon Our demand. In the event You shall fail or refuse to surrender possession of the Premises, We shall, in compliance with local state law, re-enter and retake possession of the Premises through a summary ejectment proceeding or the expedited eviction proceeding, as appropriate. In the event We terminate this Lease, all of Our further duties hereunder shall terminate and We shall be entitled to collect from you all accrued but unpaid rents and any damages resulting from Your breach. In the event We terminate Your right of possession without terminating the Lease, You shall remain liable for the full performance of all covenants hereof, and We shall use reasonable efforts to re-let the Premises on your behalf. Any such rental reserved from such re-letting shall be first applied to the cost of re-letting the Premises then to the rental due hereunder. In the event rentals from such reletting are insufficient to pay the rentals due hereunder in full, you shall remain liable to Us for any deficiency. In the event We institute a legal action against Your or seek a demand to enforce this lease or to recover any sums due hereunder, You agree to pay us reasonable attorney's fees in addition to all other damages.
30. DISCLAIMER OF SECURITY WARRANTIES: Neither We nor Our agents or employees make any warranties, guaranties, or representations regarding the security of the Premises, Common Areas, or the Apartment Community, and any such warranties and representations, whether expressed or implied, are hereby disclaimed. You hereby agree and acknowledge that You and occupant(s) shall have the exclusive responsibility of protecting the Premises, Lessee(s), occupant(s), and Your guests from crime, fire, and other danger, and that We shall not provide and shall have no duty to provide any security services to Your or the Apartment Community. You shall look solely to the Public Police Force and other forms of Public Safety for protection. You agree and acknowledge that protection against criminal action is not within Our power, and even if from time to time We provide crime deterrent services, those services cannot be relied upon by You and shall not constitute a waiver of, or in any manner modify, the above agreement. Upon Your reasonable request, We will consider allowing You to install fire safety and/or crime deterrent devices, provided We are give duplicate keys and alarm codes so We can access the Premises and such devices do not damage the Premises or create danger.
31. STATUS OF AGENT: You understand and agree that the Agent listed on Page 1 Acts only as Agent for the Lessor who is the Owner of the Apartment Community. Therefore, responsibility for all obligations of the Lessor hereunder rests entirely with the Owner. The Agent may exercise and shall have the rights and powers of the Owner-Lessor but the Agent's duties, if any, are solely limited to those duties owed to the Lessor-Owner. The Agent has no duties to You with respect to the security deposit hereunder. The Agent, shall, as Agent for Owner, benefit from the covenants, waivers, releases, and indemnifications contained in this Lease to the same extent as the Owner. In the event of conflict or apparent conflict between this paragraph, and any other provision, agreement or document, this provision shall control totally, and no consideration shall be given to any other provision in construing this paragraph.
32. AMENDMENT OF LAWS: In the event any state statute affecting any duty or obligation imposed upon Us pursuant to this Lease in enacted, amended or appealed subsequent to the execution of this Lease by the parties hereto, We may at Our option elect to perform in accordance with such statute, amendment or act of repeal in lieu of complying with the analogous provision contained in this Lease.
33. MISCELLANEOUS: You agree that Your interest under this Lease in the Premises is and shall remain subject and subordinate to the lien of each and every present and future deed of trust, or other security instrument or other lien applicable to the Premises and the Property; and any extensions or renewals thereof and to all advances made or to be made thereunder. This subordination provision shall be self-operative. If the Premises or any part of the Premises shall be taken by eminent domain pursuant to other governmental authority, this Lease shall be Our option terminate, and You shall have no claim against any award for the taking. Except as otherwise provided in agreements attached and referenced herein contain the entire agreement between parties and no statement, oral or written not contained herein shall be binding on either party. No subsequent amendment to the Lease shall be binding unless in writing and signed by the parties hereto. No waiver of any breach or any term of this Lease shall be construed as a waiver of that term or condition or any subsequent breach thereof, and Our acceptance of any monthly rental after the due date shall not constitute a waiver of Our right to receive any future monthly rental on the due date. The delivery of keys of the Premises to Us shall not operate as a termination of the Lease but as a surrender of the Premises. The Lease shall if possible be construed consistently with all laws and public policies, and if any court of competent jurisdiction determines that it is impossible to so construe any provision of this Lease and consequently holds that provision to be invalid, then such holding shall in now way whatsoever effect the validity of any other provisions of this Lease. When the context permits or requires, a pronoun in any gender (masculine, feminine, or neuter) shall include the remaining genders and the singular the plural and the plural the singular. The remedies provided in this Lease shall be cumulative and shall not in any way abridge, modify or preclude any other rights or remedies to which We are entitled at law or in equity.

EACH PARTY ACKNOWLEDGES THAT HE-SHE HAS READ THIS LEASE PRIOR TO SIGNING AND AGREES TO ALL TERMS CONTAINED HEREIN:

INITIALS OF ALL RESIDENTS  __AJ__  ____  ____  ____  ____  ____  ____  ____  ____  ____