**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 05-386(1) (ESH) |
| | : | |
| ANTOINE JONES | : | |

**DEFENDANT JONES' REPLY TO GOVERNMENT'S OMNIBUS**
**RESPONSE TO DEFENDANTS' LEGAL MOTIONS**

Defendant Antoine Jones ("Jones"), by and though undersigned counsel, hereby replies to the Government's Omnibus Response to Defendant's Legal Motions (Document 380).

**ARGUMENT**

I. **Motion to Reconsider Denial of Motion to Suppress Evidence Obtained from Interception of Wire Communications and Seizure of Electronic Communications**

As is its custom, the government merely brushes aside Jones' motion and ignores the substance. The bottom line argument is that Agent Yanta played fast and loose with the facts in her various affidavits for the seizure of text messages and for the wiretap. To wit:

A. **Targets**

Yanta lists eighteen targets of the wiretap, including, Jones, Lawrence Maynard, Nicholas Jones, Anthony Koonce, Derrick Gordon, Bradford Waddell, Annette Bigesby, Donald Hunter, Diane Bushrod, Adrian Jackson, Terrence Dixon, Kirk Carter, Wallace Ward, Damien Broussard, Tymira Hunter, Twanda Campbell, Karissa Jones and Nita Worley. Yanta then takes up nine pages listing the criminal history of these targets to spice up a factually bland affidavit. As it turns out, the government had absolutely no evidence connecting thirteen of these so-called targets to any drug conspiracy with Jones. For example:

i. Nicholas Jones – was merely shown to work at Level Nightclub

ii. Anthony Koonce – no evidence presented. Counsel can represent that notwithstanding the government's repeated attempts to get Koonce to cooperate against Jones, Koonce and Jones do not even know each other.

iii. Derrick Gordon – at most the government showed that he was a passenger in the van stopped in North Carolina in which cash was found.

iv. Bradford Waddell – no evidence presented

v. Annette Bigesby – aside from a couple of innocuous recorded calls, the government presented no evidence relating to Bigesby

vi. Diane Bushrod – no evidence presented

vii. Terrence Dixon – no evidence presented. Counsel can represent that Dixon and Jones did not know each other during the times that Yanta states in her affidavit that Dixon and Jones were having narcotics-related communications

viii. Wallace Ward – was deceased during the times that Yanta states in her affidavit that Ward, Jones and Maynard were having narcotics-related communications

ix. Damien Broussard – his sister, Quentessa Broussard, testified that he does not know Jones and has never been at Club Levels. In fact, he was incarcerated during the times that Yanta states in her affidavit that he and Jones were having narcotics-related communications

x. Tymira Hunter – testified she was a bartender at the nightclub and no evidence that she was in any way engaged in criminal activity with Jones

      xi.     Twanda Campbell – no evidence presented

      xii.    Karissa Jones – notwithstanding Yanta's assertion that Karissa Jones is "believed to be a fictitious person," Karissa Jones magically appeared and testified at trial. Even so, the government has no evidence that she was in any way engaged in criminal activity with Jones

      xiii.   Anita Worley - bartender at the nightclub and no evidence that she was in any way engaged in criminal activity with Jones

In sum, the overwhelming majority of the persons "targeted" by Yanta had no connection to the alleged narcotics conspiracy charged by the government. Jones submits that these persons were included as targets simply to make Jones appear to be surrounded by persons with criminal records and to make him appear guiltier. Finally, and as the Court is aware, the jury overwhelmingly rejected the charges against a fourteenth person named as a target - Adrian Jackson.

      **B.**    **physical surveillance**

Yanta's recitation of the physical surveillance conducted pre-wiretap indicates that the government was clearly able and willing to perform such surveillance - in person and in the hundreds of hours of video surveillance. That the Yanta and her cohorts chose to forgo additional surveillance for the easy route of a wiretap does not negate the fact that the instances of surveillance described by Yanta do not provide probable cause for the wiretap order.

      **C.**    **review of dialed number recorder date (pen registers)**

Yanta's assertions regarding the pen registers indicated a pattern of contact between Jones and Maynard and spouted the boilerplate language about the usefulness of pen

3

registers. The only specific information relating to Jones was that he was linked to Maynard, a fact entirely unremarkable given that they were friends and work colleagues. In fact, Yanta grossly misrepresents the actual number of communications between the two.

    **D.**    **review of vehicle registration records and licenses**

The only information provided by Yanta regarding vehicle registrations involve the revelation that Jones', Nicholas Jones', and Adrian Jackson's vehicles were seen at Levels. Again, each of these men had a connection to Levels and the presence of their vehicles there does not inform probable cause.

    **E.**    **review of criminal history records**

*See* discussion regarding "Targets", *supra*.

    **F.**    **debriefing of confidential informants.**

Jones adopts the arguments of co-Defendant Lawrence Maynard in his Motion to Adopt Prior Motions Filed by Co-Defendant Antoine Jones (Document 355) and Maynard's Reply to Government's Omnibus Response to Defendants' Legal Motions (Document 382).

The government urges the Court to deny Jones' Motion to Reconsider because the Court has already found that:

    i.    <u>Yanta's affidavits contained no statements that were intentionally misleading or made with reckless disregard for the truth</u> - the government must have missed the testimony at trial where it was shown that the bulk of Yanta's affidavits were based on false premises as is described in parts I(A) – (F), *supra*. For example, Damien Broussard was incarcerated at the time of the alleged communications with Jones; there were legitimate reasons for people to come and go from Levels during daytime hours; Wallace Ward was dead at the time he communicated about drugs with Jones and Maynard; the narcotics-related text messages

4

listed actually related to sex; Harold Holden was a government cooperator during the time of this conspiracy and was apparently never used by the government against Jones.

        ii.    <u>any alleged misstatements were immaterial to the probable cause finding</u> – the government falls back on the argument that even if Yanta was wrong, or lied, no harm was done. If that was the standard, then there would be nothing to stop agents from making it up as they go along. When the factual deficiencies are removed from her affidavits, the necessity requirement of Title III is simply not met.

        iii.    <u>the affidavit provided specific information about how the operation of the Jones Organization limited the effectiveness of conventional techniques</u> – As ably argued by Maynard, the government never used what was probably their greatest asset – Harold Holden. Additionally, as Yanta testified at trial, law enforcement agents could have conducted a traffic stop of Jones at any time but failed to do so. Such a stop is a common technique used to investigate targets. If she believed that Jones was ferrying drugs back and forth in his Jeep, a traffic stop would have erased any doubts.

        iv.    <u>The intercepts was only undertaken after a broad range of other techniques had been tried and appropriately found wanting</u> – Yanta's affidavits contains merely boilerplate language found in countless other government affidavits and, again, ignores other means, such as the use of Harold Holden or traffic stops.

For these reasons and others previously articulated, Jones respectfully requests that the Court reconsider its denial of his prior motions and grant a *Franks* hearing on the motion.

5

## II.     Motion to Suppress Tangible Evidence from Jones' Jail Cell

The government argues that this Court ignore settled Circuit precedent and follow "well-reasoned authority" from Arizona, California, Maine, Michigan, North Carolina and Rhode Island. In taking this legal road trip, the government again ignores Jones' very simple argument – Detective Horne's affidavit did not demonstrate probable cause for the search within its four corners. On its face, the Affidavit fails to allege any set of facts that Jones in any manner attempted to obstruct justice or tamper with witnesses or engage in narcotics-related activities from his jail cell. In fact, the entire factual portion of the affidavit focuses on Maynard and notes that investigators believe that Maynard, <u>not</u> Jones, had kept letters from Jones in his possession and that Maynard, <u>not</u> Jones, had evidence pertaining to narcotics-trafficking in his possession. The Court has more than ample basis to grant Jones' motion on these reasons alone.

The government's second argument that no privileged communications were seized similarly fails. Counsel, as an officer of the Court, represents that he directed Jones to provide him a list of possible witnesses or cooperators for investigative purposes. Thus, any documents prepared by Jones at counsel's direction and in anticipation of litigation are protected by the attorney client privilege and the work product doctrine. That Jones did not label the documents as such is of no moment given his incarcerated state and inability to hide the documents anywhere than in his jail cell.

## III.    Motion to Exclude Evidence Related to Prior Acquitted Conduct and to Strike Overt Acts from the Indictment

In its response to this Motion, the government engages in a bit of creative writing and selective argument. Counsel concedes that English is his second language and that he is not as well-versed as the native-born government counsel in the subtle

6

nuances of the language.  Thus, the finer points of the *Lukens* opinion might have escaped him.  Notwithstanding counsel's linguistic shortcomings, it is crystal clear that what the jury in this case did not find to be proven beyond a reasonable doubt with respect to the acquitted counts was the second element of the offense – that the communications facility was used as part of the commission of or the causing or facilitating of the commission of the conspirators' conspiracy to distribute and possess with the intent to distribute a controlled substance.  This is the very thing the government seeks to prove through use of the acquitted counts.  The government may not do this under the collateral estoppel doctrine.

### IV.    Motion to Suppress Tangible Evidence from 9719 Summit Circle, Apt. 3B, Largo MD

The government argues that because by "engaging in criminal activity on the premises, the defendant violated the express provisions of his lease, the rental manager could – and did – authorize the agent's entry" into the apartment rented by Jones.  The government concedes that ICE agents spoke with the rental manager and "explained to him the basis for their concerns about illegal narcotics activity being conducted in the apartment, and a concern about the presence of illegal aliens."  The government also concedes that "the rental manager told the ICE agents that, based on what he had been told regarding the drug investigation, Jones had violated his lease."

The government's argument is basically that the ICE agents received an uncorroborated tip that someone from Texas was flying to Maryland to pick up drug money.  The agents followed that person to the Summit Circle Apartment and observed the following highly suspicious behavior: man getting off airplane and meeting other men; man having dinner

with other men; men shopping at Arundel Mills Mall; man talking on a cell phone; men leaving apartment in a hurry.  Based on this "overwhelming evidence" of criminality, the agents approached the rental manager and informed him or her[1] that Jones was involved in criminal activity in the apartment.  Interestingly, the rental manager apparently did not have any independent information regarding Jones' alleged criminal behavior, only what was told to him by the agents who wanted access to the apartment.  Rather than obtain a judicially authorized search warrant, the agents tailored their observations to cause the manager to grant them access.

The government's argument makes a mockery of Fourth Amendment jurisprudence in that it would allow agents to simply pass on uncorroborated and unsworn hearsay to a third party to get around the warrant requirement.  The bottom line here is that the agents were too lazy to draft an affidavit, did not have probable cause in any event, and came up with a nifty way to violate Jones' rights.

### V. *Pro Se* Motions for Sanctions for Prosecutorial Misconduct

The government has failed to respond to any of Jones' allegations in his *pro se* Motions for sanctions based on prosecutorial misconduct.  As such, the Court should treat the motions as conceded and dismiss the indictment against Jones or grant such relief as justice and the Court deem appropriate.

---

[1] Jones hereby requests the name of the rental manager with whom the ICE agents spoke.

8

**WHEREFORE** for the foregoing reasons, and any others that may appear to the Court, Mr. Jones respectfully requests that his Motions be **GRANTED**.

Dated: Washington, DC
      September 4, 2007                  Respectfully submitted,

                                    **LAW OFFICE OF A. EDUARDO BALAREZO**

                                    /s/
                       By: _____
                            A. Eduardo Balarezo (Bar # 462659)
                            400 Fifth Street, NW
                            Suite 300
                            Washington, DC  20001
                            (202) 639-0999

                            *Attorney for Defendant Antoine Jones*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 4th day of September 2007, I caused a true and correct copy of the foregoing Defendant Jones' Reply to Government's Response to Defendant's Legal Motion to be delivered to the parties in this matter via Electronic Case Filing (ECF).

/s/
_____
A. Eduardo Balarezo