UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 05-386 (ESH) |
| | : | |
| v. | : | Motions Hearing: November 6, 2007 |
| | : | |
| ANTOINE JONES | : | |
| | : | |

**GOVERNMENT'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
ITS OPPOSITION TO DEFENDANT'S MOTION TO PRECLUDE USE
OF EVIDENCE SEIZED FROM A SEARCH OF HIS JAIL CELL**

Defendant Antoine Jones has moved this Honorable Court to preclude the government from using at trial materials seized from a search of his jail cell in November, 2005. He posits two theories in support of suppression: (1) that the search, though conducted pursuant to a warrant, somehow violated the Fourth Amendment; and (2) that his Sixth Amendment rights were infringed upon because some of the seized materials were in fact attorney-client privileged. In its omnibus response to the defendants' various pre-trial motions, the government opposed these claims in a fair amount of detail. Thereafter, at a status hearing on September 7, 2007, the Court requested that the government file the instant supplemental pleading setting forth in more detail the relevance of these documents.

I.   **The documents the government seeks to use at trial**.

Among the various items seized from the defendant's cell were three notable documents: (1) a letter to the defendant from Beverly Johnson, one of the defendant's romantic interests. The pertinent portion of the letter which the government seeks to use as evidence at trial reads as follows:

> The information on Donald Hunter. He is in NE2. Yes he's over there and Kevin Ray is baldhead and he's on the street last they know. Something else. I remember when he had a big case and they or the word was going around that he's been snitching because he seem to come home on them.

(2) a list of names, some followed by question marks, with the government's interpretation of who these people are, as follows:

> 1) Buck – [a music promoter with a financial interest in Kili's nightclub]
> 2) Ivie? [worked at Levels, also a lesser customer on the wire]
> 3) Pline? [presumed to be Pauline Spence, a significant customer on the wire]
> 4) Derrick? [presumed to be Derrick Barrett, another lesser customer on the wire]
>
> Donald Hunter? [a significant customer of Jones, on the wire, cooperator]
> Mike wife? [presumed to be Anja Huggins, wife of Mike Huggins]
> Kevin Ray – Grey [a significant customer of Jones, cooperator]
> Donald Hunter [see above]
> Harold Holden [employed at Levels, former customer of Jones]
> Davon Howard [unknown]
> Tony B [Tony Best, a former partner of Jones in cocaine trafficking with the Mexican suppliers]

and (3) a "to do list" of sorts, which includes among the entries: "(12) called and see Donald Hunter?"; and (17) "Roel Bermea 307-060."

## II.  Theory of Relevance

As a general matter, all three of these documents are relevant in that they support the claims of government witnesses Donald Hunter and Kevin Ray, when they testify that they were customers of Jones. Why – government's the theory goes – would the defendant be making such a list of potential witnesses, if these folks had nothing damaging to say about him? Further, why would Jones be so concerned about the whereabouts of Donald Hunter and Kevin Ray, and whether, for example, Hunter had been released – a sure sign that he is cooperating with the government – unless he was concerned that they would, in fact, testify about their many cocaine

deals with him?  Hunter and Ray will undoubtedly be subjected to protracted, painstaking cross-examination designed to portray them as lying about these cocaine transactions.  Among the best arguments to the jury as to why they should believe these witnesses is to point to the defendant's own words evidencing his concern that they would testify against him – clear evidence of consciousness of guilt.

a) <u>The Beverly Johnson letter</u>:  Specifically, the Beverly Johnson letter is relevant because it demonstrates the defendant's interest in knowing the whereabouts of these two individuals – Donald Hunter and Kevin Ray – each of whom was a significant, multi-kilogram cocaine customer of Jones.  At the time Ms. Johnson wrote this letter, the defendant was in possession of the wiretap affidavit, which set forth three confidential sources who detailed their drug trafficking with the defendant.  Certain of the information set forth in the affidavit was quite detailed, and could only have come from Jones or Hunter.  The government's theory is that Jones was trying to figure out who the mystery witnesses were against him, and he was seeking Ms. Johnson's help in locating these potential witnesses and determining whether they were, in fact, cooperating against him.

This theory is supported both by the text of the letter itself, and also by telephone calls between the defendant and Ms. Johnson during that time frame in which they discuss his desire to locate and speak with these potential witnesses, to wit: (1) on November 3, 2005, the defendant told Ms. Johnson that he wanted her to find out whether Donald Hunter was still locked up.  Ms. Johnson replied that she had already started to look into this, because she knows someone in the warden's office.  Mr. Jones then urged Ms. Johnson to find out what block Hunter was in because he "need[s] to catch up with him."  This is the call that clearly precipitates

3

Ms. Johnson's reply in the letter that Hunter is "in NE2," a block at the D.C. Jail. Further, in response to this letter, in a call on November 20, 2005, the defendant told Ms. Johnson that he got what she said about "b-head and all the rest of these jokers, it's rough thinking you can't trust nobody, you get a headache." "B-head" is a reference to Kevin Ray, and this statement about his inability to trust him and others is further support for claims by Ray that he was, indeed, a drug customer of Jones.

      b)    <u>The witness lists</u>: These lists, too, support the government's drug conspiracy charges against the defendant in that they corroborate the interpretation of many of the suspicious calls between, for example, the defendant and Pauline Spence where they discuss the availability and delivery of quantities of tickets, including "little tickets" and "VIPs." Relying on these lists, the government could argue to the jury that the defendant was concerned about who might testify about their drug transactions – might it be Tony Best, his former partner at the highest level of the distribution chain? Might it be Pauline Spence, one of his best customers in the weeks leading up to his arrest? Might it be Kevin Ray, who had been locked up and released too quickly for comfort? Might it be Harold Holden who also got locked up and then released? The government's argument again would be consciousness of guilt – if these folks had nothing damaging to say about Jones, why would they be on the list, with question marks next to their names?

**III.**    <u>**The Claim of Privilege**</u>

As set forth more fully in the government's omnibus opposition to the defendant's pretrial motions, the government does not think that any of these documents is privileged, notwithstanding defense counsel's claims to the contrary. However, given the discussions in

court at the status hearing on September 7, 2007, and a further review of all of the evidence against the defendant, the government will not seek to admit the two lists recovered from the defendant's cell. We continue, however, to strongly urge the Court to permit admission of the Beverly Johnson letter, for the reasons set forth above. There can be no legitimate claim of attorney-client privilege for a letter to a criminal defendant from his girlfriend, no matter what is discussed therein.

Respectfully submitted,

Jeffrey A. Taylor
United States Attorney

_____

Rachel Carlson Lieber
Assistant United States Attorney
D.C. Bar No. 456-491
National Security Section
555 4th Street, N.W., Room 11-909
Washington, D.C. 20530
(202) 353-8055