Defendant Jones Pro Se Motion for Reconsideration

Defendant's Pro Se Motion for Recusal    CR 05-386

Defendant Jones is requesting the courts to reconsider his motion for recusal of

Honorable Judge Ellen Huvelle.  Defendant is renewing his motion for recusal.  Reasons

for this motion are stated herein.  During a legal visit at the jail, defendant Jones briefly

discussed with his attorney (A. Eduardo Balarezo) his desire to submit motion to recuse

**FILED**

Judge Huvelle.  Mr. Balarezo agreed to submit the recusal motion to the courts.    NOV  5 2007

However, due to the fact that Mr. Balarezo was in the midst of a long trial with another

NANCY MAYER WHITTINGTON, CLERK
U.S DISTRICT COURT

client, the amount of time and attention which he committed to Mr. Jones's case was very

marginal, at best.  With the pressure of the two trials (both of which were multiple co-

defendants, numerous charges, and lasting over a period of many months), Mr. Balarezo

left the jail after that discussion with Mr. Jones and rushed to submit the recusal motion

to the court. Mr. Balarezo entered the motion on behalf of Mr. Jones pro se.



                                                                    Mr. Jones is

being held at DC Jail where the law library only has outdated law books with outdated

laws in most cases.  Further, as a lay person, Mr. Jones is untrained and unfamiliar with

the law and therefore, the pro se motion reflects such.  Mr. Jones cited some local cases

to his attorney, and to his understanding, wanted to recuse Judge Huvelle under

28U.S.C.§144, which provides:  whenever party to a proceeding in a district court makes

and files a timely and sufficient affidavit that the Judge before whom the matter is

1

pending has a personal bias or prejudice either against him or in favor of any adverse party, such Judge shall proceed no further therein, but another Judge be assigned to hear such proceedings. The affidavit shall state the facts and the reasons for the belief that bias or prejudice exists.

A party may file only one such affidavit in any case. It shall be accompanied by certificate of counsel of record stating that it is made in good faith. [Attached is my affidavit of facts.]

The Judge who is the object of the recusal motion rules on the motion. United States v. Mitchell, 377 f. Supp. 1312, 1315 (D.D.C. 1974) in order to prevent a truly biased Judge from blocking an attempt to recuse, the Judge, in deciding whether to grant the recusal motion, must accept the affidavit's factual allegations as true even if the Judge knows them to be false. "Sec v. Loving Spirit Found... 392 f. 3D486, 496 (D.D.C. 2002) on the other hand, disqualification is not automatic upon submission of affidavit and certificate; rather, the Judge must review these submissions for legal sufficiency, James v. District of Columbia, 191 f. 2D44, 46-47 D.D.C. 2002, and construe them strictly against the movant to prevent abuse, United States v. Haldenman, 559 f. 2D31, 135 (D.C.Cir 1976), Beland v. United States, 117 f. 2ND 958,960 (5th Cir 1941).

Defendant Jones moves this court to recuse itself from hearing his criminal case for the reasons and facts set forth below.

Affidavit of Facts

Due process requires that a Judge possess neither actual nor apparent bias. If actual or apparent bias exists either against or in favor of a party, 28USC§§144 and 455 provide mechanism for a Judge recusal. It is further the defendant's (Jones) understand that Judge Huvelle should be disqualified to hear this case based on ABA Rule 2.11(A) "Disqualification". ABA Model Code of Judicial Conduct Rule 2.11(A) A Judge shall disqualify himself or herself in any proceeding in which the Judge's impartiality might be questioned. The Judge should avoid favoritism. Judge Huvelle violated Canon 2- (A Judge shall perform the duties of Judicial Office impartially, competently, and diligently.) ABA Rule 2.2 "Impartiality and Fairness": A Judge shall uphold and apply the law, and shall perform all duties of Judicial Office fairly and impartially. To ensure impartiality and fairness to all parties, a Judge must be objective and open-minded. Although each Judge comes to the bench with a unique background and personal philosophy, a Judge must interpret and apply the law without regard to whether the Judge approves or disapproves of the law in question.

Further, it is not a violation of this (Rule 2.2) for a Judge to make reasonable accommodations, "to ensure pro-se litigation the opportunity to have their matter fairly heard."

Defendant Jones also charges Judge Huvelle with violating Rule 2.3 (A, B, C) Bias, Prejudice and Harassment. A Judge who manifests bias or prejudice in a proceeding impairs the fairness of the proceedings and brings the Judiciary into disrepute. A Judge must avoid conduct that may reasonably be perceived as prejudice or biased, such as slurs, threatening, intimidating, hostile acts, facial expressions, body language, etc., convey to parties and lawyers in the proceeding. Jones charges that Judge Huvelle

violated ABA Rule 2.6 (Ensuring the Right to be Heard…) Rule 2.6(A) A Judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law. The Right to be Heard is an essential component of a fair and impartial system of justice. <u>Substantive Rights of litigants can be protected only if procedure protecting the Rights to be Heard are observed.</u> The Judge plays an important role in observing the settlement of disputes, but should be careful that efforts to further settlement <u>do not undermine any party's right to be heard according to law.</u> The Judge should keep in mind the effect that the Judge's participation in settlement discussions may have, not only on the Judge's own views of the case, but also on the perception of the lawyer and the parties of the case remains with the Judge after settlement efforts are unsuccessful.

Defendant Jones further charges that Judge Huvelle violated A.B.A. Model Code of Judicial Conduct Canon 2, Rule 2.15(B) (D), "Responding to Judicial Lawyer Misconduct". 2.15(B) – A Judge having knowledge that a lawyer (prosecutor) has committed a violation of the Rules of Professional Conduct that raises a substantial question regarding the lawyer's honesty, trustworthiness or fitness as a lawyer in other respect shall inform the appropriate authority. Rule 2.15(D) A Judge who receives information indicating a substantial likelihood that a lawyer (prosecutor) has committed a violation of the Rules of Professional Conduct shall take appropriate action. <u>Taking action to address known misconduct is a Judge's obligation.</u> Ignoring or denying known misconduct among one's Judicial colleagues or members of the Legal profession undermines a Judge's responsibility to participate in efforts to ensure public respect for the Justice system. A Judge who does not have actual knowledge that a lawyer

4

(prosecutor) may have committed misconduct, but receives information indicating a substantial likelihood of such misconduct, is required to take appropriate action under paragraph (D).

In conclusion, Jones charges Judge Huvelle also violated "The Judicial Policies and Procedure Code of Conduct Canon1, Canon 2(A), Canon 3.A (1, 2, 3, 4), and 3C(1)A... Attached is ABA Model Code of Judicial Conduct "Preamble" and ABA Model Code of Judicial Conduct "Scope". Violating these Judicial Code of Conduct rules warrants Judge Huvelle to recuse herself from these proceedings on grounds of impartiality, favoritism, bias and prejudice.

Evidence, Statement of Facts

Judge Huvelle has shown bias and prejudice and favor towards the government during detention hearings, pre-trial proceedings, motion opinions and motion responses, during trial, and especially during the bench conferences. Judge Huvelle observed and permitted prosecutorial misconduct, perjury and law enforcement misconduct in her courtroom. She worked in tandem with the government to cover up revelations of illegal acts by law enforcement officers, violations of court orders by law enforcement officers, perjury, violation of the rules of witnesses, obstruction of justice, intimidating spectators and many more instances of unethical behavior, misconduct and violations of the Code of Professional Conduct. Judge Huvelle has chosen to ignore the sworn Oath to be impartial and fair in her Professional Code of Judicial Conduct. Here are some examples of bias, prejudice and impartial behaviors exhibited by the Judge in the courtroom. Judge

Huvelle rendered decisions that denied defendant Jones the right to prepare for a proper trial and further denied the right to a fair trial before, during and continues these behaviors after post-trial.

Statement of Facts #1 – During the first trial of US v Jones, et al, Judge Huvelle sided and gave favors to the government. Here is one act that proved to be detrimental to the defense. The government, following advice received from Judge Huvelle in trial, has decided to circumvent calling Agent Stephanie Yanta, Lead Agent for the FBI in the investigation, to testify in the upcoming trial. During the first trial, Agent Yanta rendered a perjured testimony, which was riddled with misstatements, fallacies, untruths, and blatant lies. At times the proceedings had to be stopped, bench conference called, and efforts were made to cover up these revelations of gross misconduct. Again, Judge Huvelle worked in tandem with the government to obscure, disguise and bury the truth. These efforts cripple the defense's ability to disprove the government's allegations, lies and reckless disregard for the truth in the matter. Judge Huvelle's decision to not allow an evidentiary hearing or Frank Hearing even further debilitates the defense's ability to reveal the truth in the matter.

During trial, at a side bench conference, see trial transcript, date: Oct 30 2006 page 10, lines 2, 3, 4, 5, 6, and 7, Judge Huvelle stated, "I understand your points, and I think that the way she testified in direct, I re-read it last night, you know, if I were anybody, frankly and I don't mean to be giving advice, "get her off the stand. She's got nothing to add here. Okay. But if you want her to stay on the stand, then they get to have her stay on the stand, too." Page 10, lines 10-13, Judge Huvelle also states, "oh, heah but are we finish talking?" Prosecutor Rachel Lieber replied, "I'm sorry." Judge Huvelle

adds: "fine, if I hadn't reviewed these affidavits so thoroughly once before, I would be less adamant but I have reviewed them…" This is a clear bias action to get Agent Yanta off the stand because it was becoming clearer that her testimony was riddled with perjury and the Judge was trying to prevent further detriment to the government's case. Mr. Balarezo cross-examined Agent Yanta. During Mr. Balarezo's cross examination, Agent Yanta's perjured testimony and reckless disregard for the truth was made evident. Also, the many lies in Ageny Yanta's affidavit were made evident during Mr. Balarezo's cross examination. The truth of the matter is the affidavit, which the Judge stated she was so intimately familiar with, contained a disparaging number of deceptions, twisted misstatements, and perilous lies in an effort deceive the courts. At one point during the proceedings, Judge Huvelle stated, "this whole case has been one big illusion". Jones asserts that this is a clear violation of the Judiciary Code of Conduct…

During the time Agent Yanta (under oath) testified, (see trial transcripts Oct 27-Oct 30, morning and afternoon) Judge Huvelle threatened and intimidated defense attorney Balarezo, threatened and intimidated defendant Jones, and showed impartiality, bias and prejudice and sided and showed favor to the government.

See trial transcript, October 27, 2006, Yanta, page 77, lines 18-25, Judge Huvelle stated: "I have to warn you, not only do I agree with that, but I don't know why the Jury should in some fashion think that this has not been exhaustively discussed. I actually, if you don't stop, she will be able to bring up exactly what she … She can ask me beforehand. But it's also, the notion that you are supposed to put all this stuff in an affidavit is legally absurd. I'll tell them if you keep it up."

Judge Huvelle added, "you have to be very careful because you've not shown anything about this affidavit that would constitute omission. I ruled on it..." (page 78, lines 10-12). Balarezo replied, "your honor, I'm not talking about the standard for the motion to suppress or for Franks. I'm talking about standards for challenging her credibility as a witness, (page 78, lines 13-15).

Judge Huvelle goes on to state: "No, because as a legal matter she is not obligated to stick all this stuff in here", (page 78, lines 17-19). She further stated (page 79, lines 1-4), "there is no such person in the world who cares about everything that goes on in terms of before you issue a wiretap." (This is not fair, not fair to the Agent.) See page 79, lines 9-11, where the Judge states "To say that, to suggest in a way that she either mislead Magistrate Kay or anybody else, I think is legally improper. I've made my point. All right." She goes on to threaten defense attorney stating, "I'm telling you not to keep it up unless he want to hear the objection". Here we have a United States District Judge prohibiting the defense attorney from cross examining a government witness to bring out the truth and to allow the jury to make a determination of the witness' credibility. Defendant Jones further asserts that the defense does in fact care about everything that goes into an affidavit, especially if its riddled with disparaging judgmental and derogatory misstatements, false statements, and perjury in an effort to mislead and deceive the courts. There are many instances of Judge Huvelle's favoritism throughout the trial and particularly during Agent Yanta's cross examination on October 27, 2006. On October 30, 2002, (page 67, lines 1-5) during Agent Yanta's testimony, Judge Huvelle states, "She states she has very little to add to this. You're attacking someone's credibility whose credibility is barely at issue, barely. They don't read these

affidavits unless you keep at it. <u>Then they could read it.</u> So they don't know what she says to the Judge at all. (Page 67, lines 9-11) "She got a bunch of warrants. We wouldn't be here if she hadn't gotten the warrant. Defendant Jones asserts that this is in fact a true statement, and therefore based on this statement alone, the weight and significance of the Affidavit cannot be dismissed now that the trial has begun. The entire trial is predicated upon the premise that the affidavit is true and accurate, especially since it is a sworn document presented to the courts. Again, at some point in these procedures, Judge Huvelle determined, "this whole case has been one big illusion". Defendant assumes the statement made by Judge Huvelle is based on the fact that there were so many unscrupulous statements and allegations made by the government which were later deemed to be untrue. Again, Jones agrees that "we wouldn't be here if she hadn't gotten the warrants," and further if she had not mislead and deceived the courts. Judge Huvelle not only coached the government, she protected them and underhandedly worked with them in tandem to cover up Agent Yanta (and other government witnesses) reckless disregard for the truth. Judge Huvelle denied the defense an evidentiary hearing twice, so the defense couldn't present the truth of the matter to the court.

It was revealed that Agent Yanta perjured herself in court and throughout the affidavit to get a warrant. Judge Huvelle threatened the defense by stating: "you're just making her into something that allows the government to talk about all that she knew." "So understand the consequence. I don't know what else to say." This statement was made to intimidate the defense. There were no consequences. At the end of the trial, in closing remarks, prosecutor Rachel Lieber admitted that Agent Yanta made a mistake… There were many instances where Judge Huvelle directed her attention to Mr. Jones

making motions, looks of disgust and intimidation. Judge Huvelle stated to Mr. Jones on

October 30, page 9, lines 20-22, "Don't forget, Mr. Jones, you've got a lawyer here,

you're not for strategy decisions. It's not your call!" Defendant Jones takes the position

that it is his call. Although Mr. Balarezo is working to defend Mr. Jones, the court

directs Mr. Balarezo and has the power to intimidate him because ultimately, he works

for the government and the government has the power to "shut him up". Defendant Jones

is fighting for himself and understands that he must fight through all of the looks of

disgust, intimidation and prejudice directed at him by Judge Huvelle. Defendant Jones

asserts his Right to be Heard and again, states, as the person being tried, it is his call. See

Agent Sephanie Yanta's trial transcript October 27, 2006, morning and afternoon, and

compare Yanta's testimony with the testimonies of Tymira Hunter, Quentessa Broussard,

Karessa Jones and Shanice Gilmore. This comparison highlights the many false

statements, misstatements, misleading statements, deceiving statements and reckless

disregard for the truth in all of Agent Yanta's affidavits. It is the judicious duty of Judge

Huvelle to not cover up or protect Agent Yanta (and the many other government

witnesses), but to be neutral and perform the Oath of Duty she has sworn as an impartial

Judge, not cutting the defense short with her Judicial powers.

See Agent Gikas, trial testimony of November 16, 2006, afternoon session. Here

we have a team of federal agents (ICE) going into an apartment at Summit Circle without

a search warrant (page 73, lines 2-3). Agent Gikas was asked if the search was pursuant

to a warrant. She answered, "No sir". Once again, Judge Huvelle limited and in some

instances, blocked defense attorney from questioning Agent Gikas freely to show the

agent's investigation techniques. Judge Huvelle stated, page 78, lines 6-10, "I think it's a

terrible mistake to keep on opening all these big fat doors over nothing..." It might be
nothing to Judge and the government, however, it is a matter of bringing out the truth to
the defense. It is the difference between law and order versus vigilante impulse. The
defense has the Right to question accusers to determine if the letter of the law was
followed or if the government, prosecutors, law enforcement agents, and the courts have
coerced witnesses, committed perjury, and "created" a big illusion to convict the
defendant.

Defense attorney (Balarezo) stated, "if I want to ask the question, they are going
to introduce it..." Judge Huvelle stated, "I'm not going to let them" (page 77, lines 4-6).
Even after Agent Gikas admitted the ICE agents went into Summit Circle without a
search warrant, the courts (Judge Huvelle) in denial, stated "you're trying to suggest
something that is terribly illegal." During the void dire, it was admitted that the ICE
agents went into Summit Circle without a warrant. To refresh the courts memory, the
courts, see Agent Gikas trial transcript in its entirety. In transcript of Thursday,
November 16, 2006, am session, the courts will see the many bias and perjury statements,
the favoritism to the government, and the many Rule 16 violations, GPS information on
the white box truck, cell search information, pen register information, photos and the ICE
investigation reports. Much of this information was withheld from the defense until trial.
In particular, the defense received the following information during trial: ICE GPS data,
and ICE reports. Defense has requested but has not received the ICE application and
order as of yet.

During trial, Judge Huvelle allowed and in many instances turned a "blind eye" to
many violations of Rules and the Law. Further, Judge Huvelle's refusal to allow an

11

Evidentiary Hearing or Frank Hearing prohibited the defense from bringing out the truth

and thereby afforded the government the technical advantage. The court allowed the

government to intimidate spectators and interfere with defense right to an open

proceeding (see transcript of date _Nov 16 2006_, pages 14-21). The Judge allowed

the government to lie their way out without having a Hearing on the matter. The defense

had witnesses who were willing and ready to testify until the government approached

them and deceived and intimidated them.

The court has been prejudice about the issue of the pen register application and

court orders (August 1, 2005) on Mr. Jones cell phone. Mr. Balarezo, as well as the other

defense attorneys have repeatedly requested the August 1, 2005 pen register application

and Court Order (page _55_ PG 54, lines - _3_ PG 56, date _Dec 5 2006_). All of these requests have

gone unanswered to this date. There are numerous occasions where defense attorneys

have verbally requested the pen register in court. Mr. Balarezo has put in a motion to

compel the government to turn over the pen register, but again, to no avail. The court has

not ordered the government to comply but has insistently ignored the requests. Mr. Jones

is left to believe that once again, the government has lied and deceived the courts because

the government knows that these items do not exist. Jones raises the issue of the

prosecutors withholding the information, thereby committing prosecutorial misconduct

and/or perjury. This is a clear case of the Judge working in tandem with the government

and denying defense a fair trial.

The prejudice and biases along with the intimidation go so out of hand during the

trial that defense attorney had to request an ex parte Hearing on Monday, October 30,

2006 at 9:30 am, (pages 42-43). Defense attorney explained to the courts it was

12

defendant Jones's decision to question Agent Yanta's credibility. Judge Huvelle responded by stating: "It opens a lot of doors. If he wants to hear about it, that's fine. We just have to make sure that the other defendants don't get prejudiced by it. Mr. Jones, at some point in time, <u>He will just pay the consequences of what he is choosing to do.</u> And I assume he agrees with that." Defendant Jones asks the question, "Why doesn't Agent Yanta pay for committing perjury and for deliberately deceiving the courts?" or, why not defendant Jones being prejudiced by not allowing the defense to question Agent Yanta to the fullest to bring out the truth of the matter? The court rushed the defense and cut him off as Judge Huvelle threatened, page 43, line 22-23, date <u>Oct 3, 2005</u> "I will cut you off at some point because it is irrelevant." Defendant Jones asserts that it is classified as "irrelevant" to the courts here because the further the questioning continued, the more factual truths were revealed, and the agents and the government were forced to further their cover up and misguided conspiracy.

Judge Huvelle denied defendant Motion regarding Harold Holden, closing her eyes to the fact that the government, the prosecutors and Agent Yanta once again acted in a reckless manner showing total disregard for the truth. Agent Yanta stated in the September 2, 2005 wiretap affidavit that there was no informer they could use... Even the courts stated "<u>A cooperator is a cooperator.</u>" (see Agent Yanta's October 30, 2005 testimony, page 77, lines 9.) Once again, the court denied the motion thereby preventing defense attorney to cross examine Agent Yanta under oath in a Hearing, which again prohibited defense from bringing out the truth and facts and further helped the government in their efforts to cover up the truth. The courts continues to violate defense Rights to face his accuser.

Judge Huvelle, from day one, showed that she favored the government by overruling Magistrate Judge Robinson's detention hearing ruling. Judge Huvelle stated in open court "I got them all here, where are the charges?" The courts covered up the government's lack of investigation, perjury, violation of Constitutional Rights, forgery, tainted evidence, missing pen register applications, Court Order violations, breaking and entering, violation of witnesses, criminal contempt of court, and law enforcement and prosecutorial misconduct. (Refer to Jones pro se motion, Prosecutorial Misconduct.) The GPS Motion and motion to suppress evidence (Jeep Cherokee), also shows misconduct, violation of Constitutional Rights, and breaking the law. Judge Huvelle has been through trial, she has seen and heard the facts, evidence and the truth. Judge Huvelle is still willing to work in tandem with the government to cover up the truth in spite of all the facts and truth the defense brought out during trial. The court insists on ignoring facts which contradict the government's statements and testimonies. Knowing all that she learned from the first trial, Judge Huvelle is still denying the defense an Evidentiary Hearing even this second time. To willingly turn a blind eye and deny the defense Motion without allowing the defense a Motion Hearing is biased and prejudice to the defense.

Based on these facts, Judge Huvelle has demonstrated that she cannot be neutral, professional and impartial in applying the Law to these proceedings. Therefore, Judge Huvelle should be disqualified and recuse herself under USC§§144 and 455, along with violating the Judiciary ethical Code of Professional Conduct.

The courts, specifically, Judge Ellen Huvelle, has observed, allowed, and made no attempt to discourage prosecutorial misconduct, repeated violations of defendant's constitutional rights, perjury, law enforcement violation of court orders, tampering and tainted evidence, foul play, and vagrant acts by law enforcement's disregard and disrespect for the law. Judge Huvelle has allowed the government to repeatedly break the law. She has assisted them in their efforts to cover-up their perjured testimonies and their illegal activities. Judge Huvelle's duplicitous, partial and biased rulings throughout this case has shown that she is unable to render and apply the letter of the law without showing favoritism to the government and the prosecutors.

Judge Huvelle has repeatedly made racist remarks from the bench. Mr. Jones asserts that due to his race, Judge Huvelle is incapable of showing him fairness and applying the letter of the law in the same fashion that she would afford white defendants. Jones's point here is further demonstrated by the circumstances of the "recusal" and "prosecutorial misconduct" charges brought against Michael Nifong when he tried to prosecute white defendants and the letter of the law was applied and the case was dismissed because the media and the courts chose not to ignore the white defendants and their complaints of prosecutorial misconduct.

A United States District Court judge is charged to be honorable, fair, impartial, have integrity and apply the law without prejudices. Judge Huvelle has lost sight of the dignity and veracity that she has been charged with in her position. Instead, Judge

Huvelle has turned a blind eye to the oath that she has sworn to uphold. Her

insurmountable, unethical conduct has violated numerous Codes of Judicial Conduct.

Refer to "the Reconsideration Recusal of Judge Huvelle" and "the Prosecutorial

Misconduct of Rachel Lieber and Jack Geise."


   The fact is that as long as the courts (Judge Huvelle) continues to show bias and

prejudice to the defense and favoritism to the government, the defense will continue to be

denied the right to a fair trial. Instead of applying the law to the case with neutrality,

Judge Huvelle has worked in tandem with the prosecutor and law enforcement to corrupt

testimonies, taint evidence, and exploit law enforcement's abuse of the very law they are

charged to defend. Judge Huvelle has made many threats to the defense, made improper

gestures, coached the prosecutors and their witnesses, discouraged the defense, and used

her Judicial Powers to support and assist the government in an effort to obtain a

conviction. By refusing to be neutral, truthful and upholding her Judicial oath to the

highest standard of professionalism, her actions have perverted the very court room she

presides inside.

## Conclusion

Defendant Jones is calling to the court's attention to the American Bar Association's (ABA) Model Code of Judicial Conduct (Feb 2007), <u>ABA</u> Rule 2-6(a) Ensuring the Right to be Heard. (A) A Judge shall accord to every person who has a legal interest in a proceeding or that person's lawyer, the right to be heard according to the law. The right to be heard is an essential component of a fair and impartial system of justice. Substantive rights of litigants can be protected if procedures protecting the rights to be heard are observed. By not letting Mr. Jones face his accuser(s) in an evidentiary hearing, the courts (Judge Huvelle) undermines Jones's rights to be heard according to the law.

See <u>ABA Rule 2.15(A)(B)(C) and (D)</u>. This is a very important and power ethical rule, because the Judge has to take action to address known misconduct because it's the Judge's professional obligation, and if a United States District Judge ignores or denies known misconduct among one's Judge's judicial colleagues or members of the legal profession undermines a Judge's responsibility to participate in effort to ensure public respect for the Justice system.

Defendant Jones is asking for Justice, law and a fair trial from a neutral and fair Judge. Jones, like every citizen of the United States, regardless of color, is presumed innocent until proven guilty. The same letter of the law must be applied fairly, equally, morally, and with the same standards and principles to every litigant, every day, by every Judge and in every courtroom.

## CERTIFICATE OF SERVICE

I hereby certify and declare that a true and accurate copy of the foregoing, _PRose Motion FoR RECUSAL_, was placed into This institution's mail receptacle on this _27_, dav of, _september_, 2007.

Antoine g more                    241·912

19 01 0 st SE
WAC 2 0003

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# ABA MODEL CODE OF
# JUDICIAL CONDUCT
# FEBRUARY 2007

## PREAMBLE

[1]    An independent, fair and impartial judiciary is indispensable to our system of justice. The United States legal system is based upon the principle that an independent, impartial, and competent judiciary, composed of men and women of integrity, will interpret and apply the law that governs our society. Thus, the judiciary plays a central role in preserving the principles of justice and the rule of law. Inherent in all the Rules contained in this Code are the precepts that judges, individually and collectively, must respect and honor the judicial office as a public trust and strive to maintain and enhance confidence in the legal system.

[2]    Judges should maintain the dignity of judicial office at all times, and avoid both impropriety and the appearance of impropriety in their professional and personal lives. They should aspire at all times to conduct that ensures the greatest possible public confidence in their independence, impartiality, integrity, and competence.

[3]    The Model Code of Judicial Conduct establishes standards for the ethical conduct of judges and judicial candidates. It is not intended as an exhaustive guide for the conduct of judges and judicial candidates, who are governed in their judicial and personal conduct by general ethical standards as well as by the Code. The Code is intended, however, to provide guidance and assist judges in maintaining the highest standards of judicial and personal conduct, and to provide a basis for regulating their conduct through disciplinary agencies.

# SCOPE

[1]    The Model Code of Judicial Conduct consists of four Canons, numbered Rules under each Canon, and Comments that generally follow and explain each Rule. Scope and Terminology sections provide additional guidance in interpreting and applying the Code. An Application section establishes when the various Rules apply to a judge or judicial candidate.

[2]    The Canons state overarching principles of judicial ethics that all judges must observe. Although a judge may be disciplined only for violating a Rule, the Canons provide important guidance in interpreting the Rules. Where a Rule contains a permissive term, such as "may" or "should," the conduct being addressed is committed to the personal and professional discretion of the judge or candidate in question, and no disciplinary action should be taken for action or inaction within the bounds of such discretion.

[3]    The Comments that accompany the Rules serve two functions. First, they provide guidance regarding the purpose, meaning, and proper application of the Rules. They contain explanatory material and, in some instances, provide examples of permitted or prohibited conduct. Comments neither add to nor subtract from the binding obligations set forth in the Rules. Therefore, when a Comment contains the term "must," it does not mean that the Comment itself is binding or enforceable; it signifies that the Rule in question, properly understood, is obligatory as to the conduct at issue.

[4]    Second, the Comments identify aspirational goals for judges. To implement fully the principles of this Code as articulated in the Canons, judges should strive to exceed the standards of conduct established by the Rules, holding themselves to the highest ethical standards and seeking to achieve those aspirational goals, thereby enhancing the dignity of the judicial office.

[5]    The Rules of the Model Code of Judicial Conduct are rules of reason that should be applied consistent with constitutional requirements, statutes, other court rules, and decisional law, and with due regard for all relevant circumstances. The Rules should not be interpreted to impinge upon the essential independence of judges in making judicial decisions.

[6]    Although the black letter of the Rules is binding and enforceable, it is not contemplated that every transgression will result in the imposition of discipline. Whether discipline should be imposed should be determined through a reasonable and reasoned application of the Rules, and should depend upon factors such as the seriousness of the transgression, the facts and circumstances that existed at the time of the transgression, the extent of any pattern of improper activity, whether there have been previous violations, and the effect of the improper activity upon the judicial system or others.

[7]    The Code is not designed or intended as a basis for civil or criminal liability. Neither is it intended to be the basis for litigants to seek collateral remedies against each other or to obtain tactical advantages in proceedings before a court.

2