Let this be filed ESH 11/5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

United States

v.                                              Case No. CR-05-0386-1 SH

Antoine Jones, et al                            **FILED**
                                                NOV 5 2007
Defendant's *pro se* Supplemental Prosecutor Misconduct Motion
                                                NANCY MAYER WHITTINGTON, CLERK
                                                U.S. DISTRICT COURT

Defendant, Antoine Jones, comes before this court, *pro se*, to request the Courts grant this Supplemental Prosecutor Misconduct Motion. Reasons for this supplemental Motion are stated herein. Defendant Jones's after add to his *pro se* Prosecutor Misconduct Motion.

Defendant Jones hereby submits this *pro se* motion for the courts to put on record and allow Defendant Jones to add this supplement. To defendant's *pro se* Prosecutorial Misconduct reconsideration motion.

August 19, 2006, Honorable Judge Huvelle made a court ruling on Defendant Jones's motion to suppress "Evidence" obtained from the GPS tracking device, which was denied in part. (See Document 177 at 28.) The courts memorandum opinion states in *United States v. Karo, 468 U.S. 705, 728* — a case that also involved a beeper device secreted to a vehicle, the court distinguishes between information in public spaces versus "private location." In doing so it held that while the data in question that was obtained from the device while on the public road was admissible. "Information" that was obtained from the tracker while it was inside the privacy of their home. Was not admissible. *Karo 468 U.S. at 714-15.* Accordingly, as the government here essentially concedes, *see In Omnibus Opp. at 44-45*, the "data" obtained from the GPS device when the defendant's Jeep Cherokee was parked in the garage adjoining the Noone Street property must be suppressed. [The fruit of the poisonous tree doctrine]

RECEIVED
NOV -1 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

On Monday, November 6, 2006, 1:45 p.m. (afternoon session), on page 100, during his extensive cross examination, defense attorney, Mr. Balarezo questioned Special Agent Stephen Naugle about the observance of any "drug paraphernalia, scales, Ziploc bags, tally sheets", and Agent Naugle responded "no," or "we did not". Refer to page 100 lines 19-25. Mr. Balarezo's question: "You didn't find any, any 'tally sheets'? Do you know what those are?" Agent Naugle responded, "You're referring like drug 'tally sheets'." Mr. Balarezo responded, "Yes sir." Then Mr. Balarezo questioned on line 24 and "You didn't find any at this location, did you?" Agent Naugle answered, "We did not."

Mr. Balarezo further clarified by asking the agent, "You didn't see any records that Mr. Jones might have kept saying such and such person owes me such and such amount of money?" The agent responded, "That's correct." (see page 101 lines 1-2).

Here, FBI Agent Stephen Naugle who is an experienced Special Agent, specifically stated in his sworn testimony he did not see any "tally sheets". Yet, minutes later, prosecutor Rachel Lieber exhibiting overzealous prosecutorial conduct, tried to coerce and lead the Agent to perjure himself while under oath and in front of the jury. (Refer to page 114 lines 19-25, page 115, page 116, and page 117 lines 1-3).

Defendant Jones specifically calls your attention to page 116, lines 21-22. Rachel Lieber's redirect cross question to the agent: "Mr. Balarezo asked you questions about your experience in drug trafficking and 'tally sheets' and the like. What does this appear to be to you?" Agent Naugle answered, "There are numbers on her." Rachel Lieber stated on line 16, "I'll actually put it on the projector now. What does that appear to be?" Mr. Balarezo objected "page 117 line 3 from page 117 line 3. Agent Naugle answered "It's a 'tally sheet'." Mr. Balarezo objected once again.

Defendant calls the court's attention to Rachel Lieber's cross on page 114, lines 19-22. Rachel Lieber stated, "If I may, Agent Naugle is taking the bag out of AJSW-65, it's a blue sort of cooler type item. I'm going to have an item within there, a small scrap of

paper. I want you to take a look at that." (Defendant refers the courts to page 115, lines 9-11.) Fisher continues, "From the Jeep, that's already been previously been admitted from the previous witness, the bag and its contents." Here we have the prosecutor telling the court and the jury that the "small scrap of paper" that she deems to be a "tally sheet" was seized from the blue cooler and it has already been put on record as an item from the blue cooler in the Jeep Cherokee. Ms. Fisher stated it has been admitted from the previous witness [the previous witness was Detective Joseph Sopata]. This is a violation of professional conduct, outrageous conduct and prosecutor misconduct. This is an example of the prosecutor overreaching, and venturing out to perjure herself and the witness. Detective Sopata was questioned extensively by Mr. Balarezo regarding finding drugs, drug paraphernalia, scales, Ziploc bags, and "tally sheets". Detective Sopata never mentioned seeing or finding a "tally sheet" or a "scrap of paper". (His cross examination starts on page 84 and continues through page 108. Defendant calls the courts attention to page 89 lines 15-20. Prosecutor Fisher speaks of the blue cooler, the agents only said "money was inside the blue cooler". "I think it's like a small cooler thing." line 15-17. Rachel Fisher asks the detective, "The bottom portion of the photograph inside the cooler bags... Do you see all these loose rubber bands and papers and things?" Nowhere is Rachel Fisher's questioning of Detective Sopata did she mention a tally sheet or little scrap of paper. This testimony is riddled with leading misleading, deceiving and outrageous conduct. Prosecutor Fisher pulls a "rabbit out of the hat" or should I say pulls a "scrap piece of paper/tally sheet out of a blue cooler", deceiving the jury with her personal performance. Rachel Fisher's performance prejudiced the jury and again denied the defendant his right to a fair trial.

Agent Naugle testified that he didn't see or seize a tally sheet in the cross examination by Mr. Balarezo, and in the recross examination, pages 120 and 121. Even the court reacted to Rachel Fisher's outrageous conduct. The end of Mr. Balarezo's cross examination Ms. Fisher attempted to further her misleading conduct (page 121, lines 22-24) by stating, "Your Honor, I think now the door has been opened to what he thinks this is." The courts reply, "I don't care what he thinks this is, not at this point!"

3

Defendant hereby charges prosecutor Rachel Lieber with Prosecutor Misconduct, perjury, violating the Rules of Professional Conduct, and misleading and the deceiving the courts and Jury.

Argument #2 Defendant also adds, every time the government (Rachel Lieber) questioned Detective Sopata and Special Agent Naugle regarding the evidence obtained from the Jeep Cherokee, she violated defendant's constitutional rights and violated the court's decision. The information, data and evidence can't be used because it was determined by the court to be the "fruit of the poisonous tree" (see *United States v. Karo* 468? S. at 705. The courts stated in *U. S. v. Karo* 468 U. S. 705 [1984], a case that also involved a "beeper" device secreted in a vehicle, the court distinguished between monitoring in public spaces versus private locations. In doing so, it held that while the data in question was obtained from the device while on the public road was admissible, "information" that was obtained from the tracker while it was inside the private residence was not, because the resident had a reasonable interest in privacy in their home. *Karo*, #'s ? S. at 714. Accordingly, as the government here essentially concedes, *Gov't's Omnibus resp. at 55 N14*, the data obtained from the GPS device when the Jeep Cherokee was parked inside the garage adjoining the Moore Street property must be suppressed. Defendant reminds the courts in response to defendant's *pro se* motion to suppress the GPS, the court responded in footnote 4. *The court granted in part Jones' motion to suppress "evidence" obtained from the GPS tracker.*

Here we have "information," "data," and "evidence," all to be suppressed under the "fruit of the poisonous tree doctrine" per *U. S. v. Karo* with the understanding of *Karo* and the specific ruling of the courts on *Motion to Suppress "evidence" obtained from the GPS tracker in the garage adjoined to Moore Street House*." Ms. Lieber once again, prejudiced defendant with her cross examination of Detective Sopata and Agent Naugle when she talked about discovery from the Jeep Cherokee. Ms. Lieber poisoned, refuted our prejudiced defense efforts and further denied defendant the right to a fair trial when she put on record and entered as evidence, illegally obtained "fruit of the poisonous tree"

4

Ms. Lieber to further prejudiced the defendant by sending the illegally obtained information back to the jury during deliberations.

These instances of prosecutor misconduct, specifically the actions of Ms. Rachel Lieber, denied Defendant Jones the right to a fair trial and maybe an acquittal, along with the other three defendants who were on trial and whose verdict ended with an "Aquittal". With this supplemental motion defendant is requesting the courts to dismiss this case. Defendant reminds the court, the government submitted all of this "poisoned" evidence and sent this information back to the jury with the intention to obtain a conviction "by any means necessary", regardless of the legal consequences or ramifications.

Signed,

Antoine Jones

*Antoine Jones*  10-19-2007