UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Case No. 05-CR-386(1) (ESH) |
| | : | |
| ANTOINE JONES | : | |

### DEFENDANT'S MOTION FOR RECONSIDERATION OF RULING DENYING DEFENDANT'S REQUEST TO CALL ANTHONY KOONCE AS A WITNESS

Defendant Antoine Jones, by and through undersigned counsel, respectfully moves this Honorable Court to Reconsider its prior ruling precluding Defendant from seeking to call Anthony Koonce as a witness to testify about the government's attempts to force him to name Defendant Jones a his narcotics supplier.  In support of this motion Defendant states as follows:

1. Defendant Jones sought to call Anthony Koonce as a witness for the purpose of testifying: a) that he did not deal in narcotics with Defendant; and b) that the government attempted to force Koonce to name Jones as a narcotics supplier.  The basis for Jones' belief that Koonce would testify as such was undersigned counsel's personal conversations with Attorney Chris Davis, Koonce's former counsel.  Additionally, Mr. Davis, who was previously Jones' co-defendant's (Lawrence Maynard) attorney, had told Maynard the same thing.

2. Because Mr. Davis had a conflict in having represented both Maynard and Koonce, the Court granted his request to withdraw as counsel and appointed Attorney John Briley to represent Koonce for the purposes of an inquiry regarding Jones' desire to call Koonce as a witness.

3. On December 5, 2007, the Court held a hearing to determine whether Koonce had a Fifth Amendment problem if he testified for Jones and to determined whether his testimony would be relevant to Jones' current trial. At that hearing, the Court sought to rule on the relevance of Koonce's testimony before reaching the Fifth Amendment issue. The following exchange took place:

> 22 THE COURT: I'm more concerned. I think that we can
> 23 cut this short, Mr. Briley, if you could kindly talk to
> 24 Mr. Koonce, so we won't even have to get to the Fifth
> 25 Amendment. I want to know through you what it is that he says
> 1 and doesn't say about his discussions, plea discussions with
> 2 Ms. Lieber or Mr. Geise or the people who work with them.
>
> 3 MR. BRILEY: I've talked to him about that, Your
> 4 Honor. And he said that he was asked during his plea. During
> 5 that debriefing, he was asked if he knew Antoine Jones and he
> 6 denied it.
>
> 7 THE COURT: Right, and anything more?
>
> 8 MR. BRILEY: It does not say that he was, he did not
> 9 tell me anything about getting pressure to change his answer.
>
> 10 THE COURT: That's all I think we ought to confirm
> 11 because otherwise, based on that, I don't need to go through a
> 12 Fifth Amendment privilege with him.
>
> 13 MR. BRILEY: Well, I can confirm that right now.
>
> 14 THE COURT: Yeah. The question is for him, he met
> 15 with Ms. Lieber I don't know when, how many times, and what
> 16 exchange took place and what, if anything, the Government said
> 17 to him.
>
> 18 MR. BRILEY: Yeah. My concern initially was that,
> 19 based on what I thought Ms. Lieber told me that he had said
> 20 something contradictory at the debriefing. But as I
> 21 understand it now, he did not say anything contradictory to
> 22 what I believe he would now say. So he would not be impeached
> 23 by what he said then.
>
> 24 THE COURT: No, no. The question now I'm trying to

25 grapple with is the relevance of what he has to say. The
1 relevance of what he has to say with respect to Yanta's
2 affidavit in which she repeats confidential informant three is
3 not, I've already ruled that out.

4 MR. BRILEY: Yeah, well, like I said, as long as the
5 cross examination is limited to whether or not this happened
6 or that happened as set forth in the affidavit, he would deny
7 all of that. So he would not say anything that would --

8 THE COURT: Okay, but that's not the issue.

9 MR. BRILEY: -- to which he has a privilege.

10 THE COURT: Sorry. That's not the issue. The only
11 thing I would like you to do is spend a few more minutes with
12 him to confirm his statements or his recounting of what
13 happened in this meeting with the Government. Was it strictly
14 that they asked him if he would be willing to cooperate
15 against Jones and what did he say and what did the Government
16 say? That's it.

17 MR. BRILEY: I can do that. Do you want me to do
18 that now or later?

(Tr. Dec. 5, 2007, morning session at 12:22 – 14:18).

    4.    At the Court's direction, Mr. Briley spoke further with Mr. Koonce and reported back as follows:

5 THE COURT: Okay. Mr. Briley, do you want to just
6 complete the circle here before --

7 MR. BRILEY: Yes, Your Honor. I have confirmed with
8 Mr. Koonce that his recollection of his meeting with Ms.
9 Lieber was that he was asked whether or not he had any
10 information about Mr. Jones and he denied that.

11 THE COURT: And as far as he's concerned, that was
12 the only part of it that was of any significance? That's it?

13 MR. BRILEY: Yeah, pretty much. Actually, he said
14 that, when he, after he indicated he wasn't in a position to
15 be helpful, he also indicated he wanted to terminate the

16 interview and the interview was terminated.

17 THE COURT: All right, Mr. Balarezo. Given that, I
18 don't believe I have any further inquiry to make of
19 Mr. Koonce. It wasn't until we had a full understanding of
20 what it was that the defendant wanted to do with Mr. Koonce.
21 But I've already ruled that he's not relevant to the affidavit
22 because the affidavit issue is not coming in.
23 And any conceivable relevance, and I couldn't well
24 have judged it until I heard what he might or might not have
25 to say, regarding Government interaction with Mr. Koonce is
1 not probative of any issue in this case. So, I'm going to
2 send him back. We have to get him out of this jurisdiction.
3 He is serving time some place else.

4 MR. BRILEY: Yes, he's down in Rivers.

5 THE COURT: Anything else, Mr. Lyons, Mr. Balarezo?

6 MR. BALAREZO: Your Honor, I accept the Court's
7 ruling. Mr. Jones is personally requesting that the Court
8 place Mr. Koonce on the stand and ask him the question
9 directly. I've explained to Mr. Jones that Mr. Briley is
10 speaking for him, and the Court has accepted that
11 representation.

12 THE COURT: Also, I would have to go through the
13 inquiry about Fifth Amendment. He doesn't have to answer my
14 questions either, because if he decides that he -- he's
15 subject to all kinds of questioning. So, Mr. Briley, you've
16 satisfied yourself that that's all there is about this
17 encounter between your client and the Government?

18 MR. BRILEY: Yes, Your Honor, I am.

19 THE COURT: I'm not going to question the lawyer.
20 That's the point of having a lawyer here. I don't see that I
21 need to bring him out here.
22 All right. Anything else?

23 MR. BALAREZO: No, Your Honor.

(Tr. Dec. 5, 2007, morning session at 18:5 – 19:23).

It appears from a review of the transcript that at no point did Mr. Briley explicitly indicate that

4

the government had not attempted to force Koonce into identifying Jones as his source. The Court rejected undersigned counsel's request to inquire directly of Koonce – a procedure it followed with other witnesses (Kevin Holland, Adrian Jackson and Michael Huggins).

5. On December 19, 2007, undersigned counsel obtained from Jones a letter dated December 15, 2007, purportedly from Koonce. (*See* Exh, 1). In an attempt to confirm the author of the letter, counsel reviewed Anthony Koonce's signatures on various documents related to Koonce's case. (*See* Exh. 2, Koonce Plea Letter; Exh. 3 – Koonce Trial Waiver; Exh. 4 – Koonce Indictment Waiver; and Exh. 5 – Koonce PSI Acknowledgment). In the letter, the author describes his understanding of the purpose of the December 5 hearing and what was told to him by Mr. Briley. Although the author does not specifically state whether or not the government in fact tried to force him to name Jones as a supplier, the author is explicit in stating that Koonce was prepared to waive his Fifth Amendment rights and that he was, and is, willing to testify on behalf of Jones. Finally, the content and tone of the letter evinces that there was some discrepancy between Koonce's understanding of the process versus what was detailed in open court.

6. Considering that the record appears to be incomplete on the issue of whether Koonce believes the government tried to force him to name Jones as a drug supplier, and the fact that Koonce appears to be willing to testify for Jones, Jones respectfully request that the Court *voir dire* Koonce directly on these issues.

**WHEREFORE**, for all the foregoing reasons, and any others that may appear to the Court, Jones respectfully requests that the Court reconsider its prior ruling.

Dated: Washington, DC
December 20, 2007

Respectfully submitted,

**LAW OFFICE OF A. EDUARDO BALAREZO**

By:      /s/
_____
A. Eduardo Balarezo (Bar # 462659)
400 Fifth Street, NW
Suite 300
Washington, DC  20001
(202) 639-0999

*Attorney for Defendant Antoine Jones*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 20th day of December 2007, I caused a true and correct copy of the foregoing Defendant Jones' Motion for Reconsideration of Ruling Denying Defendant's Request to Call Anthony Koonce as a Witness to be delivered to the parties in this matter via Electronic Case Filing (ECF).

/s/
_____
A. Eduardo Balarezo