**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v.    : | Case No. 05-CR-386(1) (ESH) |
| : | |
| ANTOINE JONES : | |

### DEFENDANT JONES' REPLY TO GOVERNMENT'S MEMORANDUM IN OPPOSITION TO GIVING OF MULTIPLE CONSPIRACY INSTRUCTION

Defendant Antoine Jones, by and through undersigned counsel, hereby respectfully submits this reply to the government's Memorandum in Opposition to the Giving Multiple Conspiracy Instruction and states as follows:

### FACTS

The government has charged Jones in a one count superseding indictment with participating in a narcotics conspiracy and has defined that conspiracy as:

**A. THE CONSPIRACY**

From at least sometime in 2003, the exact date being unknown to the Grand Jury, up to and including October 24, 2005, in the District of Columbia, the State of Maryland, the State of Texas, the State of North Carolina, and elsewhere, the defendants, **ANTOINE JONES (hereinafter "Jones"), LAWRENCE MAYNARD (hereinafter "Maynard"), KIRK CARTER (hereinafter "Carter"), FRANCISCO-JAVIER GONZALEZ-RUAN (hereinafter "Gonzalez-Ruan"), GUADALUPE BARRONE (hereinafter "Barrone"), JOSE GARCIA (hereinafter "Garcia"),** and **CARLOS REYNA (hereinafter "Reyna"),** did knowingly and willfully combine, conspire, confederate and agree together and with Roel Bermea (hereinafter "Bermea"), Alberto Rolando Carillo-Montelongo (hereinafter "Carillo-Montelongo), Ricardo Sanchez-Gonzalez (hereinafter "Sanchez-Gonzalez"), John Adams (hereinafter "Adams"), Demetris Johnson (hereinafter "Johnson"), Donald Hunter (hereinafter "Hunter"), and other persons both known to the grand jury (hereinafter individually referred to by the terms "unindicted co-conspirator-1," "unindicted co-conspirator-2," "unindicted co-conspirator-3," and "unindicted co-conspirator-4"), and unknown to the grand jury, to unlawfully, knowingly and intentionally distribute and possess with intent to distribute:

       a) a mixture and substance containing a detectable amount of cocaine, a schedule II narcotic drug controlled substance, and the amount of said mixture and substance was 5 kilograms or more, in violation of Title 21 United States Code, Sections 841(a)(1) and 841(b)(1)(A)(ii);

       b) a mixture and substance containing a detectable amount of cocaine base, in the form of "crack," a schedule II narcotic drug controlled substance, and the amount of said substance was 50 grams or more, in violation of Title 21, United State Code, sections 841(a)(1) and 841(b)(1)(A)(iii).

Thus, the government alleges that all these individuals conspired together in the manner indicated.

      At trial, government cooperator Roel Bermea testified that he was part of a group that shipped cocaine to Maryland to distribute to Jones. Bermea testified that during most of these trips an individual named "Pelos" assisted him with the transport and that the cocaine belonged to an individual named "Primo". On at least one of these trips, however, Bermea testified that he had a side deal with Pelos to distribute Pelos' cocaine. Bermea further testified that he kept the side deal with Pelos' secret from Primo. Finally, the government presented no evidence about the source of the cocaine sold by either Pelos or Primo.

## ARGUMENT

      The existence of a single conspiracy or multiple conspiracies is primarily a question of fact for the jury. *United States v. Tarantino*, 846 F.2d 1384, 1391 (D.C. Cir. 1988). The trial court is required to give a proper instruction, and to instruct on the defendant's theory of the case if supported by the evidence. *Id. citing United States v. Payne,* 805 F.2d 1062, 1067 (D.C. Cir. 1986). The court's discretion is limited to determining "whether there is *any* evidence to support the issuance of the [multiple

2

conspiracies] charge." *United States v. Harris,* 932 F.2d 1529, 1535 (5th Cir.), *cert. denied,* 502 U.S. 897 (1991).

In order to prove a variance between indictment and proof at trial, a defendant may establish that the evidence showed the existence of multiple conspiracies rather than the one conspiracy alleged in the indictment and that, because of the multiplicity of defendants and conspiracies, the jury was substantially likely to transfer evidence from one conspiracy to a defendant involved in another. *See Tarantino*, 846 F.2d at 1391.

The government's argument relies primarily on *United States v. Graham*, 83 F.3d 1466 (D.C. Cir. 1996). In *Graham*, the Court of Appeals affirmed defendants' convictions and held that they were not entitled to a multiple conspiracy instructions. Relevant to the argument, the Court of Appeals held that a single conspiracy existed because: a) there was one source of drug supply; b) although there existed three separate cliques, all appellants were part of the same clique; and c) all cliques shared the common goal of selling the one source's cocaine for profit. *See Graham*, 83 F. 3d at 1471.

The government argues that "[t]he evidence in this case to date shows that defendant Jones was at the center of all the charged charged [sic] conspiracy. He was both the primary recipient of the drugs supplied over time, essentially the same organization, and the distributor of the cocaine in the Washington, D.C. area." *Gov. Memo. at* 3. Additionally, the government argues that "[w]hile Bemea [*sic*] does describe some dealing by 'Pelos' behind 'Primo's' back, that is no different than the occasional competition between the various distribution groups in Graham." *Id.*

3

The government's argument misconstrues the evidence it presented at trial. The evidence is that although Bermea was working with a group that primarily distributed Primo's cocaine, on at least one occasion, Bermea cut a side deal with Pelos to distribute Pelos' cocaine to Jones. There was absolutely no evidence presented that the cocaine ultimately came from the same source. In fact, that possible assertion is belied by the fact that Bermea kept the side deal with Pelos secret from Primo – if the cocaine came from the same ultimate source, why would Bermea need to cut the side deal in the first place and why would he need to keep it from Primo?

Similarly, although Primo and Pelos may have been working together at some point as part of the same clique, the evidence shows that at some point, Pelos was no longer working with Primo when he cut the side deal with Bermea and that they were no longer working together as part of the same clique. Finally, because there is no evidence of the ultimate source of the cocaine, the government cannot argue that Primo, Pelos and Jones shared the same common goal of selling that one source's cocaine for profit.

Thus, the evidence shows that at least at one point during the charged conspiracy, Bermea was engaged in a separate conspiracy with Pelos and a separate source to distribute cocaine to Jones. Where there is evidence of a conspiracy separate from that charged in the indictment, the trial court commits reversible error in refusing to give a multiple conspiracy instruction. *See United States v. Stowell*, 947 F. 2d 1251, 1258 (5th Cir. 1991) (evidence supported argument of separate conspiracies to import and to possess with intent to distribute).

**WHEREFORE**, for all the foregoing reasons and any other that may become apparent to the Court, Jones respectfully requests that the Court instruct the jury on multiple conspiracies.

Dated: Washington, DC
January 1, 2008

Respectfully submitted,

**LAW OFFICE OF A. EDUARDO BALAREZO**

/s/

By: _____
A. Eduardo Balarezo (Bar # 462659)
400 Fifth Street, NW
Suite 300
Washington, DC  20001
(202) 639-0999

*Counsel for Antoine Jones*

5

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 1st day of January 2008, I caused a true and correct copy of the foregoing Defendant Jones' reply to the Government's Memorandum in Opposition to Giving of Multiple Conspiracy Instruction to be delivered to the parties in this matter via Electronic Case Filing (ECF).

      /s/
_____
A. Eduardo Balarezo