LEXSEE 221 F.2D 520



Caution
As of: Jan 03, 2008

**Andrew T. DURBIN, Appellant, v. UNITED STATES of America, Appellee**

**No. 11866**

**UNITED STATES COURT OF APPEALS DISTRICT OF COLUMBIA CIRCUIT**

*94 U.S. App. D.C. 415; 221 F.2d 520; 1954 U.S. App. LEXIS 3319*

**October 6, 1954, Argued**
**November 4, 1954, Decided**

**COUNSEL:** [**1] Mr. Rex K. Nelson, Washington, D.C., with whom Messrs. Eugene X. Murphy and James K. Hughes, Washington, D.C., were on the brief for appellant.

Mr. John D. Lane, Asst. U.S. Atty., Washington, D.C., with whom Messrs. Leo A. Rover, U.S. Atty., and William Hitz and Lewis A. Carroll, Asst. U.S. Attys., Washington, D.C., were on the brief for appellee. Mr. William J. Peck, Asst. U.S. Atty., Washington, D.C., at the time the appeal was docketed, also entered an appearance for appellee.

**JUDGES:** Before EDGERTON, WILBUR K. MILLER, and BAZELON, Circuit judges.

**OPINION BY:** BAZELON

**OPINION**

[*521] Appellant was convicted by the District Court, sitting without a jury, upon an indictment under *§ 1073 of Title 18 U.S.C.* That section provides in pertinent part:

'Whoever moves or travels in interstate or foreign commerce with intent * * * (2) to avoid giving testimony in any criminal proceedings in such place in which the commission of an offense punishable by imprisonment in a penitentiary is charged, shall be fined * * * or imprisoned * * *, or both. (June 25, 1948, ch. 645, § 1, 62 Stat. 755)'

The indictment alleges that appellant 'traveled in interstate commerce * * [**2] * with intent to avoid giving testimony before the grand jury in the United States District Court for the District of Columbia in a criminal proceeding entitled 'In Complaint Made by E. L. Wilkinson, For Possible Vio. *18 U.S.C. 371, 202, 872*' (relating to extortion and bribery) in which proceeding the commission of an offense punishable by imprisonment in a penitentiary was charged.' [1] The record does not disclose whether the grand jury proceeding referred to was instituted upon a formal written complaint, and, if it was, whether such complaint made sworn charges.

The primary question posed on this appeal is whether that complaint, which is merely described in the present indictment as 'Complaint * * * For Possible Vio(lations of laws),' may be construed as having 'charged' such violations within the meaning of *§ 1073.* We think no such construction is permitted by the language of this criminal statute which must be strictly construed. [2] Moreover, this view is fortified by the Supreme Court's definition of a criminal charge in United States v. Patterson. There, although not in connection with the statute we construe here, the Court said:

94 U.S. App. D.C. 415; 221 F.2d 520, *;
1954 U.S. App. LEXIS 3319, **

[**3] 'A criminal charge, strictly speaking, exists only when a formal written complaint has been made against the accused, and prosecution initiated. It is true the popular understanding of the term is 'accusation,' and it is freely used with reference to all accusations, whether oral, in the newspapers, or otherwise; but, in legal phraseology it is properly limited to such accusations as have taken shape in a prosecution. In the eyes of the law, a person is charged with crime only when he is called upon in a legal proceeding to answer to such a charge. Mere investigation by prosecuting officers, or even the inquiry and consideration by examining magistrates of the propriety of initiating a prosecution, do not, of themselves, create a criminal charge. * * *' 3

The only case cited by the Government to support its contrary view is clearly distinguishable. In that case, Hemans v. United States, the proceeding in question was instituted upon a warrant, which was issued by a judge acting as a one-man grand jury, and which 'charged the commission of a felony by the twenty-eight individuals named in it.' 4

Although our determination that the indictment is fatally defective [**4] is dispositive [*522] of this appeal, another matter disclosed by the record requires notice. This matter, which involves certain conduct of the United States Attorney's office, took place before the incumbency of the present United States Attorney.

On December 10, 1951, appellant received a subpoena to appear the following morning before the grand jury to testify concerning the matter of the Wilkinson complaint referred to above. At the direction of the Assistant United States Attorney, to whom appellant reported as requested in the subpoena, appellant appeared at the United States Attorney's office on December 10, 11, 12 and 17. Appellant was never taken before the grand jury, which recessed on December 18. Instead, appellant was taken each time to the office of the United States Attorney where he was questioned by the Assistant or agents of the F.B.I., or both. As a result of this questioning, he gave two written statements which they prepared. At the trial which culminated in the conviction now on appeal, the Assistant admitted that the reason he did not take appellant before the grand jury was because he was not satisfied with appellant's statement. 5 [**5] He also testified that he 'never gave (appellant) permission

to leave the city except if he should ask my permission to do so and obtain that permission * * *.' It is quite apparent that the Assistant thought the grand jury subpoena empowered him to restrain appellant's movements indefinitely, or at least until appellant made a statement which satisfied him; and this despite the fact that the grand jury recessed.

'The Constitution of the United States, the statutes, the traditions of our law, the deep rooted preferences of our people speak clearly. They recognize the primary and nearly exclusive role of the Grand Jury as the agency of compulsory disclosure.' 6 They do not recognize the United States Attorney's office as a proper substitute for the grand jury room and they do not recognize the use of a grand jury subpoena, a process of the District Court, as a compulsory administrative process of the United States Attorney's office. 7

It was clearly an improper use of the District Court's process for the Assistant United States Attorney to issue a grand jury subpoena for the purpose of conducting his own inquisition. Nor is such [**6] use excusable upon the mistaken notion that a member of the United States Attorney's staff has the duty to be satisfied with what the witness will tell the grand jury before he allows the witness to testify before it, and may therefore use the subpoena as an oppressive tool to achieve such satisfaction.

The present conviction is reversed and the case remanded to the District Court with directions to dismiss the indictment.

So ordered.

1.   We merely note in passing that no indictment based on any complaint by E. L. Wilkinson was ever returned.

2.   *United States v. Halseth, 1952, 342 U.S. 277, 280, 72 S.Ct. 275, 96 L.Ed. 308; France v. United States, 1897, 164 U.S. 676, 682-683, 17 S.Ct. 219, 41 L.Ed. 595.*

3.   1893, *150 U.S. 65, 68, 14 S.Ct. 20, 21, 37 L.Ed. 999.*

4.   6 Cir., 1947, *163 F.2d 228, 236.*

94 U.S. App. D.C. 415; 221 F.2d 520, *;
1954 U.S. App. LEXIS 3319, **

5.   'Q. The Grand Jury was in session during the course of these dates that you have testified, were they not?   A.   (Assistant United States Attorney) The Grand Jury was in session through the 18th of December.

'Q. And you didn't take him before the grand Jury? A.  Did not.

'Q. And the reason you didn't take him before the Grand Jury is that you were not satisfied with his statement, isn't that true? A.  That is correct.'

Appellant testified that when he reported to the Assistant United States Attorney on December 12, the Assistant 'said that he didn't want to use me as a witness at this time, (and directed) the two FBI agents, to take me to his office and see whether I had a better memory than the day or two before.'

[**7]

6.     *United States v. O'Connor, D.C.Mass. 1953, 118 F.Supp. 248, 250-251.*

7.     *In re National Window Glass Workers, D.C.N.D.Ohio 1922, 287 F. 219, 225.*