FILED

MAY 2 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v.                             ) | Crim. No. 05-0386-01 (ESH) |
| ) | |
| ANTOINE JONES , ) | |
| ) | |
| Defendant.         ) | |
| _____ ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW REGARDING FORFEITURE

The Court finds and concludes as follows:

1. The indictment in this matter, which charged the crime of conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine hydrochloride and fifty grams or more of cocaine base, also contained a forfeiture allegation seeking a money judgment in the amount of $1,000,000.00 pursuant to 21 U.S.C. § 853.

2. After trial by jury the defendant was convicted of the charged conspiracy.

3. The defendant waived trial by jury on the forfeiture allegation and agreed to have it resolved by the Court .

4. The Court applies a preponderance standard to its resolution of facts required to determine whether forfeiture is appropriate, and, if it is, the amount of the forfeiture to be ordered.  21 U.S.C. § 853(d); United States v. Pierre, 484 F.3d 75, 85 (1st Cir.) ("A forfeiture verdict must be supported by a preponderance of the evidence"), cert. denied, 128 S.Ct. 268 (2007); United States v. Elgersma,  971 F.2d. 690, 697 (11th Cir. 1992) ("we hold that section 853(a)(1) criminal forfeitures are governed by the preponderance of the evidence standard").

5. The amount forfeitable is an amount reflecting gross proceeds the drug conspirators gained during the defendant's participation in the conspiracy. United States v. Simmons, 154

F.3d 765, 770 (8th Cir. 1998) (For purposes of forfeiture under RICO "better view is the one that defines proceeds as the gross receipts of the illegal activity"); United States v. McHan, 101 F.3d 1027, 1042-43 (4th Cir. 1996) (under 21 U.S.C. 853 gross proceeds of a drug conspiracy are forfeitable); United States v. Harrison, 2001 WL 803695, *1 (N.D. Ill. 2001) (in forfeiture under 21 U.S.C. 853 court computed forfeiture amount by multiplying number of kilograms of cocaine involved in the conspiracy by the average price of the cocaine).

    6. The evidence at the trial in this case, as reflected in the verdict of the jury, demonstrated that the defendant was involved in a conspiracy to distribute and possess with the intent to distribute cocaine and cocaine base.

    7. Title III wire intercepts on the defendant's phone, a GPS location system placed on his vehicle, and surveillance showed that in September and October of 2005 the defendant was traveling to a home at 9508 Potomac Drive Ft. Washington, Md. to purchase multi-kilogram quantities of cocaine.

    8. A search of the Ft. Washington house on October 24, 2005, led to the discovery of almost 100 kilograms of cocaine, over one-half kilogram of cocaine base, and almost $1,000,000 in cash.

    9. The testimony of Roel Bermea, who was arrested at the Ft. Washington house, established that Bermea, starting in the fall of 2004, had personally been involved in several earlier trips to the Washington D.C. area and one to Atlanta, Georgia to supply defendant Jones with cocaine.

    10. Bermea's testimony established that each of these trips involved approximately 100 kilograms of cocaine for which defendant Jones would pay from between 18 and 20 thousand dollars per kilogram.

11. In addition to the evidence discussed in ¶ 7 above, Bermea's testimony was corroborated by "owe sheets" and records concerning the rental of a house in Atlanta, all found at the Ft. Washington location, hotel records and a speeding ticket linking defendant Jones and a co-conspirator, Lawrence Maynard to trips to the Atlanta area, the seizure in North Carolina of approximately $67,000 in cash from a hidden compartment in Jones' van being driven by Maynard, and the analysis of phone records linking Jones' and Maynards' phones to phones used by members of the Mexico based organization which supplied Jones with cocaine.

12. Evidence from the "ICE" investigation, which was conducted independently of the FBI Safe Streets Task investigation which led the defendant's arrest, showed that by at least early 2004 the defendant was involved in finding "stash" locations in the Washington Metropolitan area for members of the Mexico based organization which supplied him with cocaine.

13. The Title III wire intecept, in conjunction with the GPS system placed on the defendant's vehicle, and physical surveillance, established that the defendant was supplying a number of customers in the Washington area with cocaine.

14. Several of Jones's customers testified that they received up to kilogram quantities of cocaine from the defendant on a number of occasions.

15. The defendant's customers testified that they were paying in the area of $20,000 per kilogram of cocaine supplied by Jones.

16. The Court therefore finds to at least a preponderance of the evidence that, even excluding the cocaine whose purchase or intended purchase may be reflected in the cash seized at the Fort Washington house and from the defendant's van in North Carolina, the defendant purchased and then redistributed far in excess of 200 kilograms of cocaine at an average price of

at least $18,000 per kilogram, and that the proceeds of the conspiracy to distribute cocaine have largely been dissipated by the co-conspirators, including defendant Jones.

17. The Court therefore finds that a forfeiture of $1,000,000 as sought in the forfeiture allegation of the indictment is appropriate.

The Court will enter a separate order of forfeiture.

_____
ELLEN SEGAL HUVELLE
UNITED STATES DISTRICT JUDGE

5/2/08