1

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


United States of America          Docket No. CR 05-0386 ESH

                                  Washington, D.C.
        vs.                       Friday, April 21, 2006
                                  3:03 p.m.
Antoine Jones          01

            Defendant


                Transcript of Detention Hearing
          Before the Honorable Ellen Segal Huvelle
                United States District Judge



APPEARANCES:

For the Government:       Rachel Lieber, Esq.
                          John Geise, Esq.

For the Defendants:       Eduardo Balarezo, Esq.




Reporter:                 WILLIAM D. MC ALLISTER, CVR-CM
                          Court Reporter
                          (301) 520-1000



Reported by Voice Writing and transcribed using SpeechCAT


Pages 1 through 10

2

1                    P R O C E E D I N G S

2          (Defendant present.)

3               THE CLERK:  Criminal Action 05-386.  United States of

4     America versus Antoine Jones, et al.

5               We have Rachel Lieber and John Geise for the

6     government.

7               Mr. Eduardo Balarezo, representing Mr. Jones.

8               THE COURT:  Mr. Balarezo, I've been in a contact with

9     Karen Brown, and here are your client's options, so to speak.

10    Either Central Virginia Orange or Northern Neck.

11              I have been informed by Ms. Brown that the following

12    conditions are workable.  He can stay where he is and they

13    monitor his -- let me make sure I get this right.  They do this

14    anyway.  His phone calls, they are all recorded.  Everybody's are

15    so he wouldn't be getting any special treatment.

16              They would monitor his mail except for lawyers,

17    investigators.  And I'm cutting out social visits.  Obviously

18    he's always free to meet with his lawyer or investigator but all

19    other freedoms will be retained.  He just not having social

20    visits.

21              So you can talk to me about it.  I have been concerned

22    about what goes on but I'm also willing to realize that I'm not

23    going to have him on 23-hour lockdown until this trial is over.

24              So those are the choices; and if you make it too

25    difficult, I'll deny your motion.  I have worked really hard, and

1    they say that there are communications.

2            He will be able to go to library.  He will be able to

3    get in the prison block.  I'm not taking the risk of social

4    visits other than lawyers and investigators obviously; and I'm

5    not taking the risk of, they will be under orders to open the

6    mail other than from you; and they record his phone conversations

7    anyway so anybody can listen to him whenever they want.  That's

8    true of everybody.

9            MR. BALAREZO:  Your Honor, I understand that the court

10   has presented that as what his choices are now, but we would like

11   to address basically the issues as to what brought us to Mr.

12   Jones having to make this choice about where he was to go.

13           THE COURT:  He doesn't have the choice.  I don't want

14   to misrepresented exactly, and I don't know that there's any

15   place for him at CTF for obvious reasons.

16           MR. BALAREZO:  What I'm saying, Your Honor, we know

17   obviously that the government has made a proffer to the court ex

18   parte about certain issues that the court has now taken into

19   consideration in reaching this plan.  However my client is really

20   adamant about putting before the court certain information that I

21   don't think the court has had and has not been able to take into

22   account.

23           THE COURT:  You gave me this.

24           MR. BALAREZO:  I have, Your Honor; but since the last

25   hearing, we have had the opportunity to speak and get affidavits

1    from individuals who are I believe involved, and I say "I

2    believe" because I don't know what it is that the government told

3    you; and these are people who were the recipients of letters, who

4    were the transmitters of letters, people who passed them --

5              THE COURT:  I can't take evidence this afternoon.

6              MR. BALAREZO:  I understand that, Your Honor, but again

7    my client is adamant about this.  We would like to schedule a

8    hearing for those purposes so the court can reconsider its

9    decision.

10             THE COURT:  Here are your choices, sir.  You can

11   discuss it.  I am about to start an evidentiary hearing that will

12   go to five weeks.  The first time I can talk to you is in June.

13   If he would like to have the conditions modified according to my

14   thoughts, fine.  If not, I will schedule it in June.

15             MR. BALAREZO:  Given that, I don't think my client

16   wishes to continue where he is.  We would not wish him to stay in

17   the District for obvious reasons.  I think he would accept these

18   conditions but we still would like the opportunity to present to

19   the court.

20             THE COURT:  The only thing that you would be arguing to

21   me about really that would put him in a situation, the only thing

22   on his limitations are social visits.  I have knocked myself out;

23   and if you think I'm going to move off that over this issue, I've

24   got to advise you you're pushing the envelope a little.

25             MR. BALAREZO:  Let me push it just a little bit, Your

1    Honor.  I understand the social visits.  Would the court at least

2    allow social visits from his wife and son?  This is family.

3              THE COURT:  How old is his son?

4              MR. BALAREZO:  He is in the audience.  I don't think --

5    you know, they monitor the conversations through the phones.

6              THE COURT:  No, they don't.  That's the problem.

7              MR. GEISE:  There is the problem.

8              THE COURT:  That is the problem.  I don't know.

9              MR. BALAREZO:  I've always been told that they do

10   because they have to talk to each other on the telephone.

11             THE COURT:  I asked and they said they don't.  They

12   don't.  They know who the people are.  But they don't.

13             MR. BALAREZO:  Your Honor, let me suggest this.  In

14   each of the visiting halls, there are three cages where they put

15   status inmates.  If necessary, if he gets one visit a week from

16   his wife, I don't think he'll mind if there is a CO sitting

17   there.  They're in the hall anyway.  They can listen to what he's

18   saying.

19             THE COURT:  We can go back and ask.  I am not

20   interested in preventing him from seeing his wife.  I'm

21   interested in making sure we don't have information going out to

22   his people on the street.  This is the way I did it.

23             I'll be happy to hear from his wife sometime but I

24   don't believe that you are right about that.  I had the Marshal

25   Service quiz the jail.  We can go back.  You can talk to Ms.

1    Karen Brown and ask her exactly what can be done vis-…-vis social

2    visits, besides learning that I can limit the people.  I know

3    that.  I can say he can only see you, your investigator and his

4    wife, and his wife can come once a week.  But I want to know

5    whether they can listen to that conversation.

6             In the meantime I am unwilling -- if you give it to me,

7    to sign an order to say he is not to be locked down.  I got to

8    tell you.  I'm getting worn out.  I can send him to Orange.  I've

9    had plenty people go to Orange.  So I don't know why I have

10   knocked myself out here.

11            MR. BALAREZO:  We appreciate the court's efforts, Your

12   Honor.

13            THE COURT:  I'm not sure you understand that at all.

14   And I'll do an order saying his incoming mail is monitored.  His

15   phone conversations are recorded, and that at this moment he is

16   not having any social visits.  Of course he can communicate

17   freely with his counsel and his investigator, and he will be in

18   the prison population like everybody else otherwise.  It seems to

19   me that will at least take care of our main concerns.

20            MR. BALAREZO:  Could I have one second, Your Honor?

21            THE COURT:  Yes.  Keep complaining and I'll think of

22   something else.

23       (Pause.)

24            MR. BALAREZO:  Your Honor, that is acceptable to Mr.

25   Jones.  We'll try to investigate the issue of visits with his

1    wife.

2            THE COURT:  All right.  You look into it.  But one

3    critical visitor.  But I don't want to engage in seeing the kinds

4    of communications I saw before.  That is for sure.

5            MR. BALAREZO:  Your Honor, at the risk of pushing too

6    much and incurring the court's wrath --

7            THE COURT:  Too late.

8            (Laughter.)

9            THE COURT:  What?

10           MR. BALAREZO:  The issue of discovery and again since

11   Mr. Jones is the target of this investigation --

12           THE COURT:  He sure is.

13           MR. BALAREZO:  His phone is the one that was tapped.

14   All the calls were made to him.  I think twenty some videos.

15           THE COURT:  What are you asking me?  I understand his

16   role.

17           MR. BALAREZO:  I'm asking if it's possible for Mr.

18   Jones to have a copy or I can give him my copy of discovery so

19   that he can have access to it in the jail.  All it is is a TV and

20   VCR for looking at camera videos or listening to wiretaps because

21   ultimately I probably will have reviewed the bulk of the calls

22   because they do pertain to him.

23           THE COURT:  How many copies of videos and audio do you

24   have?

25           MR. GEISE:  Your Honor, the defense attorney has a full

1    copy of the wiretap.

2            THE COURT:  Well, give it to him.

3            MR. BALAREZO:  I can do that but he can't do anything

4    without a computer at the jail.  I can take in my laptop.

5            THE COURT:  I don't give them computers.  What are you

6    talking about, what are you asking me?

7            MR. BALAREZO:  I'm asking that the court direct the

8    jail to allow him access to a computer so that he can insert the

9    disk and listen to the audio.

10           THE COURT:  You can work it out with them.  I'll sign

11   whatever ordered they need.  You misunderstand.  I don't run the

12   jail.

13           MR. GEISE:  That is my point, Your Honor.  Obviously if

14   the marshals and the jail are content with what the court signs,

15   the government is.

16           THE COURT:  If they can do it and you need an order, I

17   have no objection to him listening to audios until the cows come

18   home.  But I don't provide those kinds of things over there.  I'm

19   not responsible for the food either.  Talk to your client.

20           MR. BALAREZO:  I understand.

21           THE COURT:  Mr. Geise, we've got to get this going.

22   The only way we're going to get results is for them to know you

23   mean business.

24           MR. GEISE:  Yes, Your Honor.

25           MR. BALAREZO:  The defendant would like to speak, Your

1    Honor.  Again this is against the advice of counsel.

2            THE COURT:  Anything you say, sir, can be used against

3    you.  You understand that?

4            THE DEFENDANT:  I understand what just went down but my

5    thing is I'm requesting a full investigation or dismissal from

6    this matter of obstruction of justice because this is what it

7    seemed like it started off with and on grounds of prosecutor

8    misconduct, spying on the defense, selective prosecution,

9    prejudice from the prosecution, illegal searches and seizures on

10   my cell, vindictive prosecution, and slander and fabrication from

11   the prosecution and law enforcement.

12            I feel like that I'm not getting a fair trial here

13   because one thing I am trying to prepare for my trial but I'm

14   getting accusations from the prosecution and law enforcement.  I

15   got evidence and witnesses that said that the law enforcement

16   started rumors about levels, people trying to get somebody.  I'm

17   minding my business and all of a sudden I get locked down 22

18   hours.

19            THE COURT:  Sir, I am now taking you out of lockdown.

20   Everything has been given back to you.  The only thing that will

21   happen to you that is different from anybody else, at this moment

22   I'm not permitting social visits until we figured this out.

23            You will be able to prepare.  You will either get the

24   same computer access other people have, and I'm not doing

25   anything further at this moment.  Otherwise you can go to Orange

10

1   and you will have a library all the time.  But you don't want to

2   be in Orange.

3          THE DEFENDANT:  I'm not talking about library.  I'm

4   talking about investigation from the courts, from the courts on

5   this prosecution misconduct.  That's what am asking for.

6          THE COURT:  All right.  You will get a fair trial and

7   you will be tried.

8      (Proceedings concluded at 3:20 p.m.)

9                    CERTIFICATE OF REPORTER

10         I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT

11  FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

12

13

14  WILLIAM D. MCALLISTER

15  COURT REPORTER

16

17

18

19

20

21

22