CLERK of the COURT for  
UNITED STATES DISTRICT COURT  
For the DISTRICT OF COLUMBIA

Copies to: Judge  
AUSA - Special Proceedings  
Dft.

*[handwritten notations]*

United States of America  
    Appellee

-V-                              Criminal ~~Civil~~ Action No. 05-386 ESH

Antoine Jones  
18600-016  
US Penitentiary PO Box 7000  
Florence CO 81226-7000  
    Defendant - Appellant

**FILED**  
DEC 03 2010  
Clerk, U.S District & Bankruptcy  
Courts for the District of Columbia


Motion for Leave to File Motion *pro se* by Plaintiff

for Release Bond or Home Confinement, Pending Government Appeal


COVER PAGE


1 |

Now comes Antoine Jones *pro se*, defendant – appellant in the above caption motion request pursuant to *18 U.S.C. §§3143(B)(1)(B) and 3145 (C)*, that this honorable court grant the requested relief pending appeal. Section *§3143(B)* of *Title 18* governs motions to release a defendant pending appeals: the Judicial Officer shall order that a person who has been found guilty of an offense . . . be detained, unless the Judicial Officer finds (A) . . . that the person is not likely to flee or pose a danger to the . . . community . . . and (B) that the appeal is not for the purpose of delay and raises a substantial question of law or facts **likely to result in . . . "reversal". (In this case a reversal of Jones' conviction.)**

## Plea for Liberal Construction

Appellant requests this Honorable Court construe his *pro se* Pleading in accordance with <u>Haines v. Kerner</u>, *404 U.S. 519 (1972)*. The allegations in the *pro se* petition are held to less stringent standards than formal pleadings drafted by attorneys.

## Burden of Proof

Under criteria established by Bail Reform Act of 1984 *(1805 CS §3143)*, defendant has burden of proving if he seeks bail pending appeal, and court must find that (1) defendant is not likely to flee or pose danger to safety of any other person or community if released, (2) appeal is not for purpose of delay, (3) that appeal raises substantial question of law or fact, and (4) that if substantial question is determined favorably to defendant on appeal, decision is likely to result in **"reversal"** or order for new trial of all counts on which imprisonment has been imposed. *United States v Miller*

2 |

*(1985 CA3 PA), 753f. 2D 19* (questioned in criticized in *United States v Fenwick (2007, ND Fla) 2007 UD Dist lexis 94793).*

If defendant seeking release on bail pending appeal satisfies substantial question test, defendant must then show that substantial question sought to be presented is so integral to merit of conviction that it is more probable than not that reversal or new trial will occur if question is decided in defendant's favor, court or judge to whom application for bail is made must assume that substantial question presented will go other way on appeal and then assess impact of assumed error on conviction, *United States v Powell (1985, (AB) 761 f. 2D 1227, 79 ALR Fed 649).*

Standard in comprehensive crime control act of 1984 for bond pending appeal substantially increases defendant's burden from former "frivolous" standard to requirement of likelihood of reversal, [that is greater than 50 percent chance of reversal], or substantial chance of reversal, or at least substantial question of law or facts previously foreclosed on appeal *(United States v. Cirrico).*

<u>Release or detention Pending Appeal by the Government</u>

The Judicial Officer shall treat a defendant in a case in which an appeal has been taken by the United States under *Section 3731* of this title *[18 U.S.C.S. §3731]*, in accordance with *Section 3142,* unless the defendant is otherwise subject to release or detention order.  Except as provided in subsection (B) of this section, the Judicial Officer, in a case in which an appeal has been taken by the United States under *Section 3742 [18*

*U.S.C.S. §3742*], shall (1) if the person has been sentenced to a term of imprisonment, order that person detained and (2) in any other circumstance, "release" or detain the person under *Section 18 U.S.C.S. §3142*.

### Bail Pending Appeal

With regard to bail pending appeal, Justice Douglas observed in *Herzog v. United States,* 75 S.Ct 349, 351 (1955): "Bail is basic to our system of law, doubts of whether it should be granted or denied should always be resolved in favor of the defendant.

### Alternate Confinement

Appellant has been incarcerated for five years, (six co-defendants have been released, three on acquittal and three who have completed their time, and Lawrence Maynard (co-defendant) is confined in a Federal Camp (pending appeal) without incident or threat to the community or witness). Appellant's presence in the community will pose no danger to the safety of the individuals who testified in this case, or to the community. Note, Mr. Donald Hunter and Mr. Demetris Johnson have maintained friendships with appellant's family noting the trial is over and communications have remained amicable.

There is no risk or danger of flight, as appellant has been financially broken, credit ruined, passport expired. Appellant has no history of violence, no close ties to co-defendants and the government has address and telephone numbers to all close family and friends through the B.O.P. phone, mail, and email systems.

4 |

The appellant is humbly requesting Home Confinement, so appellant can secure employment to help support his family both emotionally and financially.

If not possible right away, appellant will respectfully submit to alternative confinement:

1. GPS ankle bracelet (home confinement)
2. 24 hours home confinement
3. Halfway House
4. Community work detail from DC Jail
5. Home confinement submit to routine drug testing
6. Home confinement report to (government official) routinely, etc.

Appellant is willing to submit to stipulations placed by the courts for bond or home confinement.

### Appeals Court Argument

The Court of Appeals, has reversed appellant's conviction with a strong argument because the conviction was obtained in violation of the 4th Amendment.

The honorable judges' opinion reads: "The evidence linking Jones to that conspiracy was not strong, let alone overwhelming."

5 |

The government point to no evidence of a drug transaction in which Jones was involved, nor any evidence that Jones ever possessed any drugs.

Further down it reads: the GPS data were essential to the Government's case by combining them with Jones's cell-phone records, the Government was able to paint a picture of Jones's movements that made credible the allegation tht he was involved in drug trafficking.

### Fruit of the poisonous Tree

This illegal, warrantless GPS data was "monitored inside Potomac Drive Garage" (surveillance tapes confirm that) and tainted the indictment, when this illegal GPS data was used in the indictment and this illegal information was forwarded to the jury to view.

### Indictment – Overt Acts

#63. On September 27, 2005, at "9:50 p.m." Jones "arrived at the Potomac Drive" house to deliver cocaine proceeds and to discuss the timing of the next shipment of cocaine, departing the house "approximately one hour later".

#75. On September 28, 2005, at "8:12 p.m." Jones arrived at the house of convicted co-conspirator-2, to collect cocaine proceeds to deliver to Reyna, Bermea and others and remained for "20 minutes".

#76. On September 28, 2005, at "8:32 p.m." Jones arrived at Adams' house, a few blocks from the house of co-conspirator-2, to collect proceeds to deliver to Reyna, Bermea and others, and "remained for 20 minutes".

6 |

#78. On September 28, 2005, at "9:35 p.m." Jones arrived at the "Potomac Drive" house to deliver cocaine proceeds to Reyna, Bermea and others, and to collect more cocaine, "departing at 10:15 p.m."

#96. On October 11, 2005, at approximately "9:45 a.m." Jones arrived at the "Potomac Drive" house where he dropped off cash, and collected, and "departed approximately 11:41 a.m."

#108. On October 14, 2005, at approximately "7:03 a.m." Jones arrived at the "Potomac Drive" house to drop off cash and collect cocaine, and "remained until 8:16 a.m."

#113. On October 14, 2005, at approximately "9:21 a.m." Jones went to Adams' house to drop off drugs.

#115. On October 14, 2005, at approximately "10:23 a.m." Jones went to unindicted co-conspirator-2's house for the purpose of cocaine transaction.

#116. On October 14, 2005, at approximately "10:30 a.m." Jones met with Johnson at the circle on Branch Avenue in Temple Hills, Maryland for the purpose of a cocaine transaction.

#117. On October 14, 2005, at approximately "10:45 a.m." Jones met with unindicted co-conspirator-3 for the purpose of a cocaine transaction.

#131. On Thursday, October 20, 2005, at approximately "6:25 p.m." Jones visited the "Potomac Drive" house for approximately "1 hour and 20 minutes."

The illegal GPS data tainted the indictment and once this warrantless GPS was "concealed from public view" from the public in the "Potomac Drive Garage" it's an

7 |

illegal search and the evidence and information should be suppressed citing *United States v Karo)*.

## CONCLUSION

Appellant has overcome the burden of *(18 USC §3143)* and is seeking bail or alternative confinement, pending the government's appeal.

Respectfully submitted,

Signed:                                                          Date:

*[signature]*                                                    11-95-2010

Antoine Jones

18600-016
USP Florence
P.O. Box 7000
Florence, CO  81226