# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | **:** | |
| | **:** | |
| **v.** | **:** | **Case No. 05-CR-386(1) (ESH)** |
| | **:** | |
| **ANTOINE JONES,** | **:** | |
| | **:** | |
| *Defendant.* | **:** | |

### DEFENDANT'S MOTION TO RECONSIDER MOTION TO SUPPRESS EVIDENCE SEIZED FROM 10870 MOORE STREET WALDORF, MD

Defendant Antoine Jones ("Jones"), by and through undersigned counsel, respectfully moves this Honorable Court pursuant to Federal Criminal Rule of Criminal Procedure 12, 41, 47, 18 U.S.C. § 2234 and the Fourth Amendments and the Due Process Clause of the United States Constitution, to reconsider its denial of Jones' previously filed Motion to Suppress Evidence Seized from 10870 Moore Street, Waldorf, MD.  In support thereof Jones states the following:

### FACTS

Jones has been charged in a Superseding Indictment with Conspiracy to Distribute and Possess with Intent to Distribute Five Kilograms or More of Cocaine and Fifty Grams or More of Cocaine Base.  The government alleges that Jones was part of a narcotics conspiracy from at least 2003 until October 24, 2005, which spanned from the District of Columbia, Maryland, Texas, North Carolina and elsewhere.  In particular, the government alleges that Jones was the primary supplier of cocaine to members of the organization in the District of Columbia and Maryland.

On October 22, 2005, Magistrate Judge Charles B. Day of the District of
Maryland issued a search warrant for Jones' home located at 10870 Moore Street, Waldorf,
Maryland. The application for a search warrant was supported by an affidavit sworn to by FBI
Agent Stephanie Yanta.  (*See* Exh. 1 – Yanta Affidavit for search warrant).  Magistrate Day
authorized a search of the Moore Street residence on or before October 31, 2005, during the
hours of 6:00 am and 10:00 pm.  The warrant authorized the seizure of items listed in
"Attachment A" [1] to the warrant and directed agents to leave a copy of the warrant at the
residence.

On October 24, 2005, at approximately 4:45 a.m., FBI agents raided Jones' Moore
Street residence and arrested Jones.  During the search of Jones' residence, agents exceeded their
authority by entering before 6:00 a.m. as required by the warrant, seizing a large quantity of
evidence that was not authorized by the warrant, failing to produce a copy of the warrant even
though both Jones and his wife repeatedly requested it and forging Jones' signature on a consent
form to search a Jeep vehicle that was not covered by the warrant.  Therefore, any and all
evidence seized at the Moore Street residence and its garage must be suppressed.

Jones initially filed his motion to suppress the fruits of the Moore Street search
within an omnibus defense motion filed on July 12, 2006 (Docket No. 144).  The Court denied
the motion via memorandum order dated August 10, 2006 (Docket No. 172).  Jones now asks the
Court to reconsider its denial of his motion based on the newly filed declarations of Jones,
Deniece Jones and Antoine Jones, Jr.  The Court has noted that the law of the case my bar the
relitigation of this motion.  However, the term "law of the case" merely expresses the practice of
courts generally to refuse to reopen what has been decided, not a limit to their power. *See*

---

[1] *See* Exh. 2 (Moore Street Search Warrant).  Six years later, the government still has not produced "attachment A"
to the warrant.  In the event that "attachment A" does not exist, Jones reserves the right to move to suppress
evidence from the search on those grounds.

*Missenger v. Anderson*, 225 U.S. 436 (1912).  Unlike *res judicata*, the practice of law of the case does not compel rigid adherence to the prior decision "because when a court becomes convinced that its declared law of the case is erroneous and would work a grave injustice, it should have the power to apply a different rule of law in the interest of getting the very case before it settled in a just manner." 1B Moore, Federal Practice P0.404 (1), p. 405 (2d ed. 1965).  Moreover, the practice only "applies to principles of law" enunciated by the court, 1B Moore, supra, P0.404(1), at p. 402, and does not bar consideration of the prior decision in the light of new evidence. *Cf. Gouled v. United States*, 255 U.S. 298, 312-313 (1921); *Anderson v. United States*, 352 F.2d 945 (DC Cir. 1965).  "In any new trial, the 'practice' of the law of the case would not operate to bar consideration of the admissibility of [new evidence] based upon material facts not heretofore adduced or supervening law." *United States v. Naples*, 359 F.2d 276, 278 (DC Cir. 1978).

## ARGUMENT

The Fourth Amendment protects citizens against unreasonable searches and seizures and mandates that warrants should issue only upon a showing of probable cause and that the warrant must describe with particularity the place to be searched and the things to be seized. *See* U.S. Const. amend. iv. Fed. R. Crim. P. 41(c) states in relevant part that warrants may be issued for "evidence of crime; contraband, fruits of crime, illegally possessed items; or property designed for use, intended for use, or used in committing a crime.  Title 18 United States Code Section 2234 states that it is a criminal offense for a person to willfully exceed his authority or to exercise that authority with unnecessary severity.

### A.   Agents exceeded their authority by entering the Moore Street residence prior to 6:00 am

Magistrate Day authorized agents to execute the warrant between the hours of 6:00 am and 10:00 pm.  Agent Steve Naugle, the team leader for the Moore Street search,

testified at trial that agents entered the residence "sometime after 6:00 am" (Tr. 1 Trans. Nov. 6, 2006 pm at 96:25 – 97:3).  Agent Naugle further testified that the agents "knocked and announced" and that the front door to Moore Street was unlocked and open when agents made entry.  (Tr. 1 Trans. Nov. 6, 2006 pm at 97:6 – 17).  The attached affidavits from Jones, Deniece Jones and Antoine Jones Jr. demonstrate that the agents entered the Moore Street house long before 6:00 am in violation of the warrant and § 2234.

In his declaration made under penalty of perjury, Jones states that the front door to Moore Street was locked and that agents entered his home before 5:00 am.  He knows the time because his son's, Antoine Jr.'s, alarm went off after the agents entered.  The alarm was set to sound at 5:00 am because Antoine Jr. was attending Coppin State University in Baltimore and regularly woke up at 5:00 am to leave the house by 6:00 am in order to get to an 8:00 am class. (*See* Jones Decl., Exh. 3).

Jones' wife, Deniece Jones, states in her declaration made under penalty of perjury that when she heard what appeared to be someone breaking into her home, she reached for the telephone to call 911 and noticed her bedside clock to read 4:45 am.  (*See* Deniece Jones Decl., Exh. 4).  Additionally, she is further certain that agents entered before 6:00 am because Jones had told her that night that he needed to be at Levels Nightclub at 6:00 am to perform a final walkthrough with the individual who was purchasing Levels from Jones.  Finally, Deniece Jones states that after agents entered her house, a television in the hallway went on because she had set the TV's alarm to sound so to awaken her so she could see her son off to school between 5:45 and 6:00 am.  (*Id.*)

Finally, Antoine Jr. states in his declaration made under penalty of perjury, that he on October 24, 2005, he was awakened before 5:00 am because he his alarm clock had not gone

off yet.  Antoine Jr. states that he knows it was before 5:00 am because after the agents entered

the house and were in his room, his alarm clock went off.  (*See* Antoine Jones Jr. Decl., Exh. 5).

### B.    Agents exceeded their authority by seizing dozens of boxes of personal documents that had no relation to the charged offenses

The government has never provided the defense with "Attachment A" to the

search warrant.  Presumably, however, the Attachment A for the Moore Street search warrant

was similar, if not identical, to that used in the search of other locales.  Attachment A to the

Levels Nightclub search warrant (*See* Exh. 6), allows for the seizure of, *inter alia*, drugs, indicia

of drug trafficking, evidence relating to the transportation ordering, purchasing and distribution,

records evidencing the obtaining, secreting, transfer or concealment of assets, proceeds of

narcotics violations, devices used to store and count money.  During the search of the Moore

Street residence, agents conducted a wholesale and unrestrained

### C.    Agents did not present a copy of the warrant to Jones

Rule 41(f) mandates that the "officer executing the warrant must . . . give a copy

of the warrant and a receipt for the property taken to the person from whom, or from whose

premises, the property was taken, or . . . leave a copy of the warrant and receipt at the place

where the officer took the property."   Rule 41(f) must be interpreted in the light of the important

policies underlying the warrant requirement-to provide the property owner assurance and notice

during the search. The Supreme Court has repeatedly held that an essential function of the

warrant is to "assure[ ] the individual whose property is searched or seized of the lawful

authority of the executing officer, his need to search, and the limits of his power to search."

United States v. Chadwick, 433 U.S. 1, 9 (1977), *abrogated on other grounds, California v.

Acevedo*, 500 U.S. 565 (1991). *See also Michigan v. Tyler*, 436 U.S. 499 (1978) ("a major

function of the warrant is to provide the property owner with sufficient information to reassure

him of the entry's legality"); *United States v. Martinez-Fuerte*, 428 U.S. 543 (1976) (Without a

warrant the occupant has "no way of knowing the lawful limits of the inspector's power to

search, and no way of knowing whether the inspector himself is acting under proper

authorization.") (quoting *Camara v. Municipal Court*, 387 U.S. 523, 532 (1967)).

   The Court's denial of Jones' initial motion to suppress evidence seized at Moore

Street, states that:

> Jones' claim is belied, however, by the unrebutted fact that the returned copy of
> the warrant notes that a "copy of warrant and receipt for items" was left with
> Deniece Jones, defendant's wife. (Def.'s Omnibus Mot. Ex. 2 at 53.) Deniece
> Jones' signature is affixed to each page of a five-page receipt for goods taken
> during the search. (*Id*. at 54-58.)  Therefore, at the very least, Jones was provided
> with a copy of the warrant and a receipt at the conclusion of the search.

(Order Doc. No. 172 at 25).   At no point did agents present Jones, his wife or their son a

copy of the warrant with attachment to inform them of the scope of the warrant, nor did

they leave a copy on the premises.  (*See* Jones Decl.; Deniece Jones Decl.; Antoine Jones,

Jr. Decl.).  In fact, a photograph taken after the search and provided in discovery by the

government clearly shows that the agents left only an inventory sheet and the warrant

*return* on a table at Moore Street.[2]

---

[2] Notably, photographs taken at other related search sites demonstrate that the warrant itself was presented in those
searches



Deniece Jones may have signed the inventory sheets (*See* Exh. 7 – Inventory Sheets), but contrary to the mandates of Rule 41(f), a warrant was never presented.

This failure to provide a copy of the warrant with attachment merits suppression of any evidence recovered as result. *See United States v. Gantt*, 194 F.3d 987 (9th Cir. 1999). For these reasons, Jones respectfully moves the honorable Court to suppress as evidence at trial in this case all evidence obtained as a result of the search of 10870 Moore Street, Waldorf, Maryland, including items recovered from the garage and the Jeep Cherokee in the garage.

> **D.   Agents forged Jones' signature on a consent-to-search form for the Jeep Cherokee in the garage**

In his initial motion, Jones claimed that the he had involuntarily signed the consent form for the Jeep Cherokee in his garage. (Mot. Doc. 144 at 15; Exh. 8 – Jeep Consent Form). After much reflection on the events of the night of his arrest, Jones maintains that he never signed the consent form, but rather that the consent form was forged by agents in their

haste to search the Jeep.  The Court has ruled that the issue of whether or not the consent was

valid is moot because "because the officers did not need to rely on his consent to search the Jeep;

the search of the vehicle was authorized by the original search warrant."  (Order, Doc. No. 172 at

26).  To the extent the Court reconsiders its denial of Jones' motion and suppresses the fruits of

the Moore Street residence, Jones preserves his argument that the consent for the Jeep was not

valid because he did not sign the consent form.

        **WHEREFORE**, for the foregoing reasons and any others that may become

apparent to the Court, Mr. Jones respectfully requests that this Motion be **GRANTED**.

Dated:      Washington, DC
           May 22, 2012          Respectfully submitted,

                    **BALAREZO LAW**

                       /s/

        By: _____
           A. Eduardo Balarezo, Esq.
           D.C. Bar # 462659
           400 Fifth Street, NW; Suite 300
           Washington, DC  20001
           (202) 639-0999

           *Counsel for Antoine Jones*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 22nd day of May 2012, I caused a true and correct copy of the foregoing Defendant's Motion to Reconsider Motion to Suppress Evidence Seized from 10870 Moore Street, Waldorf, MD and Memorandum of Points and Authorities in Support Thereof to be delivered to the parties in this matter via Electronic Case Filing (ECF).

/s/

_____

A. Eduardo Balarezo, Esq.