UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 05-386(1) (ESH) |
| | : | |
| ANTOINE JONES | : | |

**DEFENDANT'S MOTION TO RECONSIDER MOTION TO SUPPRESS EVIDENCE RELATED TO SEARCH OF 400 HAMPTON PARK BOULEVARD WAREHOUSE**

Defendant Antoine Jones ("Jones"), by and though undersigned counsel, and pursuant to the Fourth Amendment to United States Constitution and applicable case law, hereby respectfully moves this Honorable to reconsider[1] its denial of Jones' motion to suppress evidence relating to the search by federal agents of the 400 Hampton Park Boulevard warehouse. In support of this Motion, Jones states as follows:

**FACTS**

In February 2004, ICE began an investigation into alleged narcotics trafficking by several Hispanic individuals in Maryland. From this investigation, the government allegedly learned Antoine Jones had rented a warehouse located at 400 Hampton Park Boulevard, Capitol Heights, Maryland, purportedly for the purposes of conducting narcotics related activity.

---

[1] Jones now asks the Court to reconsider its denial of his motion based on the newly filed declarations of Gregory Wills and Lawrence Maynard. The Court has noted that the law of the case my bar the relitigation of this motion. However, the term "law of the case" merely expresses the practice of courts generally to refuse to reopen what has been decided, not a limit to their power. *See Missenger v. Anderson*, 225 U.S. 436 (1912). Unlike *res judicata*, the practice of law of the case does not compel rigid adherence to the prior decision "because when a court becomes convinced that its declared law of the case is erroneous and would work a grave injustice, it should have the power to apply a different rule of law in the interest of getting the very case before it settled in a just manner." 1B Moore, Federal Practice P0.404 (1), p. 405 (2d ed. 1965). Moreover, the practice only "applies to principles of law" enunciated by the court, 1B Moore, supra, P0.404(1), at p. 402, and does not bar consideration of the prior decision in the light of new evidence. *Cf. Gouled v. United States*, 255 U.S. 298, 312-313 (1921); *Anderson v. United States*, 352 F.2d 945 (DC Cir. 1965). "In any new trial, the 'practice' of the law of the case would not operate to bar consideration of the admissibility of [new evidence] based upon material facts not heretofore adduced or supervening law." *United States v. Naples*, 359 F.2d 276, 278 (DC Cir. 1978).

ICE Agent Katarina Korousos testified at trial that she and other agents entered the warehouse late on the evening of April 30, 2004, after having obtained the key from the landlord (Andrew Schaeffer) and purportedly after Jones vacated the premises. Korousos further testified that upon entering the premises, she observed inflatable mattresses and wrapping, purportedly typical of a cocaine distribution operation.

Defense witness Gregory Wills testified that he installed a "peg board" inside the warehouse for Jones sometime *prior* to Jones vacating the premises. (Tr. Dec 20, 2007, morning session, at 17:11 – 20:21). In his attached Declaration, Wills states that he installed he peg board sometime in February 2004. (*See* Wills Decl. Exh. 1; and Exh. 2). Defense witness Scott Peacock testified that when he moved into the premises approximately a month after Jones left, the "peg board" was still installed on the wall of the warehouse. (Tr. Dec. 18, 2007, afternoon session, at 102:14-15).

Photographs introduced into evidence by the government (Gov. Exh. ICE 12), purportedly taken during the ICE search of April 30, 2004, *after* Jones vacated the premises, clearly show that the "peg board" is not located on the wall where Wills testified he installed it prior to Jones' departure and where Peacock testified it was when he moved in.

Additionally, the photographs also show various items in the warehouse (jumpsuit, inflatable mattress, wrapping material and various boxes. Lawrence Maynard, a codefendant in this case, states in his Declaration that "when the lease was terminated the warehouse was vacant of all merchandise, equipment and furniture before the keys were turned into the owner" and that "the warehouse was entirely empty of all merchandise, furniture and equipment on the day that the lease was terminated and the building was inspected." (*See*

Maynard Decl. – Exh. 3).  Maynard concludes that the "pictures that were presented as evidence by the ICE investigation were not taken on the day of April 30, 2004." (*Id.*).

The clear implication is that the photographs were taken by the ICE agents sometime prior to the installation of the "peg board" and sometime prior to Jones' vacating the warehouse.  Thus, the ICE agents entered and searched the premises illegally without a warrant.

Because the ICE agents conducted a warrantless search and there were no exceptions to the warrant requirement, any tangible evidence seized or testimony derived from their illegal entry must be suppressed as the fruit of the poisonous tree.

## ARGUMENT

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized ..." U.S. Const. amend. IV.  The Supreme Court has consistently held that the Fourth Amendment only prohibits *unreasonable* searches and seizures.  *See Maryland v. Buie,* 494 U.S. 325 (1990); *Skinner v. Railway Labor Executives' Assn.,* 489 U.S. 602 (1989).

In evaluating the reasonableness of a challenged governmental action, it is necessary to balance the intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests. *United States v. Villamonte-Marquez,* 462 U.S. 579 (1983); *Delaware v. Prouse,* 440 U.S. 648, 654 (1979). A search of a house, apartment, or office is generally unreasonable without a warrant issued on probable cause.  The Court has consistently expressed a preference for the use of search warrants. *See United States v.*

*Ventresca,* 380 U.S. 102 (1965). "Resort to the warrant process, the Court has declared, is to be preferred because it 'interposes an orderly procedure' involving 'judicial impartiality' whereby 'a neutral and detached magistrate' can make 'informed and deliberate determinations' on the issue of probable cause." 1 LaFave, Search & Seizure, § 3.1(b), 548-49 (1987) (citations omitted).

In this case, the testimony from Karousos, Wills and Peacock, along with the photographic evidence, support the argument that the ICE agents entered Jones' warehouse prior to Jones' vacating the premises. In fact, Schaeffer testified that Karousos tried to gain access to the warehouse prior to Jones' departure:

> 14 Q. Without telling me what you said or what she said, just
> 13 tell us how exactly that came about? How did you give her
> 14 access to the warehouse?
> 15 A. She had contacted me, she wanted some information about
> 16 the tenant. I told her that she would have to subpoena the
> 17 information which she did. *Then she asked to gain access and I*
> 18 *told her that it was not possible until the space was vacant.*

(Tr. Nov. 19, 2007, afternoon session, at 28:14-18) (emphasis added). Considering that Agent Karousos and her colleagues exhibited a pattern of warrantless entries into private locations (*i.e.,* Summit Circle apartment 3B and 8550 Myrtle Avenue), and given the photographic evidence, it is not far inconceivable that the ICE agents illegally entered the 400 Hampton Park warehouse prior to Jones' departure when in fact, it is clear that they were seeking entry into the warehouse before Jones vacated the premises.

**WHEREFORE** for the foregoing reasons, and any others that may appear to the Court, Mr. Jones respectfully requests that this Motion be **GRANTED** and that the Court strike any testimony derived from the search of the warehouse located at 400 Hampton Park Boulevard.

Dated: Washington, DC
      May 22, 2012           Respectfully submitted,

**BALAREZO LAW**

By: _____/s/_____
A. Eduardo Balarezo
Bar # 462659
400 Fifth Street, NW
Suite 300
Washington, DC  20001
(202) 639-0999

*Attorney for Defendant Antoine Jones*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 22ND day of May 2012, I caused a true and correct copy of the foregoing Defendant Jones' Motion to Reconsider Motion to Suppress Evidence Related to Search of 400 Hampton Park Boulevard to be delivered to the parties in this matter via Electronic Case Filing (ECF).

/s/
_____
A. Eduardo Balarezo