PG
1

CLERK OF COURT OFFICE
UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA D CIRCUIT

UNITED STATES

X                    CR NO - 05-386 (ESH)

ANTOINE JONES


DEFENDANT'S MOTION TO RECONSIDER MOTION
TO SUPPRESS EVIDENCE RELATED TO SEARCH OF 400
HAMPTON PARK BOULEVARD WAREHOUSE


DEFENDANT ANTOINE JONES PURSUANT TO THE
FOURTH AMENDMENT TO UNITED STATES CONSTITUTION
AND APPLICABLE CASE LAW (RULE 41, 18 USC § 2236)
HEREBY RESPECTFULLY MOVES THIS HONORABLE COURT
TO RECONSIDER IT'S DENIAL OF JONES' MOTION TO
SUPPRESS EVIDENCE AND INFORMATION RELATED TO
THE SEARCH BY FEDERAL AGENTS OF THE 400 HAMPTON
PARK BOULEVARD WAREHOUSE.


IN SUPPORT OF THIS MOTION, DEFENDANT JONES
STATES AS FOLLOWS:


THE I.C.E. AGENTS UNLAWFULLY ENTERED THE HAMPTON
PARK BOULEVARD WAREHOUSE BEFORE APRIL 30, 2005 THE
DAY MR. JONES VACATED THE WAREHOUSE LEASE.


IN THE I.C.E. PHOTOS THERE'S CLEAR AND CONVINCING

P6
2

EVIDENCE THAT THE I.C.E. AGENTS TOOK THE I.C.E. PHOTOS
BEFORE APRIL 30, 2005.

## 18 USC § 2236 - SEARCHES
## WITHOUT A WARRANT

WHOEVER, BEING AN OFFICER, AGENT OR EMPLOYEE
OF THE UNITED STATES OR ANY DEPARTMENT OR AGENCY
THERE OF, ENGAGED IN THE ENFORCEMENT OF ANY LAW
OF THE UNITED STATES "SEARCHES OF ANY PRIVATE DWELL-
ING USED AND OCCUPIED AS SUCH DWELLING WITHOUT
A WARRANT DIRECTING SUCH SEARCH OR MALICIOUSLY
AND WITHOUT REASONABLE CAUSE SEARCHES ANY OTHER
BUILDING OR PROPERTY WITHOUT A SEARCH WARRANT
SHALL BE FINED UNDER THIS TITLE FOR THE FIRST
OFFENSE AND FOR A SUBSEQUENT OFFENSE, SHALL BE
FINED UNDER THIS TITLE OR IMPRISONED NOT MORE
THAN ONE YEAR OR BOTH.

AS THIS COURT KNOWS THAT THE COURT HAS ALREADY
RULED ON A SEARCH WITHOUT A WARRANT IN THE SUMMIT
CIRCLE APARTMENT.

IN THIS 3RD TRIAL DEFENSE WITNESS LAWRENCE
MAYNARD SHOWED AND PROVED THAT THE WAREHOUSE
SEARCH WAS UNLAWFUL WHEN HE POINTED OUT
PERSONAL PROPERTY SUCH AS, OFFICE CHAIR, DRY WALL

PG
3

COMPOUND, UNFLATTABLE MATTRESS, MOVING BLANKETS,
HIS SHIRT, HIS JACKET, THE COVERALLS, THE TWO TRASH CANS
LARGE SHRINK WRAP ROLLS, BLACK BOOM BOX RADIO, BLACK
CHAIR, VALENTINES GIFT BASKETS, DISPLAY CASE, NEW TABLE
TOP (GLASS) IN THE BOX AND GREG WELLS SKILL SAW WAS
TAKEN FROM THE WAREHOUSE BEFORE APRIL 30, 2005.

(EXHIBIT #1) ARE I.C.E. PHOTOS OF THE PERSONAL
PROPERTY THAT WASN'T LEFT AT THE WAREHOUSE.

(EXHIBIT #2) IS MR. JONES' SWORN AFFIDAVIT ON
THE UNLAWFUL SEARCH OF THE HAMPTON BLVD WAREHOUSE.

(EXHIBIT #3) IS GREG WELLS SWORN DECLARATION
WHERE MR. GREGORY WELLS MENTIONED HE REMOVED
HIS SKILL SAW AND TOOLS FROM THE WAREHOUSE AND
CONTINUED TO DO WORK FOR OVER A YEAR AT OTHER
LOCATIONS AFTER APRIL 30, 2004 WITH THOSE SAID
TOOLS AND SAW.

(EXHIBIT #4) IS LEYVANCE HOWARD'S SWORN
DECLARATION THAT HE RECEIVED LAWRENCE MAYNARD'S
JACKET ON THE WAREHOUSE PHOTO FROM LAWRENCE MAYNARD.

(EXHIBIT #5) IS APRIL 3, 2013 -12:13 PM STATUS
HEARING PG 18, WHERE MR. BALAREZO ARGUED THE
UNLAWFUL SEARCH OF THE SUMMIT CIRCLE AND THE

## WAREHOUSE SEARCH.

AFTER THE EXTENSIVE EXAMINATION OF LAWRENCE MAYNARD THE GOVERNMENT HAD TO CONCEED THAT THE GOVERNMENT DIDN'T CROSS OR ASK MR MAYNARD ONE QUESTION ON THIS UNLAWFUL SEARCH OF THE WAREHOUSE.

NOT ONLY DID MR. ANDREW SCHAEFFER TESTIFIED HE DIDN'T RECALL ANY OF THE PERSONAL ITEMS ON THE L.C.E. PHOTOS WHEN MR. SCHAEFFER AND MR. JONES DID A FINAL WALK THROUGH INSPECTION MAKING SURE THE WAREHOUSE WAS "BROOM CLEAN" MR HOWARD SCOTT PEACOCK TESTIFIED WHEN HE LEASED THE WAREHOUSE A MONTH LATER, NONE OF THE PERSONAL PROPERTY WAS LEFT BEHIND.

(EXHIBIT #6) IS A COPY OF MR JONES POLYGRAPH EXAMINATION.

IN MR. JONES' POLYGRAPH EXAMINATION ANSWER #19
(Q): DID YOU AND LAWRENCE REMOVE YOUR PERSONAL ITEMS FROM THE WAREHOUSE BEFORE APRIL 30, 2004?
(A): YES

BOTH MR LAWRENCE MAYNARD AND MR. GREGORY WELLS ARE WILLING TO ALSO TAKE POLYGRAPH EXAMINATIONS ON THIS UNLAWFUL SEARCH OF THE HAMPTON

PG
5

BLVD WAREHOUSE.

## 18 USC § 1001, 18 USC § 1519, 18 USC § 1621, 1622, 1623 VIOLATIONS BY THE I.C.E. AGENT KANE

AGENT KANE PERJURED HERSELF ON THE GRAND JURY, IN THREE TRIALS AND MADE THINGS WORSE. AGENT KANE FALSIFIED FEDERAL DOCUMENTS ALONG WITH OTHER I.C.E. AGENTS (EXHIBIT #6)

### 18 USC § 1001

(1) FALSIFIES, CONCEALS OR COVER UP BY ANY TRICK, SCHEME OR DEVICE A MATERIAL FACT

(2) MAKES ANY MATERIALLY FALSE, FICTITIOUS, OR FRAUDULENT STATEMENT OR REPRESENTATION OR

(3) MAKES OR USES ANY FALSE WRITING OR DOCUMENT KNOWING THE SAME TO CONTAIN ANY MATERIALLY FALSE, FICTIOUS OR FRAUDULENT STATEMENTS OR ENTRY SHALL BE FINED UNDER THIS TITLE, ~~CONFINED~~ IMPRISONED NOT MORE THAN 5 YRS.

### 18 USC § 1519: WHOEVER KNOWINGLY ALTERS, DESTROYS, MUTILATES, CONCEALS, COVERSUP, FALSIFIES OR MAKES A FALSE ENTRY IN ANY ~~____~~ RECORD, DOCUMENT ~~____~~ OR TANGIBLE OBJECT WITH THE INTENT TO IMPEDE, OBSTRUCT OR INFLUENCE THE INVESTIGATION SHALL BE FINED UNDER THIS TITLE, IMPRISONED NOT MORE THAN 20 YRS OR BOTH.

PG
6

18 USC § 1621 - PERJURY GENERALLY, 1622 -
SUBORNATION OF PERJURY, 1623 - FALSE DECLARATION
BEFORE GRAND JURY OR COURT, ALL THESE THREE
STATURE CARRIES A FINE UNDER THIS TITRE OR
EMPRISONED NOT MORE THAN FIVE YEARS OR BOTH.

## STATEMENT OF FACTS

IT CLEARLY SHOWS IN THE ICE PHOTOS THAT THE
PERSONAL PROPERTY IN THE ICE PHOTOS THAT WAS
LEFT BEHIND WASN'T "BROOM CLEAN" AS MENTIONED
IN THE LEASE AGREEMENT.

THE ICE AGENTS SOME HOW UNLOCKED THE
OVER HEAD DOOR, THE SECURED LOCKED FRONT
DOOR AND DISCONNECTED THE ALARM SYSTEM TO
UNLAWFULLY ENTER THE WAREHOUSE WITHOUT A
SEARCH WARRANT BEFORE APRIL 30, 2005 A CLEAR
VIOLATION OF 18 USC § 2236 SEARCH WITHOUT A WARRANT

ICE AGENTS CONCEALED AND IMPEDED THIS UNLAWFUL
SEARCH WITHOUT A WARRANT BY FALSIFYING FEDERAL
DOCUMENTS AND FURTHER COVERING UP THIS UNLAWFUL
SEARCH AND THEIR OBSTRUCTION OF JUSTICE BY MAKING
PERJURING STATEMENTS IN THE GRAND JURY AND
IN THREE TRIALS ON THE HAMPTON PARK BOULEVARD
WAREHOUSE SEARCH. WHICH INFLUENCED THE COURT AND

THE JURY TO CONVICT DEFENDANTS JONES AND MAYNARD

AGENT KANE AND HER ICE AGENTS TEAM DISREGARDED THE LAW AND DEFENDANT JONES' FOURTH AMENDMENT RIGHTS.

THESE WELL SEASONED AGENTS ARE PLACED WITH SOCIETIES HIGHEST TRUST AND STANDARDS TO ENFORCE AND UPHOLD THE LAW.

WHEN THESE ICE AGENTS CHOSE TO DEPRIVE DEFENDANT JONES OF HIS FOURTH AMENDMENT RIGHTS AND CHOSE TO BREAK THE LAW THAT THEY SWORE TO OBEY, PROTECT AND UPHOLD, CONDUCT SHOULD BE DETERRED SO OTHERS DON'T CHOOSE TO TAKE THAT PATH AND ALSO THINK THEY COULD GET AWAY WITH UNLAWFUL SEACHES AND OBSTRUCTION OF JUSTICE BY LAW ENFORCEMENT.

## EXCLUSIONARY RULE

THE TEST TO CONSTITUTIONAL REASONABLENESS SEARCHES BY THESE ICE AGENTS SHOULD BE COMPARED TO THE LANGUAGE IN 18 USC § 2236 SEARCH WITHOUT A WARRANT AND THE LANGUAGE IN THE FOURTH AMENDMENT.

THE COURT MUST APPLY THE EXCLUSIONARY RULE AS A REMEDY TO DETER THESE SPECIAL AGENTS

MISCONDUCT.

HONORABLE JUDGE HUVELLE RULED ON THE FAVOR OF THE DEFENDANT BY SUPPRESSION OF THE EVIDENCE AND INFORMATION ON THE SUMMIT CIRCLE APT, THE APPLICATION OF THE EXCLUSIONARY RULE DEFINITELY IS WARRANTED IN THIS PRESENT ISSUE.

THE EXCLUSIONARY RULE IS BELIEVED TO BE A NECESSARY RESTRAINT ON THE ADVERSARIAL ZEAL OF LAW ENFORCEMENT OFFICERS.

AS IT SERVES THE FUNCTION TO UPHOLD THE LAW AND DETER LAW ENFORCEMENT, THE EXCLUSIONARY RULE IS NEEDED IN SITUATIONS LIKE THIS.

IN THIS CASE THE ICE, AGENT'S BAD DECISIONS TO UNLAWFULLY SEARCH THE WAREHOUSE WITHOUT A SEARCH WARRANT, AND TO BREAK THE LAW BY OBSTRUCTION OF JUSTICE IS SUBJECT TO FEDERAL PENALTIES AND THE SEARCH OF THE WAREHOUSE IS DEEMED ILLEGAL.

THE ICE AGENTS' TAINTED INVESTIGATION AND ICE AGENT KANE'S PERJURY TESTIMONY WERE HIGHLY PREJUDICIAL TO DEFENDANTS JONES AND MAYNARD IN THE GRAND JURY AND IN ALL THREE TRIALS.

WITH THIS EVIDENCE OF OUTRAGEOUS ~~CONDUCT~~ MISCONDUCT
BY AGENT KANE AND HER T.C.E. AGENT TEAM, DEFENDANT
JONES IS HUMBLY AND RESPECTFULLY REQUESTING THIS
HONORABLE COURT TO USE HER SUPERVISORY POWER TO
DISMISS THIS CASE DUE TO THE EXTRAORDINARY
CIRCUMSTANCES OF 18 USC § 1519, 18 USC § 1621, 1622,
1623 BY SPECIAL AGENT KANE, OR THE VERY LEAST
GRANT THE SUPPRESSION OF EVIDENCE OF THE HAMPTON
PK BLVD WARE HOUSE AS WARRANTED.

RESPECTFULLY SUBMITTED

ANTOINE JONES
241 912
1901 D ST SE
WASH DC 20003
SIGN:
DATE:

THE JEEP CHEROKEE AND THE TOYOTA SEQUOIA
WASN'T ON ATTACHMENT A FOR PROPERTY TO BE
SEIZED, WITHOUT THE JONES PERMISSION AND
ANY LEGAL AUTHORITY THE AGENTS STILL ILLEGALLY
SEIZED BOTH VEHICLES.

CONCLUSION

P61

Unlawful SEARCH of HAMPton
BlVD WARE House

Antoine Jones sa sworned DeclARAtis
under Penalty of Perjury (28 usc $174

I Antoine Jones SWEARS under
Penalty oF Perjury (28 U.S.C.S $ 1746)
that this sworned declaration is
correct, accurate and true.

I Antoine Jones is volunteering
and willing to submit to a polygraph
examination and ReAdy to tell the
truth in an evidentiary Hearing
or Suppression Hearing to complete
the Record.

STatement of facts

I WANt to put on Record that a
couple of days beFore and up to
April 30 2004, me and mr lawrence
MAynARD cleaned and I Power
WASH the HAMPton PK BIvD WARE Howe

ME And MR LAWRENce MAynARD
threw away items and dump the
trash in the dumpster filling up
the dumpster And witH our
personal property we even stored
it on the white box truck to take it
to the club or we took some of our
personal property Home but we
completely cleaned up and cleano
out the WAre House with all of our
personal property and no items
WAS left behind,

The E.C.E Surveillance tape will confirm

$\rho_{0}$L

US cleaning up and clearing out the
Ware House before April 30 2004 the
Day I Updated my lease.

It's impossible that the I.C.E PHoto's
was taken on April 30 2004 at 11:AM
because all the items And personal
property tooken in the I.C.E PHoto's
was taken from the Ware House And
nothing was left behind.

I will detailed and point out those
items showing in the I.C.E Photo's
Are the same items And personal
property in the club levels Photo's
that was takin on october 24 2005
by Agent Kelie OBrien over A yeaR and
A Half later. This is clearly A
( 18USCS 9 2236 - search without
WARRANT) And A 4th Amindment
Violation.

The I.C.E Photo's consisted of 32
Photo's And I will point out some
of the items that is seen in the
club levels Photo's

The LARGE OFFICE CHAIR in the
I.C.E Photo was taken to club levels
with Another office chain that
cant be seen in the I.C.E Photo's
because the F.C.E Agent didn't take
Photo's of the fully furnisH Office,
And the lights was off, This LARGE

P 03

Office Chair can be seen in Room H
in the club levels office.

The small black table chair with the
plug of radio on it was taken to club
levels and you could see this small
black chair in the club levels photo's
in the upstairs office.

The small old-black radio was
taken from my Brandywine RD House
so the Handy man Gregory Wills could
listen to the radio while he did his
carpetry worked at the Ware House
and I took this same radio to club
levels after I vacated the Ware House
so club levels employee's could
listen to it while we clean up and
do work around the club.

The inflatable mattress with the
battery pack attached to it in the
I.C.E photo's also was taken to club
levels and you could see this same
inflatable mattress in Room J, a
storage Room in club levels office.

The brand new box with a brand
new complete glass table in the I.C.E
photo's is the complete built glass
table in the upstairs office in club
levels.

The trash cans in the I.C.E photo's
was taken to club levels, you can see

P 64

these trash cans near the dumpster
And when the club levels employees
clean up in front of the club, the
F.B.I surveillance Tapes will confirmed
that.

The long sleeves shirt and the sports
Jacket, lawrence maynard told me
they were his and that he took
the long sleeves shirt home and the
sports Jacket He gave to lavance
Howard And skinny one of club levels
employee. The F.B.I surveillance tape
will confirmed that lavance Howard
wore this sport Jacket almost daily.

The skill saw in the I.C.E Photo's
was Gregory Wills skill saw and He
took the skill saw with Him after He
completed the work at the ware House.
This could be confirmed when defense
witness Gregory Wills in the second
trial testified under oath the saw
was His And He took the skill saw
with Him.
I personally seen Greg Wills use
the same skill saw at club levels And
at carolynette waddell House after
I vacated the ware House.

The valentine's Gift basket seen
in the I.C.E Photo's belong to lawrence
Maynard, mr maynard stored the
valentines Gift Basket in the

P 65

WANN House and He told me that Him
and His daughter sold the Valentine's
Gift Basket during the Valentines and
on Valentines day Feb 14, 2034.

THE numerous of Blue-furniture
blankets and Boxes of Plastic Furniture
WRAPS in the I.C.E Photo's was stored
on the white box truck.
Some of these Blue Blanket and
Plastic wrap was Brand new and we
stored them at the club because we
Had some use ones on the white box
truck. Me and lawrence Maynard
Place both the blue blankets and the
Boxes of plastic wrap on the white box
trucks and later use them on propert
And furniture delivery to the club, Plus
Mr Maynard use the blue blankets
and Plastic wrap in His side-furniture
delivery service.

THE two rolodex cans in the I.C.E
Photo's was not left behind because
one I power wash the entire club and
swept and mop the entire floor.
These Rolodex cans was still in
the Rolodex when it was at club level

Their are two crucial evidence
that show and prove the I.C.E Agents
Photo's was taken some time before
I unlocked my lease is:
(1) The I.C.E Photo's don't show
a large white pegboard on the wall,

P b b

Where Gregory Wills and Mr Maynard
Assisted Him to place a large Peb
Board on the Ware House Wall, and Greg
painted it White the color of the Wall.
Gregory Wills testified Under Oath
that He place this Large Peb Board
up on the Ware House Wall sometime
February 2004, and Howard Scott
Peacock testified that the Peb Board
was still up when He took over the
Ware House lease A month later. Mr
Peacock also testified that none of
the items seen in the I.C.E photo's
was present or still there we He
took over the Ware House lease a
month later.

I want to put on record I see
Greg Wills place the Peb Boars up
in Feb 2004 and at that time Mr
Wills Put His tools on it While He
done carpetry work at the Ware
House and on April 30 2004 the
Peb Boars was still Hanging on the
Ware House wall.

(2) The I.C.E Photo's is missing
A large window I Ask Greg Wills
to built and cut into the Wall
connecting the Office to the
Ware House - Bay Area.
This Window was built and
cut in before I Vacated the
Ware House And it was still there

P 67

On April 30 2004 the County Zows vacated my lesse.

It was very obvious why the I.C.E agents Had the office light off and didn't take ene crime-scene in entry photo's of the WareHouse office, is because the WAre House office was fully furniture with office furniture (two large office chairs, two office desk, and a lounge touch All you could see in the club levels office.

Conclusion

Every time agent Gibbs falsifies, conceal and cover the facts the I.C.E agents unlowfully enter and unlawfully search the ware House (with out a warrant) before April 30 2004, is clearly An 18USCS 2236, 18USCS 1001 18USCS 1519 violation.

Also, when N9 officer Michael Snarpe false entry date (April 30 2004 is An 18USCS 1001 and 18USCS 1519 violation.

When Agent Gibbs testified in the Grand Jury and in both trial that the I.C.E agent enter the ware House on April 30 2004 And took those F.C.E Photo's is clearly perjury and a violation of (18USCS 1621,1622,1623)

I swear under penalty of perjur (18USCS § 1746) that every thing I

$P \vee S$

Stated in this sworned declaration
is accurate, correct and true.

I am willing to submit to a
polygraph examination that none
of these items in the I.C.E Photo's was
left behind And the Pc6 boards and
large window was still present on
April 30 2004 the day I went on a
expection - walk through with mr
Duncan Schaeffer and the same day
I turn the key in And vacated the
ware house.

<u>Respectfully submitted</u>

Antoine Jenus Sr
241 912
1901 D st se
W.D.C 20003
Date 3-23-2012
Signature : Antoine Jenus

Teresa Washington
Notary Public, District of Columbia
My Commission Expires 5/14/2013
Teresa Washington

### Declaration of Gregory K. Wills

I, Gregory Wills, swears under penalty of perjury (28 U.S.C. § 51746) that this sworn declaration is correct, accurate, and true.

In February of 2004, I was contacted by Lawrence and Antoine about doing some work in a warehouse that they had in Capitol Heights, Maryland, on Hampton Park Boulevard. They wanted me to install a window between the office and the warehouse so they could see what was going on in the warehouse while they were in the office. They also wanted a board hung in the warehouse so they could hang things on it. While I was there and doing work, I hung my tools on the pegboard that I had installed. I initially installed the window. It was a sliding window (2x3) I used a drywall knife with snips to cut the hole in the wall because it had metal studs. I had my skill saw to install the pegboard. I also used the skill saw to build the shelves that were under the pegboard. I completed all work in four days in February. I also removed my skill saw and tools and went to work on another job. After the warehouse I began working inside the Club, first project was building a VIP Room, framed it, using skill saw to cut 2 x 4's and studs to frame out the VIP Room also using the skill saw to put subfloor down, and has hardwood floors because it was a brick floor. After completing that job I started to build a bar which required the use o my skill saw. After the entrance of the Club I build the hardwood floors and paneling as well as the doors in the lounge area. All the door heights had to be cut to 76 x 77 inches because each door was the standard 79x80 inches high which required me to use my skill saw as well. There is no doubt in my mind that when I finished my work in the warehouse in February I took my skill saw with me and used it on other projects. Additionally, I went to Net 's house in Maryland to work on her hardwood floors. I used my skill saw on that job in April 2005 to work on her floors and I also did additional work like installing a door and windows using my skill saw in April 2005.

_Gregory K. Wills_ 04-16-12
Gregory K. Wills

```
 1              MR. BALAREZO:  We were trying to demonstrate
 2   through various photographs that were provided that
 3   the entry had to have been prior to Mr. Jones's
 4   vacating the premises.  And she did not have a
 5   warrant, so, therefore, it would have been an illegal
 6   search.
 7              THE COURT:  Is this --
 8              MR. BALAREZO:  It's our position that this
 9   would have been in keeping with Agent Gikas' practice,
10   because, remember, the Court did suppress her illegal
11   entry into the Summit Circle apartment, which she
12   effectuated without a search warrant.
13              THE COURT:  Okay.  This has to do with
14   Gikas, and this is the lady from ICE?
15              MR. BALAREZO:  Correct.
16              THE COURT:  And your argument was because of
17   the pictures, she had to have entered before he
18   abandoned the premises?
19              MR. BALAREZO:  Right.  Because there were --
20   I'll just say there were items depicted in the
21   photographs that were -- were there before Mr. Jones
22   left and that were not there after he left, so
23   therefore, if they were in the photographs that were
24   taken, the entry must have been before he left and
25   would have been illegal.
```

FAX 4109626014        ATCET BALTIMORE        003/003

(EXHIBIT #6)



Over Head Door

Door

Bath Room

Office

TRASH CANS

METAL CART

Box Shrink Wrap

②

①

Table

Band Saw

Table

Rolling Bed

Brown Cowalls Hanging up

Blue Moving Blankets Spread Table A's on Top

Ice

Bill
KAT
FRed.

4/30/04      11:15 P!

① * Lite Blue Moving Blankets
② * White Box – Shrink Wrap
③ * Brown Cowalls – Hanging on wall

K9 Scented Real close to Floor (concret) And
Drywall

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br><br>R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | 1. PAGE   4 |
|---|---|
| | 2. CASE NUMBER  BA02BR04BA0012 |
| | 3. REPORT NUMBER: 005 |

* a white box that contained rolls of plastic shrink wrap;
* a pair of brown coveralls that were hanging on the wall and
* blue moving blankets that were stored on top of and below a table.    1801CJ
                                                                          1001 -(1519)

Photographs were taken of the warehouse, including the narcotics alert areas,
but nothing was removed from the premises.  Agents and officers departed the
warehouse without incident and your writer returned the keys to the landlord
the next business day on May 3, 2004.

This investigation continues.

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

7. The suppliers often used large trucks to transport large shipments of cocaine, often in excess of 200 kilograms, to the Washington, D.C., area, where they unloaded it into smaller vehicles and transported it to the stash locations for storage for as much as a month at a time.

8. **JONES** also rented warehouse facilities for the same purpose. For example, on or about April 30, 2004, a search of **JONES's** warehouse space, located at the Hampton Park Storage Facility, *False Statmug* 400 Hampton Park Boulevard, Capitol Heights, Maryland, which he rented from November 17, 2003, until he broke the lease on April 30, 2004, revealed several boxes of heat sealing wrappings and air mattresses, as well as the scent of cocaine, which was detected by a narcotics-sniffing canine.

9. **JONES** periodically collected money from some of his co-conspirators, including **JOHNSON, JACKSON, HUGGINS, HOLLAND, CARTER,** and others known and unknown to the Grand Jury. **JONES** then visited a storage location, and met with **BREMEA** and others, known and unknown to the Grand Jury, to deliver quantities of cash, and pick up multiple-kilogram quantities of cocaine for distribution to these co-conspirators. For example, on September 28, 2005, **JONES** met with **HUGGINS** at his residence in Suitland, Maryland, where he remained for *GPS ↔* approximately 20 minutes. From there, **JONES** drove directly to the residence of a co-conspirator not indicted herein, but who is known to the Grand Jury, and remained for approximately 20 minutes. After another similar meeting with an individual unknown to the Grand Jury, at 9:35 p.m., **JONES** drove to a stash location, 9508 Potomac Drive, Ft. Washington, Maryland, where he met *# 1* with **BREMEA** for approximately 45 minutes.

10. From at least some time in 2003, the exact date being unknown to the Grand Jury, through October 24, 2005, **JONES** supplied a number of unindicted co-conspirators, who are known to the grand jury, with kilogram and half-kilogram quantities of cocaine. **JONES** regularly

5

1  them.  Mrs. Jones, or Denise Jones never appeared there.

2  Antoine a handful of times.  Maynard not every day, but most

3  frequently he would show up.

4      Q.   And did he ever actually take that Isuzu box truck

5  all the way into the storage facility and shut the door?

6      A.   He did on two occasions.  But unfortunately, when he

7  did pull it into the garage, the door was closed behind him

8  and, you know, nothing could be observed as to what was

9  happening on the inside.

10      Q.   Did you or did the surveillance ever pick up anybody

11  making any legitimate deliveries to that place, supplies for

12  some sort of consulting service business or anything like

13  that?

14      A.   No, apart from the sparse comings and goings of

15  Maynard and Antoine Jones, no legitimate business activity

16  could be discerned from watching this place 24/7 for a period

17  of 35 days.

18      Q.   Okay.  And by the way, did there come a time that

19  Mr. Jones broke the lease early on that Hampton Park Boulevard

20  warehouse facility and you actually got consent to search it?

21      A.   Yes.  He, in writing, notified the landlord that he

22  was vacating by April 30th.  And on that same day, when he

23  turned the keys in to the landlord, the landlord -- so he had

24  vacated the premises.  The landlord allowed us, allowed me, he

25  gave me the key and allowed me to go in with a few other

1   agents and a customs inspector with a drug dog.

2      Q.   Okay.  And remarkably, what did you find inside the

3   security storage facility?

4      A.   In the depot area, the garage area, there were

5   several crates, boxes of shrink wrap.  There were also several

6   inflatable mattresses.  I mean, they were deflated, but there

7   were the inflatable mattresses, I mean, several inflatable

8   mattresses, some coveralls.

9      Q.   How about the windows.  Were there any windows in

10  this warehouse space?

11     A.   Yes.  The garage windows had just, you know, small

12  windows.  You probably wouldn't be able to see much in those,

13  but true to form with all their other locations, they had

14  those covered up with like pieces of carpet.  They had the

15  windows covered.  Another interesting thing, the landlord told

16  me that he thought it was odd, soon after Antoine had leased

17  this place, he had ordered a very expensive overhead door,

18  like, you know, the warehouse had locks and, you know, its own

19  locks on both the office door and the garage door, but he

20  ordered this extra -- the company is Overhead Door, and they

21  sell security doors.

22          The landlord just thought it was odd because these

23  doors are very -- he thought they were several thousand

24  dollars and he just thought it was odd that he had paid for

25  this at his own expense to secure the office area, which

1  connected to the warehouse area, because what he had been told

2  was that they were a delivery service, you know, not that they

3  would be housing or keeping any expensive merchandise at the

4  warehouse.  So he just thought that was odd.

5        Q.    When the drug dog went through, what, if anything,

6  did that dog do?

7        A.    The drug dog alerted to the presence of narcotics in

8  several areas in the depot area of the warehouse.  He alerted

9  close to the shrink wrap boxes, he alerted close to the

10  coveralls which were left kind of hanging on hooks, and near a

11  table where the deflated inflatable mattresses were near.

12        Q.    Okay.  Were any drugs actually found in that

13  warehouse space?

14        A.    No.

15        Q.    After this -- after your investigation of this

16  warehouse facility, did your personal investigation of Jones

17  sort of come to a close for the time?

18        A.    Yes.  Unfortunately, I was assigned to another

19  detail, and then subsequently, I was transferred to another

20  office.  So I was -- I had to leave the case behind because I

21  was transferred to another geographic location.  And the agent

22  who had been my group member who was also very familiar with

23  the case was slotted to get the case, and she did get it, but

24  she went out on maternity leave for almost a year, for like

25  ten months.







(EXHIBIT A)

LEATHER
COVERALL

BOX of
VALENTINE'S
DAY GIFT
BASKETS

↑
LAWRENCE
JACKET

BRAND
NEW
WINDOW
TABLE
(GLASS DESK)

(Exhibit #1)



Lawrence
Shirt

Lawrence
Jacket

Coverall

Name _____ Kendoy _____

Telephone ( 443) 140 59 36 _____

Fax No. ( _____ ) _____

E-mail _____

Address _____

Emon Howells   DVS MNN-T  Jteume -

M9x-Louis mining Donthen   443-622-7855

**ROLODEX**

Found in ware house

office

■

Antonio Jones
7711 Gordon Street
Landover, MD 20785
Fax - Fed Document sources
U/S.
301-352-7778

Found in warehouse
office

Sworned Declara.
LeyVance Howard                                    pg1

I, LeyVance Howard swears under Penalty of
perjury (28 U.S.C.1746) That This sworn
declaration is correct accurate and true

On Saturday, June 23 2012, I was Shown two Photo's
one where it's Three significant items, a Long sleeves
shirt, some work coverall and, a H+m sport jacket
Which was given to me Lawrence Maynard
sometime after February, 2004 but befor June 30, 2004
The reason, I remember This Time because it was
Club Levels Grand Opening in, February 2004 and it
was very cold out side.

I also view another Photo with the same sport Jacket
Lawrence Maynard gave me in the Mid 2004, The work
coverall and a box with Valentine's gift baskets

I sign and initials both Photos and dated them,
I want to note That, I was employed by Club levels
from day one, Antoine Jones allow me to Live in the
Club Levels and during my Stay at Club levels Lawrence
gave me the sports jacket somdtime mid 2004 and
until today, I have That same sport jacket Lawrence
gave me at home.

also as an employee at club level, I work as Security inside The club and at the front door, I would do Handyman work and pass out ClubLevel's and Scoopie-Soul Food Cafe Flyers, during Morning of Scoopie Cafe Hours of operation

I. LeyVance Howard, willing to take a polygraph-Examination and Testified under oath in a Hearing that everyThing, I mentioned in This sworned Declaration Under Penalty of Perjury, is current Accurate and True

Respectfully Submitted by
6-23-12
LeyVance S. Howard
1104 Queen st NE #1
, Washington DC 20002
02.

2245 16.st NE
Washington DC 20018

Joy Thomas
Notary Public, District of Columbia
My Commission Expires 8/2013