**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| v. | ) | 1:05-cr-00386-ESH-1 |
| | ) | |
| **ANTOINE JONES,** | ) | |
| Defendant. | ) | |

**GOVERNMENT'S OPPOSITION TO**
**DEFENDANT'S POST-CONVICTION CLAIM FOR RELIEF**

*COMES NOW* the United States of America to state that there is no merit to defendant's post-conviction claim advanced in the *pro se* pleading docketed on April 22, 2014, as Entry No. 755, which references 28 U.S.C. § 2255.

**SUMMARY**:  Having pled guilty on May 1, 2013, under Fed.R.Crim.P. 11(c)(1)(C), to a five-kilogram cocaine-trafficking conspiracy, defendant is serving the agreed 15-year sentence. *Pro se*, in late April 2014, defendant filed a collateral attack on his conviction premised upon allegations of ineffective assistance of counsel during pre-trial litigation. Defendant acted as his own counsel in a subsequent trial and when he later chose to plead guilty. Defendant's *pro se* pleading never identifies any flaw, constitutional or otherwise, in the process by which he pled guilty, was convicted, and the Court imposed sentence. Because defendant's claim for relief advances supposed errors occurring solely in pre-trial litigation, and his "guilty plea represents a break in the chain of events which has preceded it," there is no basis for vacating defendant's conviction by guilty plea. See Tollett v. Henderson, 411 U.S. 258, 267 (1973). This Court must reject defendant's claim because he never identifies any basis for concluding that his plea was not voluntary and intelligent. See Brady v. United States, 397 U.S. 742, 747 (1970); United States v. Cray, 310 U.S.App.D.C. 329, 335, 47 F.3d 1203, 1209 (D.C. Cir. 1995); United States v. Curry, 344 F.Supp.2d 22, 25 (D.D.C. 2004). Further, defendant's pleading is deficient for failing to address, much less show, cause for the procedural default of taking no direct appeal raising his claim, and actual prejudice to him. Manifestly, defendant can show neither, given that the ills of which he complains occurred not merely pre-sentencing, but pre-plea, indeed, months before his ultimate guilty plea. See Bousley v. United States, 523 U.S. 614, 622 (1998).

**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

1.   Pursuant to a written plea agreement, D.E. No. 748, on May 1, 2013, defendant pled guilty before this Court to the crime of unlawful conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846. The government and

1

defendant made the plea agreement under Fed.R.Crim.P. 11(c)(1)(C), and the Court imposed that same day the agreed sentence of fifteen years in prison to be followed by five years of supervised release. Defendant took no appeal from the conviction entered on May 1, 2013, D.E. No. 751. When he entered the plea, defendant was acting *pro se*, with a former appointed attorney acting as stand-by counsel. Defendant had acted *pro se* since January 2013, and he represented himself at a trial lasting from January 22-March 5, 2013, which resulted in a mistrial. The written plea agreement is part of the record and contains defendant's signature as defendant, and it is addressed to him, acting *pro se*. The plea agreement also bears the signature of the stand-by counsel, Ms. Errin Scialpi, Esq. Following his conviction, under Fed.R.App. 4(b)(1), defendant had 14 days to note a timely appeal, which he did not do, so the conviction became final more than a year ago.[1]

---

[1] This case has a complicated procedural history, much of which is not immediately material to the issue before the Court, which is: Has defendant advanced proper grounds for relief from his Rule 11(c)(1)(C) guilty plea? For context, however, it bears noting that on October 25, 2005, a grand jury indicted defendant and eight codefendants for an unlawful conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine powder and 50 grams or more of cocaine base, in violation of 21 U.S.C. § 846. See D.E. Nos. 1, 7. On March 16, 2006, the grand jury handed up a further superceding indictment, which amplified greatly the details of the conspiracy and added substantive charges against some of the conspirators. See D.E. 88. The grand jury added a number of additional charges in another superceding indictment returned on June 27, 2006. See D.E. No. 134.

"As alleged in the Indictment, from at least sometime in 2003 through October 24, 2004, defendants and their co-conspirators acquired, repackaged, stored, processed, sold, and redistributed large quantities of cocaine and cocaine base, in the District of Columbia, the States of Maryland and Texas, the Republic of Mexico and elsewhere. It is further alleged that Jones was the primary supplier of cocaine and cocaine base to members of the organization in the District of Columbia and in the State of Maryland." United States v. Jones, 451 F.Supp.2d 71, 73-74 (D.D.C. 2006). "In October 2006 Jones and a number of his co-defendants went to trial. . . . The jury acquitted Jones on a number of counts but could not reach a verdict on the conspiracy charge, as to which the court declared a mistrial. . . ." United States v. Maynard, 392 U.S.App.D.C. 291, 296, 615 F.3d 544, 549 (D.C. Cir. 2010).

Following this mistrial declared in January 2007, in "March 2007 the Government filed another superseding indictment [D.E. No. 344] charging defendant Jones, [a co-defendant named Lawrence] Maynard, and a few co-defendants with a single count of conspiracy to distribute and to possess with intent to distribute five or more kilograms of cocaine and 50 or more grams of cocaine base. A joint trial of Jones and Maynard began in November 2007 and ended in January 2008, when the jury found them both guilty." Id. Maynard reversed defendant's conviction, however, and the United States Supreme Court affirmed the reversal in United States v. Jones, 132 S.Ct. 945 (2012). Through this point and until August 15, 2012, Mr. A. Eduardo Balarezo, Esq., had acted as defendant's principal counsel, although various other attorneys and organizations had assisted, including as *amici* on appeal. After this Court permitted Mr. Balarezo to withdraw in August 2012, on September 4, 2012, Mr. Jeffrey O'Toole, Esq., entered his appearance as defendant's counsel, and Ms. Errin Scialpi, Esq., entered her appearance on December 13, 2012. See

2. On April 22, 2014, the Court "fiated" onto the docket a *pro se* pleading from defendant styled, "Ineffective Assistance of Counsels Claims and *28 U.S.C.S. 2255* Claim *28 U.S.C.S. 2255* Federal Custody, Remedies on Motion Attacking Sentence." D.E. No. 755. The Court directed the government to respond. Defendant's 44-page pleading contains at least 45 additional pages of seven exhibits. Ultimately, it contends that defendant's "conviction should be vacated under grounds" of ineffective assistance of counsel by his former appointed attorneys, Mr. A. Edwardo Balarezo, Esq., and Mr. Jeffrey O'Toole, Esq. Defendant alleges seven instances of such ineffectiveness:

1. Both Mr. Balarezo and Mr. O'Toole failed to prepare properly for a crucial evidentiary hearing;

2. Failure to investigate properly crucial and essential evidence that would have provided support and assist in winning the evidentiary hearing;

3. Both Mr. Balarezo and Mr. O'Toole failed to interview and subpoena defense witnesses to support facts and evidence in the evidentiary hearing;

4. Mr. O'Toole failed to investigate jury-tampering and obstruction of justice by government cooperator Jason McNair after Mr. McNair brought $100,000 into Judge Huvelle's courtroom during defendant's criminal trial proceedings;

5. Mr. O'Toole was ineffective by refusing to request an investigation into who was responsible for having Jason McNair bring $100,000.00 cash into Judge Huvelle's courtroom;

---

D.E. Nos. 647, 656. During the latter half of 2012, defendant and the government litigated suppression of evidence drawn from "cell-site data covering a four-month period that was obtained pursuant to three orders issued by United States Magistrate Judges of this Court in June, August, and September of 2005." See United States v. Jones, 908 F.Supp.2d 203, 204 (D.D.C. 2012) (denying motions to suppress evidence in question).

With defendant's third trial set to begin on January 22, 2013, the Court recognized defendant's intention to proceed *pro se* and act as his own trial attorney on January 17, 2013. Mr. O'Toole and Ms. Scialfi acted as stand-by counsel trial during the trial, which resulted in a "hung-jury" mistrial on March 5, 2013. On April 16, 2013, Mr. O'Toole moved to withdraw as counsel, with defendant Jones continuing to act *pro se*, along with Ms. Scialpi as stand-by counsel. On May 1, 2013, defendant pled guilty under Rule 11(c)(1)(C) and was sentenced.

      6.     Mr. O'Toole proved ineffective when he refused to request a continuance after realizing that the federal agents', detectives', and Ms. Lieber's testimonies were contradictory, untruthful, and unreliable;

      7.     Mr. Balarezo proved to be an ineffective counselor when he deliberately neglected and sabotaged defendant's pre-trial motions.

D.E. No. 755 at 4. Each of these allegations impugns actions by defendant's appointed attorneys before January 17, 2013, when defendant began acting *pro se* as counsel. Mr. Balarezo had withdrawn as counsel in August 2012; Mr. O'Toole was appointed to replace Mr. Balarezo at that time, and then became stand-by counsel shortly before defendant's final trial began in January 2013. This third trial resulted in a hung jury in March 2013, and Mr. O'Toole withdrew from this case in mid-April 2013. Acting *pro se*, defendant entered his Rule 11(c)(1)(C) guilty plea on May 1, 2013. No allegation of ineffective assistance of counsel raised in defendant's pleading directly impinges upon his own *pro se* decision to enter that 15-year Rule 11(c)(1)(C) guilty plea.

## ARGUMENT

**I.**    **Defendant's Guilty Plea Precludes His Collateral Attack:**

      1.     Tollett v. Henderson, 411 U.S. 258, 267 (1973), resolves the merits of defendant's claim for relief and dictates rejecting it. Tollett states:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [unconstitutionally deficient].

The same point is made in Bousley v. United States, 523 U.S. 614, 621 (1998), which states:

> We have strictly limited the circumstances under which a guilty plea may be attacked on collateral review. "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally

attacked." Mabry v. Johnson, 467 U.S. 504, 508 (1984) (footnote omitted). And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. *Habeas* review is an extraordinary remedy and "'will not be allowed to do service for an appeal.'" Reed v. Farley, 512 U.S. 339, 354 (1994) (quoting Sunal v. Large, 332 U.S. 174, 178 (1947)). Indeed, "the concern with finality served by the limitation on collateral attack has special force with respect to convictions based on guilty pleas." United States v. Timmreck, 441 U.S. 780, 784 (1979).

In the same vein, in United States v. Delgado-Garcia**,** 362 U.S.App.D.C. 512, 516, 374 F.3d 1337, 1341 (D.C. Cir. 2004), cert. denied, 544 U.S. (2005), our Court of Appeals stated:

> Unconditional guilty pleas that are knowing and intelligent – and there is no claim that appellants' pleas were otherwise – waive the pleading defendants' claims of error on appeal, even constitutional claims. See, e.g., United States v. Drew, [339 U.S.App.D.C. 413, 418], 200 F.3d 871, 876 (D.C.Cir. 2000).

See also United States v. Fitzgerald, 151 U.S.App.D.C. 206, 208, 466 F.2d 377, 379 (D.C. Cir. 1972) (voluntary plea of guilty waives all rights and defenses, known or unknown, present or future); Coleman v. Burnett, 155 U.S.App.D.C. 302, 398, 477 F.2d 1187, 1194 (D.C. Cir. 1973) (unconditional plea of guilty waives all prior infirmities in prosecution which affect neither court's jurisdiction nor substantive sufficiency of indictment; as long as plea stands, it bans consideration of other types of defects on appeal).[2]

2. Thus, unless defendant's pleading raises doubts about whether his guilty plea was voluntary and intelligent, his claim for relief must be rejected. Even under the most liberal construction to be given a *pro se* pleading, however, defendant never suggests that his plea was

---

[2] Re-iterating the point of Tollett, a very recent unpublished decision from this circuit, United States v. Graves, -- Fed.Appx. -- (D.C. Cir. Apr. 4, 2014), available at 2014 WL 1377833 *2, states:

> Assuming [defendant] was without counsel during [several "debriefing" sessions with law enforcement agents, defendant] forfeited his Sixth Amendment claim by subsequently entering a guilty plea. A guilty plea is a "break in the chain of events which has preceded it in the criminal process." Tollett v. Henderson, 411 U.S. 258, 267 (1973). Thus, "[w]hen a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." Id. Instead, "[h]e may only attack the voluntary and intelligent character of the guilty plea," id., "through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases," Blackledge v. Perry, 417 U.S. 21, 30 (1974).

involuntary or unintelligent, much less describes in detail how it was flawed. Defendant's allegations of ineffective assistance of counsel only identify supposed deficiencies in counsel's performance *before* defendant's third trial (at which he acted *pro se*), which lasted from January through March 2013, and *whose result is not the basis of his conviction*. Thus, none of defendant's complaints about either of Messrs. Balarezo or O'Toole touch upon defendant's post-third-trial decision to enter on May 1, 2013, a guilty plea, which was unconditional except as to the length of the sentence. As Bousley states, a defendant "may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was [unconstitutionally deficient]." By the time defendant pled guilty on May 1, 2013, Mr. Balarezo had been out of the case for more than nine months, and Mr. O'Toole had moved to withdraw about two weeks before the guilty plea occurred. When defendant pled guilty he was his own defense counsel, and ineffective assistance by either Mr. Balarezo or Mr. O'Toole cannot relink the broken chain which the guilty plea severed. Consequently, defendant cannot now press on collateral attack claims predicated upon pre-guilty-plea counsel's alleged ineffectiveness.

**II.    Defendant's *Pro Se* Status Defeats An Ineffective Assistance Of Counsel (IAC) Contention:**

3.    Notably, defendant does not assert that any of his allegations of ineffective assistance of counsel infected his own subsequent, independent decision to accept an unconditional Rule 11(c)(1)(C) plea agreement, nor could he. See McKaskle v. Wiggins, 465 U.S. 168, 177 n.8 (1984) ("defendant who exercises his right to appear *pro se* cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel") (internal quotation marks omitted); Faretta v. California, 422 U.S. 806, 834 n.46 (1975) ("whatever else may or may not be open to him on appeal, a defendant who elects to

6

represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of effective assistance of counsel") (internal quotation marks omitted).

4. Even assuming *arguendo* that defendant's complaints about counsel's ineffective assistance before defendant's third trial and before his guilty plea had any merit, the proper framework for evaluating his claim for relief is not Strickland v. Washington, 466 U.S. 668, 687–88 (1984), the seminal decision on ineffective assistance of counsel. This is because defendant never alleges that his decision to plead guilty was the product of unconstitutionally bad advice to plead guilty, nor that there is a reasonable probability that, but for counsel's errors about whether to plead guilty, defendant would have rejected the plea offer and insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59 (1985). Indeed, while acting *pro se*, defendant did insist on going to trial for the third time in January-March 2013, and achieved a mistrial. Thereafter, continuing to act *pro se*, defendant chose to enter an unconditional, Rule 11(c)(1)(C) guilty plea. Thus, Strickland does not govern – under this case's circumstances, for defendant's guilty plea to be overturned, the only question before the Court must be whether defendant's post-third-trial, "break-in-the-chain" guilty plea is valid. The question cannot be about assistance of counsel *before* the third trial, which is immaterial. Cf. Strickland v. Washington, supra, 466 U.S. at 697 ("object of an ineffectiveness claim is not to grade counsel's performance"). As a result, when adjudicating whether defendant has articulated a viable claim for relief, this Court should focus not on the competence of counsel in pre-trial proceedings, but on whether defendant has described a fatal flaw in his post-third-trial guilty plea, *which is the basis for his conviction*. This means that Strickland concepts are irrelevant to the issue before the Court, which is far more amenable to the analysis laid out in the "Brady trilogy:" Brady v. United States, 397 U.S. 742 (1970); McMann v. Richardson, 397 U.S. 759 (1970); Parker v. North Carolina, 397 U.S. 790

(1970), which are denominated as such in Tollett, supra. See Hurlow v. United States, 726 F.3d 958, 966 (7th Cir. 2013) (focus of federal *habeas* inquiry is nature of advice and voluntariness of guilty plea, not existence of antecedent constitutional infirmity; claims of pre-plea constitutional deprivations are not independent grounds for federal collateral relief, although they might play role in evaluating *counsel's* advice to plead guilty).[3]

5.  The Brady trilogy makes clear that a "voluntary plea of guilty intelligently made in light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise." Brady v. United States, supra, 397 U.S. at 757. United States v. Robinson, 388 U.S.App.D.C. 364, 371, 587 F.3d 1122, 1129 (D.C. Cir.2009), noted that Brady v. United States held that a:

> defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the likely penalties attached to alternative courses of action. The same principle applies here. A guilty plea does not automatically become tainted if a change in the law alters a variable that the defendant considered when he decided to plead guilty. See also United States v. Sahlin, 399 F.3d 27,

---

[3] Even if counsel's representation of defendant during earlier proceedings in this case had been deficient, such deficiency would not have prejudiced defendant given that defendant later decided to plead guilty. Therefore, defendant cannot make out a meritorious claim for relief based upon ineffective assistance of counsel. "In Strickland v. Washington, [466 U.S. 668, 687 (1984)] the Supreme Court established the now-familiar two-part test for ineffective assistance of counsel claims. First, the defendant must show that counsel's performance was deficient. . . . Second, the defendant must show that the deficient performance prejudiced the defense." *In re* Sealed Case [No. 05–3030], 376 U.S.App.D.C. 315, 320, 488 F.3d 1011, 1016 (D.C. Cir. 2007). Consequently, where, as here, the lack of prejudice is clear, it is unnecessary for the Court to determine whether defendant would be able to establish deficient performance. The government does not waive the argument, however, that trial counsel's performance fell well within the proper professional standards of competence. The most cursory reading of this Court's rulings on defendant's pre-trial motions shows that nothing defendant now suggests his counsel should have done would have changed those rulings. Strickland states:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting . . . to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . . Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . There are countless ways to provide effective assistance in any given case.

Strickland, supra, 466 U.S. at 699.

31 (1st Cir. 2005) ("[T]he possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompany a guilty plea.")

As Brady v. United States itself states:

> [A]bsent misrepresentation or other impermissible conduct by state agents, a voluntary plea of guilty intelligently made in the light of the then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise. A plea of guilty triggered by the expectations of a competently counseled defendant that the State will have a strong case against him is not subject to later attack because the defendant's lawyer correctly advised him with respect to the then existing law as to possible penalties but later pronouncements of the courts . . . hold that the maximum penalty for the crime in question was less than was reasonably assumed . . . .

Brady v. United States, 397 U.S. at 757. The Supreme Court has explained that "the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor." United States v. Ruiz, 536 U.S. 622, 630 (2002).[4]

6.      United States v. Curry, 344 F.Supp.2d 22, 25 (D.D.C. 2004), points to three factors as the key to assessing when a court should deny a motion to withdraw a guilty plea:

---

[4] Although not strictly on point because it dwelt upon whether a defendant may make a plea agreement in which he waives his right to appeal his sentence, United States v. Guillen, 385 U.S.App.D.C. 216, 218-220, 561 F.3d 527, 529-531 (D.C. Cir. 2009), decided that even an "anticipatory waiver -- that is, one made before the defendant knows what the sentence will be -- is nonetheless a knowing waiver if the defendant is aware of and understands the risks involved in his decision. If the record shows that the defendant knows what he is doing and his choice is made with eyes open, then the Court will enforce an anticipatory waiver." Id., 385 U.S.App.D.C. at 219, 561 F.3d at 530 (internal citations, quotation marks, and brackets omitted) (citing and quoting United States v. Cunningham, 330 U.S.App.D.C. 315, 321, 145 F.3d 1385, 1391 (D.C.Cir.), cert. denied, 525 U.S. 1059 (1998)). Guillen explains that a defendant may still raise on appeal a "a colorable claim he received ineffective assistance of counsel in *agreeing to the waiver*." Id., 385 U.S.App.D.C. at 219, 561 F.3d at 530 (emphasis added). Because defendant acted *pro se* when he agreed to plead guilty and enter his guilty plea, he cannot – most importantly, does not – assert that ineffective assistance of counsel caused him to plead guilty. Given that defendant's pleading does not make such an assertion, his complaints about pre-trial ineffective assistance of counsel are no basis for overturning his conviction. Nowhere in defendant's pleading is there any assertion that defendant was not aware of and understood the risks involved in his decision to plead guilty. Defendant's pleading never identifies a single place in the record that shows anything other than that defendant knew what he was doing he when pled guilty and that his choice was made with eyes open.

First, a defendant generally must make out a legally cognizable defense to the charge against him. Second, and most important, the defendant must show either an error in the taking of his plea or some "more substantial" reason he failed to press his case rather than plead guilty. Finally, if those two factors warrant, the court may then inquire whether the Government would have been substantially prejudiced by the delay in going to trial. . . .

To highlight its emphasis on the second factor, [United States v. Cray, 310 U.S.App.D.C. 329, 333, 47 F.3d 1203, 1207 (D.C. Cir. 1995)], noted that a defendant who fails to show some error under Rule 11 has to shoulder an extremely heavy burden if he is ultimately to prevail. [Cray] observed "we have never held that a district court abused its discretion in denying a motion to withdraw a guilty plea where the defendant failed to show some defect in the taking of his plea under Rule 11."

(quoting United States v. Cray, supra, 310 U.S.App.D.C. 329 at 333, 47 F.3d at 1207) (some of Curry's quotation marks and internal citations omitted). In affirming this Court's ruling in United States v. Curry, 377 U.S.App.D.C. 478, 482, 494 F.3d 1124, 1128 (D.C. Cir. 2007), the Court of Appeals indicated that the first and third factors – viable claim of innocence and taint to the plea are the vital considerations. Id. "A defendant appealing the denial of his motion to withdraw a guilty plea, unlike a defendant who has not first pled guilty, must do more than make a general denial in order to put the Government to its proof; he must affirmatively advance an objectively reasonable argument that he is innocent, for he has waived his right simply to try his luck before a jury. Id. (quoting Cray, supra, 310 U.S.App.D.C. at 335, 47 F.3d at 1209.)[5]

### III. Defendant Alleges No Defect In His Plea:

---

[5] With regard to the question of prejudice to the government if defendant's guilty plea were withdrawn and the matter set down for a new trial, this Court presided over three trials of defendant's case, which lasted from: (1) October 16, 2006, through January 12, 2007; (2) November 6, 2007, through January 14, 2008; and (3) January 22, 2013, through March 4, 2013 (All three periods include *voir dire* and jury deliberations.) Because defendant has failed even to identify any flaws in the plea-taking process or show that he had a legally cognizable defense to the charge to which he pled guilty, the government forbears to recount in painstaking detail the extraordinary prejudice it would suffer if it had to put together this case for trial a fourth time. By choosing to omit here dissection of the body of knowledge that the Court learnt first-hand three times, the government obviously does not waive an argument of prejudice if defendant's guilty plea were set aside. Manifestly, there would be grievous prejudice if the government had to prepare for trial again a case that seemed fully wound up in May 2013 when defendant's time to take a direct appeal had lapsed. Instead, the government respectfully suggests that not every defect in defendant's *pro se* pleading warrants more than cursory notice, especially when other holes in defendant's pleading are more gaping.

7. Not only has defendant failed to show a defect in the taking of his plea under Rule 11, he has not even identified a specific one. Further, defendant has not made out any legally cognizable defense to the charge to which he pled guilty. Rather, his entire pleading fundamentally consists largely of relitigating the suppression motion this Court heard extensively and then denied on the merits. See United States v. Jones, 908 F.Supp.2d 203 (D.D.C. 2012). Defendant could have chosen to preserve his right to challenge that ruling, but instead he elected to forego whatever benefit he could have obtained by a direct appeal, and a collateral attack may not do service for an appeal. See United States v. Timmreck, 441 U.S. 780, 784 (1979) (concern with finality served by limitation on collateral attack has special force with respect to convictions based on guilty pleas). In short, there is no sign that defendant's plea was invalid as not knowing, intelligent, and voluntary, under the analysis supplied in Brady v. United States. Even if this Court were to consider an argument defendant truly has not made, that contention is without merit, and defendant's claim for relief must be rejected.[6]

## IV. Defendant Never Shows "Cause And Prejudice" For Failing To Take A Direct Appeal:

8. Because defendant's claim for relief centers entirely on his counsel's pre-trial assistance, and passes over his *pro se* post-third-trial guilty plea, this Court must also consider that defendant never addresses "cause" for his failure to raise his claim on direct appeal, nor "prejudice" from it. Once again, Bousley v. United States, supra, 523 U.S. at 622, states the rule:

---

[6] Timmreck held that not all errors under Fed.R.Crim.P. 11 warrant relief on collateral attack when a defendant forbore to raise the issue on direct appeal. Rather, Timmreck indicates that a collateral attack only lies to remedy an error that is jurisdictional or constitutional, one that represents "a fundamental defect which inherently results in a complete miscarriage of justice, []or an omission inconsistent with the rudimentary demands of fair procedure." Timmreck, supra, 441 U.S. at 783 (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). As defendant has never identified any error in the process by which he entered his guilty plea and this Court accepted it, defendant's claim may be rejected without examining the point further. In consequence, because defendant does not specify an error in the Rule 11 enquiry for example, nor suggest that he received spurious advice from his attorney (who was, after all, himself), the government does not submit the transcript of defendant's guilty plea as an exhibit.

> Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either "cause" and actual "prejudice," <u>Murray</u> v. <u>Carrier</u>, 477 U.S. 478, 485 (1986); <u>Wainwright</u> v. <u>Sykes</u>, 433 U.S. 72, 87 (1977), or that he is "actually innocent," <u>Murray</u>, supra, at 496; <u>Smith</u> v. <u>Murray</u>, 477 U.S. 527, 537 (1986).

(parallel citations omitted). In language quoted above, <u>Bousley</u> makes clear this rule governs collateral attacks on guilty pleas. "And even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review. *Habeas* review is an extraordinary remedy and will not be allowed to do service for an appeal." <u>Id</u>. at 621; <u>see</u> <u>United States</u> v. <u>Frady</u>, 456 U.S. 152, 167-68, (1982) (applying the same "cause-and-prejudice" standard to a challenge brought under 28 U.S.C. § 2255). This, of course, begs the question of whether defendant's complaint is about his former attorneys' performance in motions hearings before the third trial, *which was not the source of defendant's conviction being challenged*, or whether defendant somehow is trying to attack his guilty plea, despite never identifying a flaw in it. Regardless, defendant has not professed actual innocence. Thus, he must show both (1) cause excusing his procedural default for failing to take any direct appeal, and (2) actual prejudice resulting from the errors of which he complains. <u>See</u> <u>Frady</u>, <u>supra</u>, 456 U.S. at 167-68. Defendant does try to such cause and prejudice.  By noting the time of the alleged pre-trial errors and the time of his plea and non-appeal, it is clear that defendant cannot show cause for failing to present the "errors" on direct appeal.

## **CONCLUSION**

This Court must reject defendant's claim because he never identifies any basis for concluding that his plea was not voluntary and intelligent. Further, defendant's pleading is deficient for failing to address, much less show, cause for the procedural default of taking no direct appeal raising any claim, and actual prejudice to him.

Respectfully submitted,

/s/ *Ronald C. Machen Jr.*
RONALD C. MACHEN JR., D.C. Bar No. 447889
United States Attorney

/s/ *Leslie Ann Gerardo*
LESLIE ANN GERARDO, D.C. Bar No. 419823
Chief, Special Proceedings Division
(202) 252-6603; Leslie.Gerardo@USDoJ.Gov

/s/ *Barry Wiegand*
BARRY WIEGAND, D.C. Bar No. 424288
Assistant United States Attorney
Special Proceedings Division
555 Fourth Street, N.W.,
Washington, D.C. 20530
(202) 252-7723; William.B.Wiegand@usdoj.Gov

## CERTIFICATE OF SERVICE

I certify that I caused service of the foregoing to be made by having a copy of it posted in the U.S. mails for first-class delivery addressed to: Inmate Antoine Jones, Reg. No. 18600-016/DCDC No. 241912, USP Atlanta, United States Penitentiary, Post Office Box 1050160 Atlanta, Georgia 30315. I did this on or before June 5, 2014. This address is different from the address listed on this case's PACER docket sheet, but it is the location listed on defendant's *pro se* pleading docketed April 22, 2014, as Entry No. 755. I confirmed through the Federal Bureau of Prisons inmate locater website on May 8, 2014, http://www.bop.gov/inmateloc/ that Inmate Jones was at that facility.

/s/ *Barry Wiegand*
BARRY WIEGAND